1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5     UNITED STATES OF AMERICA,        )   CR-20-00371 WHA
                                       )
6                    PLAINTIFF,        )   SAN JOSE, CALIFORNIA
                                       )
7             VS.                      )   OCTOBER 15, 2020
                                       )
8     ROBERT T. BROCKMAN,              )   PAGES 1-33
                                       )
9                    DEFENDANT.        )
      _____ )
10

11             TRANSCRIPT OF ZOOM PROCEEDINGS
           BEFORE THE HONORABLE NATHANAEL COUSINS
12            UNITED STATES MAGISTRATE JUDGE

13    A P P E A R A N C E S:

14    FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                            BY:  MICHAEL G. PITMAN
15                          150 ALMADEN BOULEVARD, SUITE 900
                            SAN JOSE, CALIFORNIA  95113
16

17    FOR THE DEFENDANT:    JONES DAY
                            BY:  NEAL J. STEPHENS
18                          1755 EMBARCADERO ROAD
                            PALO ALTO, CALIFORNIA  94303
19
                            BY:  JASON S. VARNADO
20                          717 TEXAS, SUITE 3300
                            HOUSTON, TEXAS  77002
21

22    PRETRIAL OFFICER:     JAY CHRISTIAN

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      SAN JOSE, CALIFORNIA                    OCTOBER 15, 2020

 2                        P R O C E E D I N G S

 3          (ZOOM PROCEEDINGS CONVENED AT 12:17 P.M.)

 4              THE COURT:  ALL RIGHT.  REJOINING, GOOD AFTERNOON.

 5              THE CLERK:  CALLING 3:20-0371, UNITED STATES VERSUS

 6      ROBERT T. BROCKMAN.

 7          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

 8              MR. PITMAN:  GOOD AFTERNOON, YOUR HONOR.

 9          MICHAEL PITMAN FOR THE UNITED STATES.

10              THE COURT:  GOOD AFTERNOON.

11              MR. STEPHENS:  GOOD AFTERNOON, YOUR HONOR.

12          IT'S NEAL STEPHENS FROM JONES DAY IN PALO ALTO APPEARING

13      SPECIALLY FOR MR. BROCKMAN FOR TODAY'S PURPOSES.  WITH ME AS

14      WELL IS MY PARTNER FROM HOUSTON, JASON VARNADO.

15          AND AS YOU CAN SEE, MR. BROCKMAN IS ALSO PRESENT AND

16      BEFORE THE COURT FROM HOUSTON AND CONSENTS TO THE VIDEO NATURE

17      OF THE APPEARANCE.

18              THE COURT:  THANK YOU.

19          AND IF I CAN JUST HAVE MR. BROCKMAN IDENTIFY HIMSELF AND

20      CONFIRM THAT HE'S ABLE TO SEE AND HEAR US SO FAR.

21          I'M JUDGE COUSINS.  I'M THE DUTY JUDGE TODAY.

22              THE DEFENDANT:  YES, SIR.

23          MY NAME IS ROBERT T. BROCKMAN, AND I CAN SEE AND HEAR WITH

24      THE MAGICAL SOFTWARE SET UP HERE.

25              THE COURT:  VERY GOOD.  THANK YOU FOR BEING WITH US
```

1       TODAY.

2              WE ARE MAKING A RECORDING AND A TRANSCRIPTION OF TODAY'S

3       HEARING.

4              ALSO WITH US FROM U.S. PRETRIAL SERVICES IS

5       OFFICER CHRISTIAN, WHO'S ALSO ON THE SCREEN.

6              THE PURPOSE OF COURT TODAY, MR. BROCKMAN, IS TO ADVISE YOU

7       OF YOUR RIGHTS, TO ALERT YOU TO THE CHARGES FILED AGAINST YOU

8       IN AN INDICTMENT THAT WAS RETURNED BY THE GRAND JURY IN THIS

9       DISTRICT, AND ALSO TO DISCUSS CONDITIONS OF RELEASE OR

10      DETENTION AND TO SET SOME FURTHER DATES IN THE CASE.

11             THIS CASE HAS BEEN ASSIGNED TO DISTRICT COURT

12      JUDGE WILLIAM ALSUP IN SAN FRANCISCO.

13             THE INDICTMENT WAS ORIGINALLY FILED UNDER SEAL.

14             MR. PITMAN, DOES THE GOVERNMENT MOVE TO UNSEAL THE

15      INDICTMENT?

16                  MR. PITMAN:  YES, YOUR HONOR.

17                  THE COURT:  ALL RIGHT.  THAT REQUEST IS GRANTED.  THE

18      INDICTMENT IS UNSEALED.

19             AND MR. STEPHENS AND MR. VARNADO, HAVE YOU RECEIVED A COPY

20      OF IT?

21                  MR. STEPHENS:  WE GOT IT JUST EARLIER THIS WEEK, YOUR

22      HONOR.

23                  THE COURT:  ALL RIGHT.  THANK YOU.

24             MR. BROCKMAN, NOW LET ME ADVISE YOU OF YOUR RIGHTS.

25             YOU HAVE THE RIGHT TO REMAIN SILENT.  ANY WORDS THAT YOU

1     SAY CAN BE USED AGAINST YOU.  IF YOU'VE ALREADY SPOKEN WITH A

2     GOVERNMENT AGENT, YOU DO NOT NEED TO SAY ANYTHING MORE.  IF YOU

3     START TO MAKE A STATEMENT, YOU MAY STOP IMMEDIATELY.

4          YOU HAVE THE RIGHT TO AN ATTORNEY AT EVERY STAGE OF THE

5     CASE, AND IF YOU CANNOT AFFORD AN ATTORNEY, THE COURT WOULD

6     APPOINT ONE FOR YOU AT NO COST TO YOU.

7          I UNDERSTAND THAT YOU HAVE RETAINED COUNSEL AND THEY'RE

8     APPEARING WITH YOU TODAY, BUT IF CERTAIN THINGS CHANGE AND YOU

9     WISH THE COURT TO APPOINT AN ATTORNEY FOR YOU, YOU'LL LET US

10    KNOW AND WE'LL EVALUATE WHETHER YOU QUALIFY FOR COUNSEL.

11          DO YOU UNDERSTAND THAT RIGHT?

12             THE DEFENDANT:  YES, I DO.  THANK YOU, SIR.

13             THE COURT:  ALL RIGHT.  THANK YOU.

14          NEXT I'D LIKE TO ASK MR. PITMAN TO SUMMARIZE THE CHARGES

15     IN THE INDICTMENT AGAINST MR. BROCKMAN AND TO ADVISE HIM OF THE

16     MAXIMUM PENALTIES IF HE WERE CONVICTED.  HE IS PRESUMED

17     INNOCENT OF THE CHARGES.  THIS IS JUST TO ADVISE HIM OF THE

18     CHARGES HE FACES.

19          MR. PITMAN, YOU MAY PROCEED.

20             MR. PITMAN:  THANK YOU, YOUR HONOR.

21          THE DEFENDANT HAS BEEN CHARGED WITH ONE COUNT OF

22     CONSPIRACY IN VIOLATION OF 18 UNITED STATES CODE, SECTION 371.

23          THE MAXIMUM PENALTIES ARE FIVE YEARS IN PRISON; A $250,000

24     FINE; THREE YEARS SUPERVISED RELEASE; AND A $100 SPECIAL

25     ASSESSMENT.

1          THE DEFENDANT HAS ALSO BEEN CHARGED WITH SEVEN COUNTS OF

2     TAX EVASION IN VIOLATION OF 26 UNITED STATES CODE,

3     SECTION 7201.

4          THE MAXIMUM PENALTIES FOR EACH COUNT ARE FIVE YEARS IN

5     PRISON; A $250,000 FINE; THREE YEARS SUPERVISED RELEASE; A $100

6     SPECIAL ASSESSMENT; AND THE COSTS OF PROSECUTION ARE AUTHORIZED

7     AS A PENALTY FOR THOSE COUNTS.

8          THE DEFENDANT HAS ALSO BEEN CHARGED WITH SIX COUNTS OF

9     FBAR VIOLATIONS, FOREIGN BANK ACCOUNT REPORTING VIOLATIONS, IN

10    VIOLATION OF 31 UNITED STATES CODE, SECTIONS 5314 AND 5322(B).

11         THE MAXIMUM PENALTIES FOR EACH COUNT ARE TEN YEARS IN

12    PRISON; A $500,000 FINE; THREE YEARS SUPERVISED RELEASE; AND A

13    $100 SPECIAL ASSESSMENT.

14         THE DEFENDANT HAS ALSO BEEN CHARGED WITH 20 COUNTS OF WIRE

15    FRAUD AFFECTING A FINANCIAL INSTITUTION IN VIOLATION OF

16    18 UNITED STATES CODE, SECTION 1343.

17         THE MAXIMUM PENALTY FOR EACH COUNT IS 30 YEARS IN PRISON;

18    A $1 MILLION FINE; FIVE YEARS SUPERVISED RELEASE; AND A $100

19    SPECIAL ASSESSMENT.

20         THE DEFENDANT HAS ALSO BEEN CHARGED WITH TWO COUNTS OF

21    CONCEALMENT MONEY LAUNDERING IN VIOLATION OF 18 UNITED STATES

22    CODE, SECTION 1956(A)(1)(B)(1).

23         THE MAXIMUM PENALTIES FOR EACH COUNT ARE 20 YEARS IN

24    PRISON; A $500,000 FINE OR TWICE THE GROSS GAIN OR LOSS,

25    WHICHEVER IS GREATER; THREE YEARS SUPERVISED RELEASE; AND A

1   $100 SPECIAL ASSESSMENT.

2        THE DEFENDANT HAS ALSO BEEN CHARGED WITH TWO COUNTS OF TAX

3   EVASION MONEY LAUNDERING IN VIOLATION OF 18 UNITED STATES CODE,

4   SECTION 1956(A)(1)(A)(2).

5        THE MAXIMUM PENALTIES FOR EACH COUNT ARE 20 YEARS IN

6   PRISON; A $500,000 FINE OR TWICE THE GROSS GAIN OR LOSS,

7   WHICHEVER IS GREATER; THREE YEARS SUPERVISED RELEASE; AND A

8   $100 SPECIAL ASSESSMENT.

9        THE DEFENDANT HAS ALSO BEEN CHARGED WITH ONE COUNT OF

10   INTERNATIONAL CONCEALMENT MONEY LAUNDERING IN VIOLATION OF

11   18 UNITED STATES CODE, SECTION 1956(A)(2)(B)(1).

12        THE MAXIMUM PENALTY FOR THIS COUNT IS 20 YEARS IN PRISON;

13   A $500,000 FINE OR TWICE THE GROSS GAIN OR LOSS, WHICHEVER IS

14   GREATER; THREE YEARS SUPERVISED RELEASE; AND A $100 SPECIAL

15   ASSESSMENT.

16        THE DEFENDANT HAS ALSO BEEN CHARGED WITH ONE COUNT OF

17   EVIDENCE TAMPERING IN VIOLATION OF 18 UNITED STATES CODE,

18   SECTION 1512(B)(2)(B).

19        THE MAXIMUM PENALTY FOR THIS COUNT IS 20 YEARS IN PRISON;

20   A $250,000 FINE; THREE YEARS SUPERVISED RELEASE; AND A $100

21   SPECIAL ASSESSMENT.

22        THE DEFENDANT HAS ALSO BEEN CHARGED WITH ONE COUNT OF

23   DESTRUCTION OF EVIDENCE IN VIOLATION OF 18 UNITED STATES CODE,

24   SECTION 1512(C)(1).

25        THE MAXIMUM PENALTY FOR THIS COUNT IS 20 YEARS IN PRISON;

1    A $250,000 FINE; THREE YEARS SUPERVISED RELEASE; AND A $100

2    SPECIAL ASSESSMENT.

3              THE COURT:  THANK YOU.

4         MR. STEPHENS, WOULD YOU WAIVE A MORE DETAILED READING OF

5    THOSE CHARGES?

6              MR. STEPHENS:  YES, YOUR HONOR.

7         FOR TODAY'S PURPOSES, JUST FOR THE COURT'S BENEFIT, WE --

8    IT'S A LENGTHY, COMPLEX INDICTMENT.  WE JUST RECEIVED IT.  WE

9    HAVE COVERED IT, AS YOU CAN APPRECIATE IT, WITH OUR CLIENT.  WE

10   ARE PREPARED TO WAIVE READING FOR SURE AND ENTER A PLEA OF NOT

11   GUILTY TO ALL COUNTS AND A DENIAL OF ALL THE FORFEITURE

12   ALLEGATIONS.

13             THE COURT:  THANK YOU.  THE NOT GUILTY PLEA IS

14   ENTERED.

15        MR. PITMAN, A REMINDER TO YOU, THE INDICTMENT DOES ALLEGE

16   CRIME VICTIMS, IT IDENTIFIES VICTIMS OF THE WIRE FRAUD

17   AFFECTING A FINANCIAL INSTITUTION AT THE LEAST, SO A REMINDER

18   THAT THE GOVERNMENT HAS AN OBLIGATION TO NOTIFY ANY CRIME

19   VICTIMS TO ALLOW THEM TO HAVE NOTICE OF THE PROCEEDINGS, TO

20   CONSULT WITH GOVERNMENT COUNSEL, AND TO PARTICIPATE IN CERTAIN

21   PROCEEDINGS BEFORE THIS COURT.  SO JUST A REMINDER THAT YOU

22   HAVE THAT OBLIGATION TO GIVE THEM THAT NOTICE AND OPPORTUNITY

23   TO PARTICIPATE IN THE PROCEEDINGS.

24        NEXT TOPIC IS CONDITIONS OF RELEASE OR DETENTION.

25        MR. PITMAN, WHAT IS THE GOVERNMENT'S MOTION AS TO

1    MR. BROCKMAN'S CONDITIONS DURING THE CASE?

2         MR. PITMAN:  THE GOVERNMENT IS NOT MOVING FOR

3    DETENTION.

4         IT WOULD BE OUR PROPOSAL THAT THE DEFENDANT BE RELEASED ON

5    CONDITIONS, INCLUDING A $1 MILLION SECURED BOND, AND THAT HIS

6    TRAVEL BE RESTRICTED TO NINE DISTRICTS, IN ADDITION TO THE

7    STANDARD TERMS, AND I DO NOT BELIEVE THAT THOSE TERMS ARE

8    AGREED.

9         THE COURT:  ALL RIGHT.  SO THAT -- WHAT YOU JUST GAVE

10   ME IS WHAT THE GOVERNMENT'S MOTION IS, AND YOU EXPECT THAT THE

11   DEFENSE HAS A DIFFERENT VIEW.

12        AT THIS MOMENT, HAS HE HAD ANY COMMUNICATIONS WITH

13   PRETRIAL SERVICES ABOUT WHAT MIGHT BE APPROPRIATE CONDITIONS?

14        MR. STEPHENS:  HE HAS NOT, YOUR HONOR.

15        THE COURT:  AND HAS HE BEEN BOOKED BY ANY U.S.

16   MARSHALS ON THE CHARGE?

17        MR. STEPHENS:  NO, SIR, YOUR HONOR, BUT IT WAS OUR

18   INTENTION TO DO THAT.

19        WE -- FOR THE COURT'S BENEFIT, WE SPOKE TWICE WITH

20   GOVERNMENT COUNSEL AND WE HAVE REACHED AGREEMENT IN WORKING

21   THROUGH THE COURT'S ORDER SETTING CONDITIONS OF RELEASE, EXCEPT

22   FOR ONE LAST ITEM, AND THAT IS THE TERMS OF BAIL.  WE THINK

23   IT'S INAPPROPRIATE TO HAVE A CASH BAIL OR CORPORATE SURETY BOND

24   HERE.

25        I CAN WALK YOU THROUGH THE OTHER TERMS THAT WE SPOKE WITH

1    MR. PITMAN ABOUT EARLIER THIS WEEK.  THOSE ARE THE FIRST THREE

2    ON YOUR SHEET HERE, YOUR HONOR, THAT THE DEFENDANT WILL

3    OBVIOUSLY APPEAR, MR. BROCKMAN WILL APPEAR; HE WILL NOT COMMIT

4    ANY FEDERAL OR STATE CRIME; HE SHALL NOT HARASS, THREATEN,

5    INTIMIDATE, ET CETERA.

6    WE ALSO AGREE THAT HE WILL REPORT IN PERSON TO PRETRIAL

7    SERVICES.  HE CAN DO SO THERE IN HOUSTON.  WE HAVE ALREADY

8    REACHED OUT TO CONTACT THAT OFFICE AND ARE WILLING TO DO THAT

9    IN AN EXPEDITIOUS FASHION.

10   AND HE, FOR THE COURT'S BENEFIT, HAS ALREADY SURRENDERED

11   TO US, AT THE GOVERNMENT'S REQUEST, HIS PASSPORT.

12   SO THOSE ARE --

13   THE COURT:  SORRY TO INTERRUPT.  SO THE -- IF YOU'RE

14   NOT DONE, I'LL STOP SO YOU CAN FINISH.

15   MR. STEPHENS:  OH, NO.  GO AHEAD.

16   THE COURT:  SO THE PART THAT'S DISAGREED UPON IS THE

17   AMOUNT AND SECURITIZATION OF THE BOND?  IS THAT FAIR?

18   MR. STEPHENS:  YEAH, THAT'S CORRECT, YOUR HONOR.

19   WE HAD DISAGREEMENT OVER THE JURISDICTIONS THAT HE COULD

20   TRAVEL IN WITHIN THE UNITED STATES, BUT THE BAIL ISSUE IS BY

21   FAR THE MOST IMPORTANT ONE TO US.  WE WILL AGREE WITH THE

22   GOVERNMENT ON THE JURISDICTIONS THAT THEY HAVE PROPOSED, AND

23   FOR A.U.S.A. PITMAN'S BENEFIT, I'LL READ THEM IN, AND IF I

24   DON'T HAVE THEM RIGHT, PLEASE CORRECT ME.

25   THE COURT:  BEFORE YOU READ ANYTHING IN, IS THERE A

```
 1    WRITING?  IF YOU'VE GOT A DRAFT BOND FORM, HAVE YOU GOT THAT

 2    WRITTEN DOWN AND YOU CAN SEND IT TO ME?

 3              MR. STEPHENS:  I WISH I DID, YOUR HONOR.  I

 4    APOLOGIZE, BUT I DO NOT.

 5              THE COURT:  ALL RIGHT.  THEN YOU CAN TELL ME WHAT

 6    THEY ARE.

 7              MR. STEPHENS:  SURE.

 8         THE DISTRICTS ARE THE SOUTHERN DISTRICT OF TEXAS; THE

 9    DISTRICT OF COLORADO; THE NORTHERN DISTRICT OF CALIFORNIA; THE

10    SOUTHERN DISTRICT OF NEW YORK; THE D.C. AREA DISTRICTS, YOUR

11    HONOR, THE DISTRICT OF COLUMBIA AND THE EASTERN DISTRICT OF

12    VIRGINIA; AND THEN TWO DISTRICTS IN OHIO, THE SOUTHERN DISTRICT

13    OF OHIO AND THE NORTHERN DISTRICT OF OHIO.

14         AND THOSE REPRESENT, YOUR HONOR, AREAS WHERE HE EITHER

15    RESIDES OR HIS LAWYERS ARE OR HIS COMPANY IS.

16              THE COURT:  ALL RIGHT.  LET ME JUST SEGUE ON THAT

17    ONE.

18         MR. PITMAN, WHAT'S THE BASIS FOR HAVING A TRAVEL

19    RESTRICTION TO NINE DIFFERENT DISTRICTS AND WHAT'S THE CONCERN?

20              MR. PITMAN:  WELL, IT'S THE -- THE CONCERN IS THAT

21    THE DEFENDANT POSES A RISK OF FLIGHT, YOUR HONOR.

22              THE COURT:  ALL RIGHT.  AND ARTICULATE FOR ME WHAT

23    ESTABLISHES THAT CONCERN.

24              MR. PITMAN:  OKAY.  SO OBVIOUSLY THERE ARE

25    STANDARD -- AND THIS IS -- I'LL ALSO INCORPORATE THE ARGUMENT I
```

1    WOULD MAKE WITH RESPECT TO THE SECURITY ON THE BOND, YOUR

2    HONOR.

3         THE BAIL REFORM ACT ANTICIPATES THAT WE'LL IMPOSE -- THE

4    COURT WILL IMPOSE THE LEAST RESTRICTIVE CONDITIONS NECESSARY TO

5    REASONABLY ASSURE THAT THE DEFENDANT WILL APPEAR AND GIVES US A

6    FRAMEWORK FOR ANALYZING THE POTENTIAL EFFICACY OF PROPOSED

7    CONDITIONS, INCLUDING THE NATURE AND CIRCUMSTANCES OF THE

8    OFFENSE, THE WEIGHT OF THE EVIDENCE AGAINST THE DEFENDANT, THE

9    HISTORY AND CHARACTERISTICS OF THE DEFENDANT, AND THE DANGER TO

10   THE COMMUNITY.

11        IN THIS CASE, THESE FACTORS DO SUPPORT IMPOSING CONDITIONS

12   ON THE DEFENDANT'S RELEASE, INCLUDING A SIGNIFICANT CASH BOND,

13   AND RESTRICTING HIS TRAVEL ONLY TO DISTRICTS THAT HE NEEDS TO

14   TRAVEL TO IN ORDER TO LITIGATE THIS CASE.  HE'S GOT ATTORNEYS

15   ACROSS THE COUNTRY AND THE GOVERNMENT HAS AGREED THAT THERE'S

16   NO PROBLEM HAVING HIM TRAVEL TO THE DISTRICTS IN WHICH HE NEEDS

17   TO FOR HIS DEFENSE.

18        THERE'S ALSO TWO DISTRICTS IN OHIO THAT HE NEEDS TO TRAVEL

19   TO IN ORDER TO DO HIS WORK.  HE'S THE CEO OF A COMPANY WITH

20   THOUSANDS OF EMPLOYEES, SO WE'VE AGREED TO THAT.

21        SO I'LL GO THROUGH THE FACTORS QUICKLY, YOUR HONOR.

22        THE NATURE AND CIRCUMSTANCES OF THE OFFENSE ARE SERIOUS.

23   WE'VE JUST GONE THROUGH THE PENALTIES.

24        THE INDICTMENT, IN CASE THE COURT HASN'T READ THE WHOLE

25   THING, ALLEGES AN EVASION, A TAX EVASION OF OVER $2 BILLION.

1       IT ALSO ALLEGES THAT THE DEFENDANT DEFRAUDED HIS BUSINESS

2    PARTNERS AND LAUNDERED THE PROCEEDS, WHICH WERE IN EXCESS OF

3    $60 MILLION, AND IT ALSO ALLEGES THAT THE DEFENDANT WAS

4    INVOLVED IN PHYSICALLY DESTROYING EVIDENCE THAT IS PERTINENT TO

5    THE CASE.

6       SO THAT -- IF THOSE CHARGES ARE ALL PROVEN, THIS COULD BE

7    THE MOST SIGNIFICANT INCOME TAX EVASION CASE AGAINST AN

8    INDIVIDUAL IN UNITED STATES HISTORY.

9       WITH RESPECT TO THE WEIGHT OF THE EVIDENCE AGAINST THE

10   DEFENDANT, I KNOW THAT'S THE LEAST IMPORTANT FACTOR, AS I'M

11   SURE THE COURT WILL REMIND ME.

12      I'LL JUST SAY THAT THE INDICTMENT IN THIS CASE IS 40 PAGES

13   LONG.  IT INCORPORATES 39 COUNTS COVERING CRIMINAL CONDUCT

14   SPANNING TWO DECADES.  THE INVESTIGATION, AS ALLEGED IN THE

15   INDICTMENT, HAS BEEN ONGOING FOR AT LEAST FOUR YEARS.  SO I

16   WOULD JUST SAY THE INDICTMENT SPEAKS FOR ITSELF WITH RESPECT TO

17   THE STRENGTH OF THE EVIDENCE AGAINST THE DEFENDANT.

18      THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT ARE

19   REALLY WHAT I'D LIKE TO DRAW THE COURT'S ATTENTION TO.

20      I THINK THE RECORD DEMONSTRATES BEYOND A PREPONDERANCE

21   STANDARD THAT THE DEFENDANT DOES POSE A FLIGHT RISK, AND THERE

22   ARE THREE THINGS I'D POSIT AS GOOD EVIDENCE OF THAT RISK, YOUR

23   HONOR.

24      THE FIRST IS THIS IS A VERY SERIOUS CASE.  AS I SAID

25   BEFORE, IF THE DEFENDANT WERE TO SUFFER CONVICTIONS ON EVEN A

1    FEW OF THE COUNTS ALLEGED IN THIS INDICTMENT, HE COULD FACE A

2    SEVERE INCARCERATIVE PENALTY, WHICH IS OBVIOUSLY A CONCERN FOR

3    ANY DEFENDANT, BUT ESPECIALLY ONE WHO'S 79 YEARS OLD.

4         THE SECOND CONCERN WE HAVE IS THAT THE DEFENDANT HAS THE

5    MEANS TO FLEE, AND THOSE ARE EMBODIED IN TWO DIFFERENT

6    CATEGORIES OF EVIDENCE, I SUPPOSE.

7         THE FIRST IS THAT THE DEFENDANT, FROM OUR PERSPECTIVE, HAS

8    VIRTUALLY UNLIMITED FINANCIAL RESOURCES.  THE INDICTMENT

9    ALLEGES THAT HE'S BEEN INVOLVED IN A MULTI-DECADE SCHEME TO

10   LAUNDER -- EXCUSE ME -- TO EVADE TAX ON BILLIONS OF DOLLARS OF

11   INCOME, AND RECORDS INDICATE THAT IN THE LAST FEW YEARS, HE'S

12   BEEN DRAWING A SALARY FROM THE COMPANY THAT HE RUNS OF AT LEAST

13   $1 MILLION A MONTH.  SO FINANCIAL RESOURCES ARE NOT A PROBLEM

14   FOR MR. BROCKMAN.  IF HE WERE TO CHOOSE TO LEAVE THE DISTRICT

15   OR LEAVE THE JURISDICTION OF THE UNITED STATES, FINANCIALLY

16   THAT WOULD POSE NO PROBLEM FOR HIM.

17        ALSO, HE HAS THE PHYSICAL MEANS TO TRAVEL IN THE FORM OF A

18   JET.  MR. BROCKMAN HAS ACCESS TO A BOMBARDIER GLOBAL EXPRESS

19   6000 JET, WHICH IS A PRIVATE PLANE CAPABLE OF TRANSATLANTIC

20   TRAVEL.  THAT JET IS HANGARED IN THE DEFENDANT'S HOMETOWN, IT'S

21   MAINTAINED IN HOUSTON, AND HE HAS ACCESS TO IT.  HE'S TRAVELED

22   INTERNATIONALLY SEVERAL TIMES IN THE LAST FEW YEARS.

23        SO HE HAS THE MOTIVE TO FLEE IN THAT HE'S FACING A VERY

24   SERIOUS CASE, AND HE HAS THE MEANS TO FLEE.

25        AND THE THIRD CATEGORY I'D LIKE TO DRAW THE COURT'S

1    ATTENTION TO IS PERHAPS THE ONE THAT DISTINGUISHES THIS FROM

2    OTHER CASES INVOLVING WEALTHY DEFENDANTS, AND THAT IS THE

3    DEFENDANT'S PROPENSITY FOR OBSTRUCTIVE CONDUCT.

4        HE'S BEEN CHARGED WITH SEVERAL COUNTS OF OBSTRUCTION OF

5    JUSTICE.  ESSENTIALLY EVIDENCE TAMPERING AND WITNESS TAMPERING

6    ARE THE CHARGES.  BUT THE ALLEGATIONS IN THE INDICTMENT

7    UNDERLYING THOSE COUNTS ARE THAT HE CAUSED ONE OF HIS

8    COMPATRIOTS TO PHYSICALLY DESTROY EVIDENCE THAT WAS GOING TO BE

9    PERTINENT TO THE INVESTIGATION.

10       THERE ARE ALSO OTHER ALLEGATIONS IN THE INDICTMENT ABOUT

11   OBSTRUCTIVE CONDUCT, INCLUDING USING A PROPRIETARY ENCRYPTED

12   E-MAIL SYSTEM, KEEPING SUPPLIES OF SPECIAL PAPER SPECIFICALLY

13   FOR BACKDATING DOCUMENTS, USING UNTRACEABLE VONAGE ACCOUNTS TO

14   COMMUNICATE WITH NOMINEES IN ORDER TO AVOID DETENTION BY LAW

15   ENFORCEMENT, AND INSTRUCTING A CO-CONSPIRATOR TO ATTEND A

16   CONFERENCE ON MONEY LAUNDERING USING AN ASSUMED IDENTITY.

17       SO THIS IS A SERIOUS CASE.  THE DEFENDANT HAS THE MEANS

18   AND THE MOTIVE TO FLEE, AND HE HAS A DEMONSTRATED CAPACITY FOR

19   ENGAGING IN OBSTRUCTIVE CONDUCT.

20       UNDER THE CIRCUMSTANCES, IT'S THE GOVERNMENT'S POSITION

21   THAT AN UNSECURED BOND WOULD NOT REASONABLY ASSURE THAT HE

22   APPEAR AT SUBSEQUENT PROCEEDINGS, AND WE RESPECTFULLY REQUEST

23   THAT THE COURT IMPOSE THE TRAVEL RESTRICTIONS THAT WE'VE AGREED

24   TO, AND ALSO ORDER THAT THE DEFENDANT POST A $1 MILLION SECURED

25   BOND.

1           THE COURT:  THANK YOU, MR. PITMAN.

2           WHEN YOU SAY A $1 MILLION SECURED BOND, ARE YOU LEAVING IT

3    FLEXIBLE THAT IT CAN BE SECURED BY ANY PROPERTY OR BY CASH, OR

4    IS THERE A PARTICULAR SECURITY THAT YOU HAVE IN MIND?

5           MR. PITMAN:  OUR PREFERENCE WOULD BE A CASH BOND,

6    YOUR HONOR, BECAUSE IT'S -- IN THE EVENT OF A DEFAULT OR

7    FLIGHT, IT'S SO MUCH EASIER TO PROCESS.

8           BUT I THINK ANY BOND THAT HAS GENUINE SECURITY WOULD

9    OPERATE TO ENSURE THAT THE DEFENDANT IS AT LEAST TAKING THE

10   BOND INTO CONSIDERATION WHEN EVALUATING HIS OPTIONS.

11          THE COURT:  ALL RIGHT.  I'LL GET MR. STEPHENS'

12   RESPONSE, BUT I'LL JUST NOTE THAT AT THIS POINT IN THE

13   PROCEEDINGS, I HAVE NO INFORMATION ABOUT MR. BROCKMAN BESIDES

14   WHAT'S IN THE INDICTMENT, AND ORDINARILY THERE'S AN OPPORTUNITY

15   FOR PRETRIAL SERVICES TO CREATE A REPORT FOR THE COURT THAT

16   PROVIDES INFORMATION ABOUT THINGS SUCH AS HIS BACKGROUND, HIS

17   FINANCIAL POSITION, AND FROM THAT REPORT THAT GIVES ME

18   INFORMATION WHICH CAN GUIDE ME TO THE RIGHT ANSWER.

19          SO I'M HEARING FROM BOTH PARTIES THIS INFORMATION FOR THE

20   FIRST TIME WITHOUT HAVING, YOU KNOW, MY OWN INVESTIGATOR.  I

21   DON'T HAVE MY OWN INVESTIGATOR TO FIGURE OUT THE ANSWERS TO

22   THESE THINGS.  I HAVE TO RELY UPON THE PARTIES AND PRETRIAL

23   SERVICES TO PROVIDE THE INFORMATION TO THE COURT.

24          I TAKE IT, MR. PITMAN, THAT THERE'S NO CRIMINAL RECORD FOR

25   MR. BROCKMAN.  YOU WOULD HAVE MENTIONED THAT IF THAT WAS A

1    BASIS FOR YOUR REQUEST.

2          MR. PITMAN:  YOUR ASSUMPTION IS CORRECT, YOUR HONOR.

3    THERE'S NO CRIMINAL HISTORY THAT WE'RE AWARE OF.

4          THE COURT:  ALL RIGHT.  AND ALSO, I'LL JUST MAKE A

5    NOTE THAT AFTER I -- THE PARTIES ARE IN AGREEMENT THAT

6    MR. BROCKMAN IS GOING TO BE RELEASED, SO I'M IN AGREEMENT, TOO.

7    I'M GOING TO BE ORDERING HIM TO BE UNDER SUPERVISION WITH SOME

8    CONDITIONS.

9          I CAN HAVE PRETRIAL GIVE US A POST-RELEASE REPORT WITH

10   ADDITIONAL INFORMATION THAT CAN MODIFY THESE CONDITIONS.  FOR

11   EXAMPLE, IF THE AMOUNT OF THE BOND IS TOO HIGH OR TOO LOW,

12   PRETRIAL CAN TELL ME, AFTER THEY'VE DONE SOME INQUIRY, THAT

13   IT'S TOO HIGH OR TOO LOW AND WE CAN THEN CHANGE THE CONDITIONS.

14         I'M JUST GOING TO DO SOMETHING TODAY BASED ON WHAT YOU

15   TELL ME, BUT SOME DEEPER INQUIRY COULD BE APPROPRIATE.

16         MR. STEPHENS, BACK TO YOU TO GIVE ME FURTHER ARGUMENT

17   ABOUT THE FINANCIAL CONDITIONS FOR RELEASE.

18         MR. STEPHENS:  THANK YOU, YOUR HONOR.

19         AS TO THAT, IT'S OUR POSITION THAT THIS SHOULD BE A NO

20   CASH BAIL SITUATION.  MR. BROCKMAN BEFORE YOU HAS HAD AN

21   EXCEPTIONALLY STABLE HOME LIFE, A WORK LIFE, AND A COMMUNITY

22   LIFE, AND I'LL DETAIL THAT FOR YOU HERE SHORTLY, YOUR HONOR.

23         MR. BROCKMAN IS 79 YEARS OLD.  HE HAS AND IS BATTLING SOME

24   SERIOUS MEDICAL ISSUES, WHICH INCLUDE PARKINSON'S AND A HEART

25   CONDITION, AND IN PAST YEARS HE HAS ALSO HAD TWO SEPARATE BOUTS

1      WITH CANCER.

2           AS COUNSEL HAS ACKNOWLEDGED, HE HAS NO CRIMINAL HISTORY.

3      HE IS A FORMER UNITED STATES MARINE SERVING IN THE LATE 1950S

4      THROUGH THE MID-1960S.

5           AS FAR AS HIS HOME LIFE, HE'S BEEN MARRIED FOR 50 YEARS TO

6      HIS WIFE, DOROTHY.  THEY RESIDE IN TEXAS AND IN COLORADO.

7           AS FAR AS HIS WORK HISTORY, YOUR HONOR, HE WAS -- HE HAD A

8      GREAT ACADEMIC CAREER AT THE UNIVERSITY OF FLORIDA.  THAT LED

9      TO HIS FIRST JOB AT FORD MOTOR COMPANY.  AFTER A FEW YEARS

10     THERE, HE MOVED ON TO IBM AND HAS ALWAYS BEEN FOCUSSED IN THE

11     SALES INTO THE AUTOMOTIVE INDUSTRY.

12          AND AFTER ABOUT FIVE YEARS AT IBM, IN 1970 HE STARTED HIS

13     OWN COMPANY, A COMPANY CALLED UCS, WHICH IS UNIVERSAL COMPUTER

14     SERVICES, AND IT WAS A SOFTWARE COMPANY, YOUR HONOR, THAT

15     DEVELOPED SOFTWARE THAT CAR DEALERSHIPS COULD USE TO TRACK THE

16     INVENTORY OF PARTS LOCATED WITHIN THE DEALERSHIP.  THAT

17     COMPANY, YEARS LATER IN 2006, MERGED WITH REYNOLDS.

18     MR. BROCKMAN IS CURRENTLY THE CEO AND CHAIRMAN OF THE BOARD OF

19     REYNOLDS CORPORATION.

20          HE HAS ALSO SERVED ON NUMEROUS COMMUNITY BOARDS, MOSTLY IN

21     THE HOUSTON AREA.  HE SERVES ON THE BOARD OF THE CANCER CENTER

22     AT MD ANDERSON IN HOUSTON.  HE IS ON TWO BOARDS AT

23     RICE UNIVERSITY.  HE'S ON THE BOARD OF TRUSTEES FOR THE

24     UNIVERSITY, AND HE'S ON THE BOARD OF OVERSEERS FOR THE BUSINESS

25     SCHOOL AT RICE.

1    HE IS ALSO ON THE BOARD OF TRUSTEES AT BAYLOR MEDICAL

2    UNIVERSITY, AND AS WELL AS THE FORMER CHAIRMAN OF THE BOARD OF

3    TRUSTEES AND CURRENTLY A LIFE TRUSTEE OF CENTRE COLLEGE IN

4    KENTUCKY.

5    TO COUNSEL'S POINT, YOUR HONOR, ON RISK OF FLIGHT,

6    MR. BROCKMAN HAS KNOWN ABOUT THIS INVESTIGATION FOR FOUR YEARS.

7    HE'S HERE TODAY, YOU KNOW, VOLUNTARILY AFTER ACCEPTING A

8    SUMMONS FROM THE GOVERNMENT.

9    HE IS NOT A FLIGHT RISK.  HE'S CERTAINLY NOT A DANGER TO

10   THE COMMUNITY.  HE'S DEALING WITH VERY SERIOUS MEDICAL ISSUES,

11   AND IT'S OUR VIEW THAT RELEASE ON HIS OWN RECOGNIZANCE IS

12   APPROPRIATE, OR IF THE COURT WANTS TO FASHION SOME TYPE OF

13   PERSONAL SURETY BOND, A PERSONAL SURETY BOND UP TO IN THE

14   NEIGHBORHOOD OF $250,000 IS MORE THAN APPROPRIATE TO ASSURE HIS

15   ATTENDANCE AT ALL THE COURT PROCEEDINGS.

16   THE COURT:  AND GIVEN MY COMMENTS THAT I KNOW NOTHING

17   ABOUT, YOU KNOW, HIS FINANCIAL SITUATION BEYOND WHAT YOU'RE

18   PROFFERING TO ME AND WHAT THE GOVERNMENT IS PROFFERING TO ME,

19   IT MAKES IT CHALLENGING FOR ME TO ESTABLISH THE AMOUNT THAT

20   WOULD BE APPROPRIATE TO ENCOURAGE HIM TO COME TO COURT WHEN

21   ORDERED, AND OF COURSE COMING TO COURT RIGHT NOW MEANS COMING

22   REMOTELY AS HE'S DONE TODAY.

23   DO YOU HAVE A PROFFER AS TO, BETWEEN THIS ON HIS OWN

24   RECOGNIZANCE OR 250 OR A MILLION DOLLARS AS TO, YOU KNOW, WHY I

25   WOULD PICK THE LOWER NUMBER AND NOT THE HIGHER NUMBER?

1          MR. STEPHENS:  YEAH.  I JUST THINK A CASH BAIL

2     NUMBER, YOUR HONOR, IS INAPPROPRIATE HERE.  A PERSONAL

3     RECOGNIZANCE BOND WILL ASSURE HIS APPEARANCE, AND PARTICULARLY

4     GIVEN HIS ROOTS IN THE COMMUNITY, HIS ACTIVE SERVICE ON THESE

5     BOARDS, THE LENGTH OF TIME THAT HE HAS BEEN IN THE COMMUNITY,

6     WE DON'T SEE THE FLIGHT RISK GIVEN THAT HE'S KNOWN THAT THIS

7     INVESTIGATION HAS BEEN ONGOING.

8          SO A LOT OF WHAT COUNSEL WAS TALKING ABOUT WAS WHAT

9     HAPPENS IF CONVICTED, BUT WE DENY AND REFUTE ALL THE

10    ALLEGATIONS AND ARE LOOKING FORWARD TO LITIGATING THIS.

11          THE COURT:  AND DOES HE OWN PROPERTY THAT COULD BE

12    POSTED AS A SECURED ASSET TO SECURE THE COMBINATION OF

13    CONDITIONS?

14          MR. STEPHENS:  YES, YOUR HONOR, I DO THINK THAT WE

15    COULD HAVE SOME PROPERTY.  I DON'T KNOW THAT IT'S ACTUALLY

16    APPROPRIATE OR --

17          THE COURT:  I KNOW YOU DON'T AGREE WITH IT, BUT IF HE

18    DIDN'T OWN PROPERTY, THEN I WOULDN'T BE -- I WOULDN'T BE

19    SUGGESTING THAT IT BE POSTED AS SECURITY, AND SOME DEFENDANTS

20    DON'T OWN PROPERTY THAT THEY CAN POST AS SECURITY.  IF HE DOES,

21    THEN THAT BECOMES A POTENTIAL, A POTENTIAL ITEM THAT CAN BE

22    POSTED TO HELP SECURE HIS RELEASE.

23          LET ME ASK OFFICER CHRISTIAN, WHO'S BEEN LISTENING IN, IF

24    HE HAS ANY FEEDBACK ABOUT THE CONDITIONS OF SUPERVISION THAT HE

25    WOULD ASSERT.

1    OFFICER CHRISTIAN:  HELLO, YOUR HONOR, AND ALL

2    PARTIES.

3        SO I DIDN'T GET THE INFORMATION REGARDING THE TRAVEL

4    RESTRICTIONS.  THERE WERE A FEW DISTRICTS LISTED, AND I HAD

5    SOUTHERN DISTRICT OF TEXAS, COLORADO, NORTHERN DISTRICT,

6    SOUTHERN DISTRICT OF NEW YORK, EASTERN DISTRICT, SOUTHERN

7    DISTRICT OF OHIO AND NORTHERN DISTRICT OF OHIO.

8        WAS THERE A DISTRICT I MISSED IN THERE?

9        THE COURT:  D.C. ALSO, DISTRICT OF COLUMBIA.

10       MR. STEPHENS, WAS THERE ANOTHER?

11       MR. STEPHENS:  JUST THE NORTHERN DISTRICT OF

12   CALIFORNIA WHICH I THINK MR. CHRISTIAN PICKED UP.

13       THE COURT:  YEAH.  THANK YOU.

14       I MAY HAVE INTERRUPTED YOU.  GO AHEAD, OFFICER CHRISTIAN.

15       OFFICER CHRISTIAN:  THE ONLY OTHER THING WOULD BE IF

16   CONDITIONS WERE FOUND TODAY THAT HE WOULD BE RELEASED, WHICH IT

17   SOUNDS LIKE THAT'S THE DIRECTION PEOPLE ARE HEADING, WE WOULD

18   ASK THAT THE DEFENDANT CONTACT OUR OFFICE IN SAN FRANCISCO

19   TOMORROW SO THAT WE CAN BEGIN PREPARING A PACKET FOR -- SINCE

20   WE ARE THE CHARGING DISTRICT, A PACKET FOR WHAT WOULD BE THE

21   SOUTHERN DISTRICT OF TEXAS, I BELIEVE, WHERE HOUSTON IS.

22       MR. PITMAN:  YES.

23       OFFICER CHRISTIAN:  SO WE WOULD BE PREPARING THAT

24   PACKET FOR THEM.

25       BUT SINCE WE'RE THE CHARGING DISTRICT, WE HAVE TO START

1    WITH OUR DISTRICT, SO WE WOULD BE THE ONE WRITING THE REPORT

2    AND ASKING THE SOUTHERN DISTRICT TO, YOU KNOW, FOLLOW THE

3    CONDITIONS THAT ARE OUTLINED HERE OR MODIFY THEM HERE.

4         AND THAT ALSO WOULD BE THE CASE AROUND WHERE TO REPORT IN

5    TEXAS FOR THE U.S. MARSHALS SERVICE.  I'M UNCERTAIN WHERE TO

6    TELL HIM TO REPORT, SO THAT WOULD BE SOMETHING WE WOULD NEED TO

7    FIGURE OUT AND HAVE MORE INFORMATION FOR HIM TOMORROW.

8              MR. VARNADO:  AND YOUR HONOR, THIS IS MR. VARNADO.

9         WE WILL ABSOLUTELY DO THAT AND FACILITATE THAT

10   COMMUNICATION, MR. CHRISTIAN, AT WHATEVER TIME THE COURT DEEMS

11   APPROPRIATE.

12        AND ON THE DISTRICTS, I WOULD JUST WANT TO REVISIT, BUT WE

13   ACTUALLY THINK THE CONTINENTAL U.S. IS APPROPRIATE FOR THIS

14   RESTRICTION.  THERE'S NO REASON TO BE MORE RESTRICTIVE THAN

15   THAT.

16        WE AGREED TO THE DISTRICTS SPECIFICALLY WITH THE

17   GOVERNMENT IN HOPES THAT THEY WOULD MODIFY THEIR POSITION ON

18   REQUIRING A CASH BOND OF A MILLION DOLLARS WHICH WE THINK IS

19   INAPPROPRIATE.

20        SO IF THE COURT IS SO INCLINED AND IT'S EASIER, THEN

21   CERTAINLY WE ASSERT THE CONTINENTAL U.S. AS TRAVEL IS FAIR.

22              THE COURT:  THANK YOU, MR. VARNADO.

23        MR. PITMAN, MY REACTION TO THE NINE DISTRICTS -- I'VE

24   NEVER HAD A CASE WHERE I PERMITTED TRAVEL TO NINE DISTRICTS

25   BEFORE.  MAYBE YOU'RE GOING TO TELL ME THIS IS THE BIGGEST TAX

1    CASE EVER, SO IT'S JUSTIFIED TO BE A LOT OF DISTRICTS.

2        BUT ADMINISTRATIVELY TO ENFORCE THAT FOR PRETRIAL, IT

3    MEANS THEY'RE GOING TO BE TRACKING TRAVEL WITH -- YOU KNOW,

4    THERE ARE PRETTY FINE LINES BETWEEN DIFFERENT DISTRICTS IN

5    OHIO, AND IT INCREASES A CHANCE FOR AN ACCIDENTAL -- IF THE

6    BOMBARDIER LANDS AT THE WRONG AIRPORT, NOW HE'S GOING TO BE

7    ARRESTED.  THAT'S A LOT OF SUPERVISION AND ENFORCEMENT WHEN, IF

8    THE REAL CONCERN IS HE'S GOING TO LEAVE THE UNITED STATES, THEN

9    WHY NOT JUST HAVE IT BE A RESTRICTION THAT HE NOT LEAVE THE

10   UNITED STATES?

11       MR. VARNADO:  AND, YOUR HONOR, I DO HAVE THE

12   PASSPORT, JUST TO REITERATE THAT.  I'M HOLDING IT HERE AND

13   WE'LL TURN IT IN TO PRETRIAL (INDICATING).

14       THE COURT:  THANK YOU.

15       MR. PITMAN:  YOUR HONOR, I UNDERSTAND THE LOGISTICAL

16   CONCERNS THAT YOU'RE RAISING.  IN A TYPICAL WHITE COLLAR CASE

17   LIKE THIS, WE WOULD SEEK TO RESTRAIN THE DEFENDANT TO THE

18   NORTHERN DISTRICT AND ANY DISTRICT THAT HE NEEDED TO TRAVEL TO

19   FOR HIS OWN DEFENSE.

20       I UNDERSTAND THAT THESE CONDITIONS MAY CREATE ISSUES FOR

21   PRETRIAL, AS WELL AS FOR THE PARTIES, AND OBVIOUSLY IF THERE IS

22   EXTRA TRAVEL THAT'S NECESSARY, MY ANTICIPATION IS THAT WE'LL BE

23   ABLE TO WORK TOGETHER TO MAKE SURE THAT THOSE ARE STIPULATED

24   AND THAT TRAVEL IS PERMITTED AS APPROPRIATE.

25       BUT AT LEAST, ESPECIALLY DURING THE INITIAL PART OF THE

```
1    CASE, YOUR HONOR, UNTIL THINGS GET SETTLED DOWN, WE WOULD LIKE

2    PRETRIAL AND THE U.S. ATTORNEY'S OFFICE TO BE INVOLVED IN

3    UNDERSTANDING MR. BROCKMAN'S TRAVEL PATTERNS.

4         WE WERE PERHAPS TOO GENEROUS IN AGREEING THAT, YOU KNOW,

5    GIVEN THE FACT THAT HE'S REPRESENTED BY ATTORNEYS ALL OVER THE

6    COUNTRY, THAT WE WOULDN'T DISPUTE THAT HE SHOULD TRAVEL TO

7    EVERY DISTRICT NECESSARY TO FACILITATE VISITS WITH THOSE

8    LAWYERS, BUT THAT IS THE -- THAT'S WHY THERE ARE SO MANY AGREED

9    DISTRICTS.

10        TYPICALLY IT WOULD BE THE NORTHERN DISTRICT AND WHEREVER

11   THE LAWYER IS, AND IN THIS CASE THERE ARE MANY OF THEM.

12        THERE'S -- THE EXCEPTIONS, OF COURSE, ARE THE DISTRICTS IN

13   OHIO, AND WE JUST THINK IT'S APPROPRIATE TO ALLOW HIM TO

14   CONTINUE TO TRAVEL THERE IF NECESSARY IN THAT HE IS THE CEO OF

15   A COMPANY THAT EMPLOYS THOUSANDS OF PEOPLE.

16           OFFICER CHRISTIAN:  AND IF I COULD ALSO CLARIFY, YOUR

17    HONOR, WOULD HE BE RESIDING IN HOUSTON?  IT SOUNDED LIKE HE

18    MIGHT HAVE A FEW PLACES HE'S RESIDING, WHICH MAKES SUPERVISION

19    CHALLENGING.  SO WHEN THE ORDER OF CONDITIONS OF RELEASE ARE

20    STIPULATED TODAY, HAVING THE ADDRESS THAT HE WILL REMAIN AT IS

21    MORE HELPFUL FOR SUPERVISION, AND USUALLY IN THIS CASE WHAT WE

22    WOULD REQUEST.

23           MR. VARNADO:  AND HE WILL BE RESIDING IN HOUSTON,

24    YOUR HONOR.  HE MAY PERIODICALLY TRAVEL TO COLORADO, BUT HE

25    WILL BE RESIDING IN HOUSTON.
```

1          OFFICER CHRISTIAN:  UNDERSTOOD.

2          THE COURT:  ALL RIGHT.  I'M JUST REVIEWING THE

3    PROPOSED CONDITIONS.  ONE MOMENT.

4          (PAUSE IN PROCEEDINGS.)

5          MR. VARNADO:  YOUR HONOR, I DO HATE TO INTERRUPT.  I

6    DID WANT TO JUST MENTION ONE MORE THING.

7          AGAIN, APOLOGIES.  MR. VARNADO HERE.

8          WHEN WE HAD SPOKEN WITH THE GOVERNMENT -- I JUST HEARD

9    MR. PITMAN SAY THE STANDARD CONDITIONS, AND I'M NOT LOOKING AT

10   THE SAME FORM THAT YOU ARE, BUT WE SPECIFICALLY HAD THAT THE

11   GOVERNMENT WAS NOT SEEKING A CONDITION RELATED TO FIREARMS.

12   THAT MIGHT BE IN THE STANDARD FORM OF THE NORTHERN DISTRICT,

13   I'LL DEFER TO MY COLLEAGUE, MR. STEPHENS.  BUT THAT WAS ONE IN

14   PARTICULAR THAT THE GOVERNMENT SAID THEY WERE NOT -- DID NOT

15   HAVE AN INTEREST IN TRYING TO ENFORCE.

16         THE COURT:  YEAH, HE DID NOT READ THAT ONE AS A

17   CONDITION THAT HE WAS PROPOSING.

18         MR. VARNADO:  VERY WELL.

19         THE COURT:  IT WAS MR. STEPHENS WHO READ IT, BUT

20   MR. PITMAN AGREED TO THE CONDITIONS THAT MR. STEPHENS READ.

21         ALL RIGHT.  I'M THINKING -- WHEN DO THE PARTIES WANT TO

22   APPEAR BEFORE JUDGE ALSUP?  ASSUMING I'M GOING TO ISSUE RELEASE

23   CONDITIONS HERE, WHEN DO YOU WANT TO HAVE THAT NEXT APPEARANCE?

24         MR. STEPHENS:  HOW ABOUT THE FIRST WEEK OF NOVEMBER,

25   YOUR HONOR?  OR SECOND WEEK?

1          THE CLERK:  ACCORDING TO HIS CALENDAR,

2     NOVEMBER AVAILABILITY IS NOVEMBER 17TH OR 24TH.

3          MR. STEPHENS:  SO EITHER ONE OF THOSE DATES IS GOOD

4     BY ME, BY US.

5          MR. VARNADO:  MAYBE THE 17TH WOULD BE PREFERABLE,

6     YOUR HONOR.

7          THE COURT:  ALL RIGHT.  WE'LL SET IT NOVEMBER 17TH

8     BEFORE JUDGE ALSUP IN SAN FRANCISCO.  THAT'LL BE A REMOTE

9     HEARING I ASSUME, UNLESS HE ORDERS OTHERWISE.

10         WHAT TIME IS THAT ON THE 17TH?

11         THE CLERK:  2:00 O'CLOCK, YOUR HONOR.

12         THE COURT:  2:00 O'CLOCK PACIFIC TIME, NOVEMBER 17TH

13    BEFORE JUDGE ALSUP.

14         AND WOULD THE PARTIES LIKE TO EXCLUDE TIME UNTIL THAT DATE

15    FOR SPEEDY TRIAL?

16         MR. STEPHENS:  THAT'S FINE FOR ADEQUATE PREPARATION.

17         THE COURT:  ALL RIGHT.

18         MR. BROCKMAN, WHAT WE'RE TALKING ABOUT IS YOU HAVE A RIGHT

19    TO A TRIAL WITHIN 70 DAYS OF BEING CHARGED.  THAT TIME PERIOD

20    CAN BE EXTENDED SO THAT YOUR ATTORNEYS CAN INVESTIGATE THE

21    CHARGES AGAINST YOU AND COMMUNICATE WITH THE GOVERNMENT AND

22    LOOK AT ANY DISCOVERY THAT THE GOVERNMENT PRODUCES TO THEM.

23         SO FOR THE EFFECTIVE PREPARATION OF COUNSEL, I'LL EXCLUDE

24    TIME UNTIL NOVEMBER 17TH, 2020.

25         MR. STEPHENS:  YOUR HONOR, WE WOULD MAKE OUR REQUEST

1        FOR RULE 16 DISCOVERY.

2                   THE COURT:  MR. PITMAN HEARS THAT AND WILL RESPOND.

3                   MR. PITMAN:  YES.

4                   THE COURT:  VERY GOOD.  ALL RIGHT.

5            THESE THEN WILL BE THE CONDITIONS OF RELEASE WHICH I'M

6        ORDERING, AND I'M GOING TO REVIEW THEM WITH YOU AND PROVIDE YOU

7        A WRITTEN COPY.  MY DEPUTY IS GOING TO ASSIST ME BY WRITING

8        THEM DOWN AS I RECOUNT THEM, AND WE'LL GET IT TO YOU LATER

9        TODAY.

10           THESE ARE GOING TO BE TEMPORARY CONDITIONS BECAUSE I WANT

11       PRETRIAL TO LOOK INTO THESE CONDITIONS FURTHER.  THEY MAY AGREE

12       THAT THESE ARE THE PERMANENT ONES, BUT IF THEY HAVE PROPOSED

13       MODIFICATIONS, I WANT TO SET A ZOOM HEARING IN TWO WEEKS FROM

14       TODAY ON THE 29TH AT WHICH POINT WE CAN COME BACK TO MODIFY

15       THESE, IF APPROPRIATE, OR YOU MAY ALL AGREE THAT THEY'RE FINE

16       AND DON'T NEED MODIFICATION.  BUT I DO WANT TO HAVE AN

17       OPPORTUNITY TO FOLLOW UP ONCE I'VE GOTTEN SOME MORE FINANCIAL

18       INFORMATION ABOUT MR. BROCKMAN.

19           THE TEMPORARY CONDITIONS ARE THAT MR. BROCKMAN IS ORDERED

20       RELEASED ON A $1 MILLION UNSECURED BOND.  AND IT MAY VERY WELL

21       BE THAT THERE ARE SOME PROPERTIES THAT COULD BE POSTED TO

22       SECURE THAT, AND I WANT PRETRIAL TO LOOK INTO WHETHER THERE'S

23       AN APPROPRIATE PROPERTY OR PROPERTIES THAT CAN SECURE THE BOND,

24       BUT I'M USING THAT FIGURE.  IT'S, OF COURSE, MORE THAN WHAT THE

25       DEFENSE SUGGESTS, AND IT'S NOT SECURED LIKE THE GOVERNMENT

1    WOULD BE REQUESTING, BUT IT'S IN LIGHT OF THE FACT THAT

2    MR. BROCKMAN HAS KNOWN ABOUT THE POTENTIAL CHARGE FOR A NUMBER

3    OF YEARS AND HAS NOT FLED.

4         ON THE OTHER HAND, THERE ARE SERIOUS CHARGES OF

5    CONCEALMENT AND EVASION AND EVIDENCE TAMPERING, DESTRUCTION OF

6    EVIDENCE, THAT ARE CONCERNING AND SUGGEST, WITH MR. BROCKMAN'S

7    FINANCIAL ABILITY AND CAPABILITY TO FLEE THE COUNTRY, THAT

8    THERE SHOULD BE A SIGNIFICANT BOND.  SO THAT'S WHY I'M THINKING

9    A MILLION DOLLARS.

10        IT COULD BE THAT PRETRIAL SAYS THAT THAT SHOULD BE LOWERED

11   OR RAISED OR SECURED IN SOME WAY, BUT THIS WILL ALLOW PRETRIAL

12   TO GATHER MORE INFORMATION FROM THE PARTIES AND MAKE A REPORT

13   TO THE COURT.

14        AND ON THAT $1 MILLION UNSECURED BOND, THE DEFENDANT MUST

15   COME TO COURT WHEN ORDERED.  THE NEXT COURT DATE IS BEFORE ME

16   ON THE 29TH OF OCTOBER FOR A FOLLOW-UP.

17        AND IF HE IS SENTENCED, HE MUST SURRENDER TO SERVE ANY

18   SENTENCE IMPOSED.

19        WHILE ON RELEASE, HE MAY NOT COMMIT ANY FEDERAL, STATE, OR

20   LOCAL CRIME.

21        HE MUST NOT HARASS, THREATEN, INTIMIDATE, INJURE, TAMPER

22   WITH, OR RETALIATE AGAINST ANY WITNESS, VICTIM, JUDGE, OR

23   JUROR, AND MAY NOT OBSTRUCT ANY CRIMINAL INVESTIGATION.

24        HE'LL BE SUBJECT TO PRETRIAL SERVICES' SUPERVISION, AND HE

25   MUST CONTACT PRETRIAL BY TOMORROW -- OFFICER CHRISTIAN WILL

1    PROVIDE THE NUMBER FOR THAT FOLLOW-UP COMMUNICATION -- AND

2    REPORT THEREAFTER TO PRETRIAL SERVICES.

3         I EXPECT THAT THE HOUSTON OFFICE WILL BE DOING THE LOCAL

4    SUPERVISION, BUT PRETRIAL WILL ESTABLISH THAT.

5         THE PASSPORT I'VE SEEN IN COUNSEL'S HAND.  THAT MUST BE

6    SURRENDERED TO PRETRIAL SERVICES.

7         AND OFFICER CHRISTIAN, WHEN SHOULD WE MAKE THAT DEADLINE?

8         OFFICER CHRISTIAN:  IF WE CAN MAKE THAT DEADLINE

9    MONDAY SO THAT THEY CAN OVERNIGHT IT TOMORROW?

10         THE COURT:  ALL RIGHT.  SO TO PRETRIAL BY MONDAY, THE

11    19TH.

12         AND MR. BROCKMAN MAY NOT APPLY FOR A PASSPORT OR OTHER

13    DOCUMENTS TO LEAVE THE UNITED STATES.

14         WHILE ON RELEASE, MR. BROCKMAN MAY NOT CHANGE HIS

15    RESIDENCE OR TELEPHONE NUMBER WITHOUT ADVANCE APPROVAL OF

16    PRETRIAL SERVICES.  THAT MEANS HE NEEDS TO PROVIDE PRETRIAL

17    WITH HIS PRIMARY RESIDENCE AND TELEPHONE CONTACT INFORMATION,

18    AND HE MAY NOT CHANGE THOSE WITHOUT ADVANCE APPROVAL OF

19    PRETRIAL SERVICES.

20         I WILL IMPOSE THE TRAVEL RESTRICTIONS THE PARTIES AGREED

21    TO.  I AM CONCERNED THAT THEY ARE ADMINISTRATIVELY CHALLENGING

22    TO ENFORCE, AND PRETRIAL CAN LOOK INTO WHETHER THESE REMAIN TO

23    BE VIABLE OR NOT.

24         BUT THE CONDITIONS OF TRAVEL ARE RESTRICTED TO THE

25    SOUTHERN DISTRICT OF TEXAS; THE DISTRICT OF COLORADO; THE

1    NORTHERN DISTRICT OF CALIFORNIA, THAT'S THIS DISTRICT; THE

2    SOUTHERN DISTRICT OF NEW YORK; THE DISTRICT OF COLUMBIA; THE

3    EASTERN DISTRICT OF VIRGINIA; AND THE SOUTHERN AND NORTHERN

4    DISTRICTS OF OHIO.

5        AND MR. PITMAN IS OBLIGATED TO PROVIDE TO THE DEFENSE

6    INFORMATION ABOUT WHERE THOSE DISTRICTS ARE SO THAT

7    MR. BROCKMAN CAN COMPLY.  WE'VE GOT A MAP OF THE NORTHERN

8    DISTRICT OF CALIFORNIA.  THAT'S FROM MONTEREY UP TO THE OREGON

9    BORDER.  BUT SOME OF THOSE OTHER DISTRICTS ARE GERRYMANDERED

10   AND CAN BE A BIT TRICKY ABOUT WHERE THEY ARE.

11       SO, MR. PITMAN, IF YOU CAN ALERT THE DEFENSE TO WHERE

12   THOSE JURISDICTIONS ARE, WHERE IT'S NOT AN ENTIRE STATE -- FOR

13   EXAMPLE, THE SOUTHERN DISTRICT OF TEXAS HAS GOT SORT OF JAGGED

14   LINES -- PLEASE PROVIDE THAT INFORMATION TO THE DEFENSE SO THAT

15   MR. BROCKMAN DOES NOT HAVE AN INADVERTENT VIOLATION GOING

16   SOMEWHERE WHERE HE'S NOT SUPPOSED TO.

17              MR. PITMAN:  YES, YOUR HONOR.

18              THE COURT:  MR. PITMAN, DID I HIT THE STANDARD

19   CONDITIONS THAT YOU WANTED TO BE IN THERE?

20              MR. PITMAN:  YOU DID, YOUR HONOR.

21       THE ONLY ADDITIONAL WRINKLE DURING THESE COVID TIMES IS

22   THAT I WOULD LIKE THE COURT TO ORDER MR. BROCKMAN TO REPORT TO

23   THE MARSHALS, AS WELL AS PRETRIAL, IN THE SOUTHERN DISTRICT OF

24   TEXAS FOR BOOKING.

25              THE COURT:  THANK YOU FOR THAT REMINDER, AND I AGREE.

1     I DON'T KNOW HOW THE MARSHALS IN HOUSTON ARE DOING THEIR

2     BOOKING PROCESS.  IT'S DIFFERENT IN EACH JURISDICTION IN THE

3     COUNTRY.

4         SO WHAT I'LL ASK YOU TO DO IS TO PROVIDE MR. STEPHENS WITH

5     THE INFORMATION FOR THE U.S. MARSHALS IN HOUSTON.

6         AND MR. BROCKMAN, I'M ORDERING YOU, WITHIN THE NEXT WEEK,

7     BY THE 22ND -- AND YOUR ATTORNEYS CAN ESCORT YOU FOR THIS

8     VISIT -- TO BE BOOKED BY THE U.S. MARSHALS THERE, AND THAT'S SO

9     THAT -- YOU WON'T BE GOING INTO THEIR CUSTODY, BUT IT'S SO THAT

10    YOU'LL BE FINGERPRINTED, I EXPECT, AND WILL BE -- IT'LL BE

11    FORMALIZED THAT YOU HAVE BEEN PRESENTED WITH THESE CHARGES AND

12    ARE IN THE SYSTEM.  THAT'LL HELP SECURE YOUR FUTURE COURT

13    APPEARANCES.

14        MR. VARNADO:  YOUR HONOR, JUST SO THE COURT KNOWS, WE

15    DID REACH OUT TO THE MARSHALS SERVICE ALREADY.  THINGS ARE

16    WORKING RATHER STRANGELY.  I'M GOING TO GO DOWN THERE TOMORROW

17    TO FIGURE OUT WHAT TO DO.

18        BUT THANK YOU FOR THE WEEK TO DO THAT.  I DIDN'T WANT TO

19    TRY TO COMMIT TO DOING IT TOMORROW BECAUSE THINGS ARE OPERATING

20    RATHER STRANGELY.  WE'LL GET HIM PROCESSED.

21        THE COURT:  VERY GOOD.  AND IF THE ANSWER IS THAT

22    THEY CAN'T ACCOMMODATE YOU, YOU LET ME KNOW.  BUT I HOPE THAT

23    WITHIN A WEEK'S TIME YOU CAN MAKE THAT HAPPEN SAFELY, BUT IT IS

24    A PART OF THE PROCESS THAT DOES NEED SOME PERSONAL

25    PARTICIPATION.

1          ALL RIGHT.  MR. BROCKMAN, IF YOU FAIL TO COMPLY WITH THESE

2     CONDITIONS, THE CONSEQUENCE IS THE GOVERNMENT COULD SEEK A

3     $1 MILLION FORFEITURE FROM YOU.  ALSO, YOU COULD BE HELD IN

4     CUSTODY FOR THE REMAINDER OF THE CASE.

5          IF YOU COMMIT A CRIME WHILE ON RELEASE, THE PUNISHMENT IS

6     INCREASED FROM THE ORDINARY STATUTORY MAXIMUM.

7          MR. BROCKMAN, DO YOU UNDERSTAND THE CONDITIONS OF RELEASE

8     WHICH I DESCRIBED?

9               THE DEFENDANT:  YES, I DO.

10              THE COURT:  AND DO YOU AGREE TO FOLLOW EACH OF THEM?

11              THE DEFENDANT:  I DO.

12              THE COURT:  MAY I SIGN ON YOUR BEHALF THE RELEASE

13    ORDER?

14              THE DEFENDANT:  YES.

15              THE COURT:  ALL RIGHT.  I'LL DO THAT.  WE'LL SEND YOU

16    A WRITTEN COPY OF IT.

17         AND, AGAIN, WE'RE GOING TO COME BACK IN TWO WEEKS BY

18    VIDEO.  SO AT THAT TIME, ANY PARTY CAN TELL ME IF WE SHOULD

19    MODIFY THOSE TEMPORARY RELEASE CONDITIONS, OR YOU CAN TELL ME

20    BEFORE THE HEARING THAT YOU DON'T SEEK MODIFICATION AND THEN

21    WE'LL JUST VACATE THE APPEARANCE ON THE 29TH.

22              OFFICER CHRISTIAN:  IF I COULD ALSO PROVIDE THE

23    ADDRESS TO OVERNIGHT THE PASSPORT AND THE PHONE NUMBER?

24              MR. STEPHENS:  THAT WAS MY NEXT QUESTION, JAY.

25              OFFICER CHRISTIAN:  OKAY.  WE'RE ON THE SAME PAGE

1      THEN.

2           SO IT'S GOING TO BE 450 GOLDEN GATE AVENUE, AND THAT'S

3      GOING TO BE SUITE 18-5497.  AGAIN, IT'S 450 GOLDEN GATE, SUITE

4      18-5497, AND IT CAN BE ADDRESSED TO PRETRIAL SERVICES.  AND

5      THAT'S IN SAN FRANCISCO, CALIFORNIA, 94102.

6           AND PROVIDING THE CONTACT INFORMATION FOR THE DEFENDANT TO

7      FOLLOW-UP TOMORROW AFTER 10:30 FOR THE ASSIGNED OFFICER TO

8      ARRANGE THE INTERVIEWS, AND TO ALSO HOPEFULLY HAVE SOME

9      LOGISTICS FIGURED OUT ON OUR END, THAT NUMBER IS 415-436-7501.

10     415-436-7501.

11               MR. STEPHENS:  VERY GOOD.  THANK YOU.

12               OFFICER CHRISTIAN:  YEAH.

13               THE COURT:  ALL RIGHT.  I THINK THAT'S EVERYTHING.

14     WE'VE EXCLUDED TIME, WE'VE SET THE FURTHER COURT DATES, AND

15     PRETRIAL WILL BE COMMUNICATING FURTHER WITH YOU ABOUT ANY

16     FURTHER MODIFICATION OF THOSE RELEASE CONDITIONS.

17          MR. PITMAN, ANYTHING FURTHER WE SHOULD DO IN THIS CASE?

18               MR. PITMAN:  NO.  THANK YOU, YOUR HONOR.

19               THE COURT:  THANK YOU VERY MUCH.

20          MR. STEPHENS, ANYTHING FURTHER?

21               MR. STEPHENS:  NO.  THANK YOU, YOUR HONOR, FOR TAKING

22     SO MUCH TIME ON A VERY CROWDED CALENDAR.

23               THE COURT:  YOU'RE WELCOME.  THANKS ALL FOR YOUR

24     WAITING AND PATIENCE.

25               THAT CONCLUDES THIS MATTER.

1    HAVE A GOOD DAY, MR. BROCKMAN.  WE'LL SEE YOU IN TWO

2    WEEKS.

3         OFFICER CHRISTIAN:  I THINK MS. HARRELL HAS ONE EXTRA

4    QUESTION.

5         THE COURT:  OH, YES.

6         THE CLERK:  IF COUNSEL CAN PROVIDE THE DEFENDANT'S

7    ADDRESS VIA E-MAIL SO I CAN PUT IT ON THE BOND, THAT WOULD BE

8    VERY APPRECIATED.

9         MR. STEPHENS:  YES, MS. HARRELL.  WE'LL DO THAT RIGHT

10   AFTER THIS CALL.

11        THE CLERK:  THANK YOU.

12        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

13        MR. PITMAN:  THANK YOU, YOUR HONOR.

14        THE COURT:  AND WE'LL GET THE RELEASE ORDER OUT TO

15   YOU LATER TODAY.

16        MR. STEPHENS:  THANK YOU, YOUR HONOR.

17        THE COURT:  ALL RIGHT.  HAVE A GREAT DAY.  THANK YOU

18   VERY MUCH.

19        THE DEFENDANT:  BYE.  THANK YOU.

20       (THE PROCEEDINGS WERE CONCLUDED AT 12:59 P.M.)

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  OCTOBER 27, 2020

19

20

21

22

23

24

25