Jason Varnado (State Bar No. 211067)
jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone +1-832-239-3939
Facsimile +1-832-239-3600

Neal J. Stephens (State Bar No. 152071)
nstephens@jonesday.com
Vincent Doctor (State Bar No. 319408)
vdoctor@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:   +1.650.739.3939
Facsimile:   +1.650.739.3900

Kathryn Keneally
(appearance *pro hac vice*)
New York State Bar No. 1866250
kkeneally@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-047
Telephone:  +1-212-326-3939
Facsimile:    +1-212-755-7306

Attorneys for Defendant
ROBERT T. BROCKMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>Defendant. | Case No. 3:20-cr-00371-WHA<br><br>DEFENDANT ROBERT T. BROCKMAN'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART FOR LACK OF VENUE AND TO TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS<br><br>Date:          December 15, 2020<br>Time:          12:00 p.m.<br>Judge:        Hon. William Alsup<br>Place:         Courtroom 12 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on December 15, 2020, at 12:00 p.m., in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Robert T. Brockman will, and hereby does, respectfully move (i) pursuant to Federal Rule of Criminal Procedure 21(b) to transfer this case from the Northern District of California to the Southern District of Texas, and (ii) to dismiss Counts Nine through Fourteen of

the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(A)(i) for improper venue, or in the alternative, to transfer Counts Nine through Fourteen to the Southern District of Texas.

This motion is based on the attached memorandum of points and authorities.

Dated: November 30, 2020                    Respectfully submitted,

                                            JONES DAY


                                            *s/ Neal J. Stephens*
                                            NEAL J. STEPHENS

                                            Counsel for Defendant
                                            ROBERT T. BROCKMAN

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   FACTS ................................................................................................................ 4

   A.   Indictment ................................................................................................. 4

     1.   The charges ................................................................................... 4

     2.   Allegations relevant to venue........................................................ 5

III.   ARGUMENT ...................................................................................................... 7

   A.   This case should be transferred in full to the Southern District of Texas ..................... 7

   B.   Mr. Brockman's Houston "location" supports transfer to the Southern District of Texas ("*Platt* factor" #1) ................................................................. 8

     1.   Mr. Brockman's residence is in Houston....................................... 8

     2.   Mr. Brockman's failing health underscores the need for a transfer to the district where he is resident.................................................................. 9

   C.   The "location of possible witnesses" favors Houston over San Francisco ("*Platt* factor" #2) .................................................................. 10

   D.   The "location of events likely to be in issue" is substantially in Houston and the rest of the world, but least of all in this District ("*Platt* factor" #3)........................................ 13

   E.   The "disruption" factor favors transfer ("*Platt* factor" #5)........................................... 14

   F.   The "location of counsel" weighs equally between San Francisco and Houston ("*Platt* factor" #7) .................................................................. 14

   G.   "Docket conditions in each district involved" favor the Southern District of Texas ("*Platt* factor" #9) .................................................................. 14

   H.   The remaining three particularized factors – "location of documents and records likely to be involved," ("*Platt* factor" #4) "expense to the parties," ("*Platt* factor" #6) and "relative accessibility of place of trial" ("*Platt* factor" #8) – are neutral or favor transfer......................................................................................................... 16

   I.   This case presents "other special elements" as contemplated by *Platt* ("*Platt* factor" #10) ......................................................................................... 16

IV.   THIRTEEN COUNTS MUST BE DISMISSED OR TRANSFERRED FOR SEPARATE REASONS ......................................................................................... 16

   A.   The FBAR Counts Nine through Fourteen must be dismissed in this District for improper venue, and if not dismissed, must be transferred to the Southern District of Texas ......................................................................................................... 16

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

B.       The tax evasion Counts Two through Eight must be transferred ................................. 18

4

V.       CONCLUSION ........................................................................................................... 18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

CASES

*In re Balsimo,*
    68 F.3d 185 (7th Cir. 1995)...................................................................................9

*Johnston v. United States,*
    351 U.S. 215 (1956)...........................................................................................19

*Platt v. Minnesota Min. & Mfg. Co.,*
    376 U.S. 240 (1964) ..................................................................................... *passim*

*Sturgis v. Goldsmith,*
    796 F.2d 1103 (9th Cir. 1986).............................................................................14

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001) .............................................................................................14

*United States v. Benson,*
    2015 WL 1869476 (N.D. Cal. Apr. 22, 2015) ......................................................14

*United States v. Bowdoin,*
    770 F. Supp. 2d 133 (D.D.C. 2011) ....................................................................11

*United States v. Bugai,*
    162 F.3d 1162, 1998 WL 553168 (6th Cir. 1998) (unpublished table opinion) ......20

*United States v. Chun,*
    2019 WL 6683878 (E.D. Mich. Dec. 6, 2019).......................................................14

*United States v. Clinton,*
    574 F.2d 464 (9th Cir. 1978)..........................................................................19, 20

*United States v. Cooper,*
    2019 WL 404962 (D. Haw. Jan. 31, 2019) .......................................................9, 10

*United States v. DiJames,*
    731 F.2d 758 (11th Cir. 1984).............................................................................19

*United States v. Fannin,*
    2017 WL 9401160 (E.D. Ky. Aug. 15, 2017) (magistrate recommendation),
    *adopted by* 2017 WL 5451751 (E.D. Ky. Nov. 14, 2017) ......................................15

*United States v. Fritts,*
    2005 WL 3299834 (N.D. Cal. Dec. 6, 2005) (Alsup, J.) ................................. *passim*

*United States v. Garman*,
748 F.2d 218 (4th Cir. 1984) ................................................................................. 19

*United States v. Hassanshahi*,
185 F. Supp. 3d 55 (D.D.C. 2016) ........................................................................ 20

*United States v. Hicks*,
947 F.2d 1356 (9th Cir. 1991) ............................................................................... 19

*United States v. Miller*,
314 F.R.D. 574 (S.D. Ohio 2016) .......................................................................... 18

*United States v. Shayota*,
2015 WL 9311922 (N.D. Cal. Dec. 23, 2015) ...................................................... 18

*United States v. Testa*,
548 F.2d 847 (9th Cir. 1977) ................................................................................... 9

*United States v. Weaver*,
2013 WL 12438331 (S.D. Fla. Feb. 22, 2013) ...................................................... 10

*United States v. Williams*,
2013 WL 4510599 (D. Haw. Aug. 22, 2013) ........................................................... 9

**STATUTES**

18 U.S.C. § 371 ............................................................................................................ 4

18 U.S.C. § 1343 .......................................................................................................... 5

18 U.S.C. § 1512(b)(2)(B) ........................................................................................... 6

18 U.S.C. § 1512(c)(1) ................................................................................................. 6

18 U.S.C. §§ 1956(a)(1)(A)(ii), (a)(1)(B)(i) and (a)(2)(B)(i) ..................................... 5

18 U.S.C. § 3237(b) ................................................................................................ 1, 21

18 U.S.C. § 4241(a) ............................................................................................ 2, 13, 14

18 U.S.C. § 4247(d) .................................................................................................... 14

26 U.S.C. § 7201 .......................................................................................................... 4

31 U.S.C. §§ 5314 and 5322 ........................................................................................ 5

CARES Act § 15002(b) .............................................................................................. 14

**OTHER AUTHORITIES**

Fed. R. Crim. P. 18 .................................................................................................19

Fed. R. Crim. P. 12(b)(3)(A)(i) ....................................................................1, 2, 21

Fed. R. Crim. P. 21(b) ...................................................................................... *passim*

U.S. Const. Amend. VI ...........................................................................................19

U.S. Const. Art. III, § 2 ..........................................................................................19

U.S. Dep't of Justice, Criminal Tax Manual § 6.01[2] (2012) .............................10

**DEFENDANT ROBERT T. BROCKMAN'S MOTION TO DISMISS IN PART FOR LACK OF VENUE AND TO TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS**

To the Honorable United States District Judge William Alsup:

The Defendant Robert T. Brockman moves (i) pursuant to Federal Rule of Criminal Procedure 21(b) to transfer this case from the Northern District of California to the Southern District of Texas, and (ii) to dismiss Counts Nine through Fourteen of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(A)(i) for improper venue, or in the alternative, to transfer Counts Nine through Fourteen to the Southern District of Texas.[1]  Defense counsel met and conferred with government counsel, who oppose the relief sought in this Motion.

In support of this Motion, the Defendant states as follows.

## I.      INTRODUCTION

This Court has recognized that there is no presumption favoring the prosecution's choice of venue.  United States v. Fritts, 2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005) (Alsup, J.). The Supreme Court has set out a ten-factor test to determine when to transfer a criminal proceeding pursuant to Rule 21(b).  Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240, 243-44 (1964).  The most significant factors strongly favor transferring this case to the Southern District of Texas, and the remaining factors are neutral between the two venues.  Moreover, there is no basis for venue in this District as to six counts in the Indictment.

Robert T. Brockman, the sole defendant in this criminal case, is a 79-year-old resident of Houston, Texas.  The Indictment against him does not allege that he was physically present or personally committed any act in the Northern District of California.  Rather, it relies on allegations of financial transactions in which funds purportedly moved through accounts located here, materials that were allegedly sent to individuals here, and the presence of the grand jury in this District.  The three potential witnesses identified in the Indictment as Individuals One, Two,

---

[1] There is already pending before the Court Defendant Robert T. Brockman's Notice of Motion And Motion For Change of Venue on Counts Two Through Eight, made pursuant to 18 U.S.C. § 3237(b), filed November 2, 2020 ("Defendant's § 3237(b) Motion").  Def.'s Mot. for Change of Venue, ECF No. 21.  If that motion is denied under § 3237(b), transfer to the Southern District of Texas should be granted pursuant to Rule 21(b) for all the reasons stated in this Motion.

Motion. to Dismiss in Part for Lack of Venue and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 1 -

and Three are located in England or Bermuda; Austin, Texas; and Oxford, Mississippi; and the Indictment does not allege that their involvement took place in this District.  Although the Indictment pleads some impact in this District for certain counts, it is clear that the gravamen of the alleged offenses lies elsewhere, and the central events and the location of the witnesses are more strongly tied to the Southern District of Texas.

As to Counts Nine through Fourteen of the Indictment alleging failure to file Foreign Bank Account Reports ("FBARs"), there is a complete absence of venue in this District.  Those counts must be dismissed on the face of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(A)(i), and can only be brought in the Southern District of Texas, where Mr. Brockman resides, or in the Northern District of Virginia, where the filings were purportedly due to be made.

Additional circumstances specific to this case compel that it proceed in the Southern District of Texas.  Foremost, Mr. Brockman is in failing health, and counsel for Mr. Brockman will be making a motion pursuant to 18 U.S.C. § 4241(a) for a hearing to determine whether Mr. Brockman lacks the ability to assist in his own defense.  All of the witnesses relevant to that determination, including medical professionals, are located in Houston.[2]

As will be set out in more detail in the motion addressed to the specific issue of Mr. Brockman's ability to assist in his defense, Mr. Brockman began to raise concerns about memory deficiencies with his oncologist in 2018.  *See* Pool Decl. ¶ 3.[3]  That doctor referred him to Dr. James Pool, a primary care physician affiliated with the Baylor College of Medicine in Houston, who made a preliminary diagnosis of Parkinson's disease, with resulting cognitive loss. Pool Decl. ¶ 3.  Dr. Pool in turn referred Mr. Brockman to Dr. Joseph Jankovic and Dr. Melissa Yu, both medical doctors, and to Dr. Michele York, a neuropsychologist, all Houston-based doctors specializing in movement disorders.  Pool Decl. ¶ 4.  In late 2018 and early 2019, these medical professionals diagnosed that Mr. Brockman's symptoms were consistent with

---

[2] At the hearing on November 17, 2020, counsel for the defense advised the Court of our intention to make a motion pursuant to 18 U.S.C. § 4241(a), which the Court directed to be filed by December 8, 2020.

[3] "Pool Decl." refers to the Declaration of James L. Pool, M.D., affirmed November 25, 2020 and submitted in support of this Motion.

Parkinson's disease, parkinsonism, or Lewy body dementia, or some combination of the three.[4] Pool Decl. ¶ 5.  A precise diagnosis of these conditions can be confirmed only post-mortem.  Pool Decl. ¶ 5.  All are characterized by progressive dementia.  While some symptoms may be alleviated, Mr. Brockman's condition is not curable.  Pool Decl. ¶ 5.

Mr. Brockman undertook these medical consultations for reasons of his personal health, without notice to any lawyer and not for any legal reason.  Mr. Brockman first disclosed his medical condition to counsel in July 2019.  Keneally Decl. ¶ 6.[5]  Counsel subsequently obtained each doctor's contemporaneous medical reports, and in some instances obtained follow-up letters to address the impact of Mr. Brockman's medical condition on his ability to assist in his defense.  Keneally Decl. ¶¶ 7, 8.  Each of these doctors has concluded that Mr. Brockman is not capable of assisting in the defense of a criminal case against him.  Keneally Decl. ¶¶ 11, 12; Pool Decl. ¶ 7.[6]

In early October 2020, prior to being notified of the Indictment, Mr. Brockman returned for his annual examination with Dr. Pool.  At counsel's request, Dr. Pool conducted cognitive tests, and again referred Mr. Brockman to Dr. York for the same battery of tests administered previously.  The results of these examinations confirm that Mr. Brockman's impairment is progressive and renders him unable to assist in his defense.  Keneally Decl. ¶ 13.

Mr. Brockman's medical issues, in and of themselves, support transfer to his resident district.  The hearing and other proceedings necessary to determine whether Mr. Brockman can even stand trial should take place in Houston.

For these reasons and the reasons explained below, certain counts of the Indictment must be dismissed for lack of venue, the Southern District of Texas is a more appropriate forum for the

---

[4] Parkinson's disease is a progressive nervous system disorder that affects movement and may cause dementia.  Parkinsonism is a term used to describe a condition that causes a combination of the movement abnormalities seen in Parkinson's disease, especially resulting from the loss of dopamine-containing neurons.  Lewy body dementia results from protein deposits, called Lewy bodies, that develop in nerve cells in the brain regions involved in thinking, memory, and movement.

[5] "Keneally Decl." refers to the Declaration of Kathryn Keneally, affirmed November 30, 2020 and submitted in support of this Motion.

[6] Counsel provided the medical reports, supporting letters, and the results of the forensic tests to the government in April 2020, and encouraged the government to investigate this issue by direct contact to these physicians, but the government made no attempt to explore Mr. Brockman's condition with his medical providers prior to securing the Indictment.  Keneally Decl. ¶ 8.

entire matter, and Mr. Brockman respectfully moves for a transfer to that district under Federal Rule of Criminal Procedure 21(b).

## II.     FACTS

### A.     Indictment

#### 1.     The charges

On October 15, 2020, the government unsealed the Indictment against Mr. Brockman dated October 1, 2020, in advance of his arraignment,[7] charging:

(a)     <u>Count One</u>:  conspiracy to defraud the United States and to commit tax evasion, in violation of 18 U.S.C. § 371; and <u>Counts Two through Eight</u>:  tax evasion for the years 2012 through 2018, in violation of 26 U.S.C. § 7201.

The Indictment alleges that Mr. Brockman conspired "to conceal from the IRS capital gain income BROCKMAN earned as a result of his investments in Vista funds through Point" by means of a "false paper trail regarding his offshore structure" to obscure his "full dominion and control" over various entities, Indictment ¶¶ 30-32, and filed false tax returns in 2012 through 2018, because he purportedly "failed to accurately report and pay income tax on capital gain income he earned as a result of his investments in Vista funds through Point."  Indictment ¶¶ 128-34.  The Indictment describes how the A. Eugene Brockman Charitable Trust (the "AEBCT"), a Bermudian trust settled by Mr. Brockman's father, indirectly held an ownership interest in Point Investments, Ltd. ("Point").  Indictment ¶¶ 6, 7.  The Indictment alleges that Mr. Brockman controlled the AEBCT, and thereby controlled Point, and as a result should be charged with the income from Vista earned by Point.

(b)     <u>Counts Nine through Fourteen</u>:  failure to file FBARs for the years 2013 through 2018, in violation of 31 U.S.C. §§ 5314 and 5322.

The Indictment alleges that Mr. Brockman controlled entities called Edge Capital Investments, Ltd.("Edge") and Cabot Global Investments, Ltd. ("Cabot").  Indictment ¶¶ 11, 12. The Indictment recites that Mr. Brockman had an obligation to file FBARs reporting whether he had "a financial interest in, and signatory and other authority over" financial accounts in foreign

---

[7] The Indictment and the non-prosecution agreement of a related witness were the subject of media reports prior to the arraignment.

countries with an aggregate value in excess of $10,000, and that he allegedly willfully failed to meet this reporting obligation concerning Point and Edge for the years 2013 through 2018, and also for Cabot for the latter five of those years.  Indictment ¶¶ 149-60.

        (c)    <u>Counts Fifteen through Thirty-Four</u>:  wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343.

These twenty wire fraud counts are based on a single alleged scheme, with each count citing a separate wire transmission.  Stated at their simplest, these counts contend that Edge purchased the debt of Dealer Computer Services, Inc. ("DCS"), the company of which Mr. Brockman was formerly Chairman and CEO, in violation of contract provisions that restricted the purchase of that debt by a party "affiliated" with DCS.  Indictment ¶¶ 4, 161-89.

        (d)    <u>Counts Thirty-Five through Thirty-Seven</u>:  money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(ii), (a)(1)(B)(i) and (a)(2)(B)(i).

The three money laundering charges are derivative of the wire fraud allegations. Indictment ¶¶ 190-92.

        (e)    <u>Counts Thirty-Eight and Thirty-Nine</u>:  evidence tampering in violation of 18 U.S.C. § 1512(b)(2)(B) and destruction of evidence in violation of § 1512(c)(1).

These counts allege that Mr. Brockman caused "Individual One" to destroy evidence, including evidence in the possession of "Individual Three."  Indictment ¶¶ 193-98.

### 2.   Allegations relevant to venue

The Indictment states:  "At all times relevant to this Indictment," Mr. Brockman "was a United States citizen residing in Houston, Texas and Pitkin County, Colorado."  Indictment ¶ 1. The Indictment nowhere alleges that Mr. Brockman personally acted in, or communicated to or from, the Northern District of California, nor in or from any place other than Houston.

Three potential witnesses are referenced in the Indictment.

"Individual One" is recognizable as Evatt Tamine, who in the government's characterization became a manager of "BROCKMAN's foreign entities" in 2007, Indictment ¶ 10, and in 2010 became a "director" of the Bermuda entity that acted as trustee for the Bermuda-based AEBCT.  Indictment ¶¶ 6, 9.  The conspiracy Count One charges ninety-one overt acts by Mr. Brockman between 1999 and 2019, Indictment ¶¶ 43-88, 90-134, including

dozens by which he allegedly "directed" or "instructed" Tamine by "encrypted email" to take various actions with respect to the AEBCT and other entities.

The Indictment does not allege where Mr. Brockman was when he gave such "directions," or that he did so from anywhere other than his residence city of Houston.  Nor do any of the 142 references to "Individual One" allege where Tamine acted, except for "several trips from places outside the United States into the United States" (but apparently not to this District) allegedly for the destruction of records.  Indictment ¶ 196(c).  The Indictment omits to mention that at all relevant times Tamine himself was based in Bermuda, although he also bought a house in Sydney, Australia, and we understand also had homes at various times in England, Switzerland and other locations in Europe.  Indictment ¶¶ 89-90; Keneally Decl. Ex. C, at 2.[8]

"Individual Two" is Robert Smith, who formed the private equity firm Vista.  Indictment ¶ 8.[9]  The government relies on the allegation that Vista "maintained its principal place of business" in this District.  Indictment ¶ 8.  However, this has not been true for almost ten years.  According to its own website and press accounts, Smith moved Vista's headquarters in 2011 to Austin, Texas, where Smith resides, "seeking to escape the Silicon Valley bubble."  Keneally Decl. Ex. G, Ex. H, at 7.  Today, Vista's LinkedIn and Pitchbook Profiles both reflect that Vista remains primarily based in Austin.  Keneally Decl. Ex. I, Ex. J.  The Indictment's references to Smith have nothing to do with activity in this District.  Indictment ¶¶ 8, 34, 36, 57, 94.

"Individual Three" is the widow of a deceased colleague of Mr. Brockman, from whom Tamine allegedly recovered and destroyed records in 2016.  Indictment ¶ 196.a and 196.c.  Individual Three is retired and lives in Oxford, Mississippi.  Keneally Decl. ¶ 30.

Apart from certain Vista bank account transactions, Indictment ¶ 39, the only other

---

[8] On August 29, 2018, the Bermuda Police Service obtained and subsequently executed a warrant to search Tamine's Bermuda home for evidence of criminal activity.  Keneally Decl. Ex. D.  On October 2, 2018, Tamine signed a letter agreement with the Department of Justice ("DOJ") by which he promised "continued long-term cooperation with the government's investigation of Robert Smith [Individual Two], Robert Brockman and other related persons and entities," in return for statutory immunity.  Keneally Decl. Ex. E.

[9] The government publicly released Smith's Non-Prosecution Agreement, dated October 9, 2020, with an accompanying Statement of Facts, shortly before the arraignment in this case.  Keneally Decl. Ex. M.  To avoid prosecution, Smith promised to render assistance "pursuant to the specific instructions and control of the United States and its designated investigators," including by testifying against Mr. Brockman.  Keneally Decl. Ex. M, at ¶¶ 3(b) and (f).

allegations concerning transactions with any tie to California are three references to "an investor in the Northern District of California," Indictment ¶¶ 178-79, 183, and multiple references to "Entity One" and "Entity Two."  Indictment ¶ 189.  Specifically, as part of the wire fraud counts, the Indictment alleges that debt that was purchased by Deutsche Bank for resale to Edge was acquired from "an investor in the Northern District of California," Indictment ¶¶ 178-79, 183, and that "Entity One" and "Entity Two" received emails and IntraLink transmissions concerning the sale of the debt and financial information concerning Houston- and Ohio-based Reynolds & Reynolds.  Indictment ¶ 189.

The final counts of the Indictment allege that Mr. Brockman "knew it was likely that there would be a federal grand jury investigation in the Northern District of California," Indictment ¶ 194, and during June through October 2016 did himself and through "Individual One" destroy evidence, including by collecting records from "Individual Three," who lives in Mississippi.  Indictment ¶¶ 193-98.  These counts do not allege that any specific act occurred in this District.

In fact, measured by the number of references in the Indictment, the weight of activity and evidence in this case comes from far beyond this District:  Bermuda (13 references); Switzerland (11); Colorado (5); British Virgin Islands (3); Australia (3); Nevis (3); Delaware (2); Houston (2); Barcelona, Cayman Islands, Florida, and Ohio (1 each).  Keneally Decl. ¶ 37 (collecting citations to Indictment).  By no measure is there a "center of gravity" in this District for this case, which should be transferred to the Southern District of Texas.  *See Fritts*, 2005 WL 3299834, at *5-6 (granting Rule 21(b) transfer of indictment alleging personal tax evasion from sale of advice and services to create trusts and sell offshore investments).

## III.   ARGUMENT

### A.   This case should be transferred in full to the Southern District of Texas

"[T]here is no presumption in criminal cases in favor of the government's choice of forum."  *Fritts*, 2005 WL 3299834, at *2.  Instead, under Rule 21 of the Federal Rules of Criminal Procedure, the court may "transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).  Courts should grant Rule 21(b) motions if, "all

relevant things considered, the case would be better off transferred to another district." *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995) (citing *Platt*, 376 U.S. at 243-44); *United States v. Cooper*, 2019 WL 404962, *2 (D. Haw. Jan. 31, 2019); *see also, e.g.*, *Fritts*, 2005 WL 3299834, at *6 (transferring case because "trial in the District of Oregon would be more convenient for the parties and for the witnesses, on balance, and would be in the interests of justice"). However the standard is expressed, this case belongs in the Southern District of Texas.

When considering Rule 21(b) motions, courts assess the following ten factors specified by the Supreme Court in *Platt*: "(1) location of [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *Platt*, 376 U.S. at 243-44; *see also, e.g.*, *Fritts*, 2005 WL 3299834, at *2; *United States v. Testa*, 548 F.2d 847, 856-57 (9th Cir. 1977) (both applying *Platt* factors in cases with individual defendants). Insofar as they apply in this case, the most important of these factors all favor the Southern District of Texas. And *none* of the ten factors counsel for keeping this case in the Northern District of California.

### B. Mr. Brockman's Houston "location" supports transfer to the Southern District of Texas ("*Platt* factor" #1)

#### 1. Mr. Brockman's residence is in Houston

"'[A]s a matter of policy, a defendant should ordinarily be tried, whenever possible, where he resides.'" *United States v. Williams*, 2013 WL 4510599, at *2 (D. Haw. Aug. 22, 2013) (quoting *United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978)). It is also the policy of the Department of Justice "generally to attempt to establish venue for a criminal tax prosecution in the judicial district of the taxpayer's residence or principal place of business." U.S. Dep't of Justice, Criminal Tax Manual § 6.01[2] (2012). Indeed, even the Constitution's restrictions on venue, which require a trial to take place where the crime was committed, reflect the reality that "'most crimes usually take place in the district where the defendant resides,'" such that the constitutional

"'venue provisions try to reduce the difficulties to the defendant that would be caused by a trial at a distance from his home and friends.'" *United States v. Weaver*, 2013 WL 12438331, at *6 (S.D. Fla. Feb. 22, 2013) (quoting *United States v. DiJames*, 731 F.2d 758, 762 (11th Cir. 1984)).

Mr. Brockman is released on bond and living at home in Houston, 7.4 driving miles from the U.S. District Court for the Southern District of Texas.  Keneally Decl. Ex. A.  By contrast, this Court in San Francisco is 1,642 air miles from Houston.  Keneally Decl. Ex. B. Mr. Brockman's residence thus strongly favors a transfer to Texas.  *See, e.g.*, *Fritts*, 2005 WL 3299834, at *3 (concluding that this factor favored transfer when defendant lived "at least 400 miles from San Francisco").

This factor deserves extra weight given the likely length of any trial in this case.  *See, e.g.*, *Cooper*, 2019 WL 404962, *2 (noting that a longer trial makes the location of the defendant's home more important).  The Indictment spans decades, depicts multiple sets of financial transactions, references numerous individuals and entities, and describes events in many locations.  The government has estimated that it will produce 1.1. terabytes (the equivalent of 22 million pages) of discovery.  Trial will not be a quick affair.

**2.       Mr. Brockman's failing health underscores the need for a transfer to the district where he is resident**

Mr. Brockman's diagnostic and treating physicians have diagnosed him as having Parkinson's disease, vascular parkinsonism, or Lewy body dementia.  He manifests symptoms that include movement disorders and cognitive impairment.  His treating physician advises that these and other health conditions could be made worse by facing legal proceedings in a location distant from his home, stating:  "Unfamiliar environments, stimulating surroundings, and changes in routine would be especially stressful for a person with Mr. Brockman's diminished capacity, creating a risk to his existing cardiac condition, and could exacerbate the overall progression of his symptoms."  Pool Decl. ¶ 10.  When a defendant's "ill health would prevent a defendant from full participation at his own trial, a transfer should be granted."  *United States v. Bowdoin*, 770 F. Supp. 2d 133, 142 (D.D.C. 2011).  Transfer to the Southern District of Texas is necessary to mitigate the risk that the very defense of these proceedings itself becomes punishment for

1    offenses not yet proven.

2        **C.**    **The "location of possible witnesses" favors Houston over San Francisco ("*Platt* factor" #2)**

3        The government has yet to commence production of the 1.1 terabytes of data that it

4    estimates are owed to the defense.  Keneally Decl. ¶ 38.  As a result, the defense's insight into the

5    witnesses likely to testify is limited.  Since the government announced at the pretrial conference

6    on November 17, 2020 that it is ready for trial, it should be required to provide and explain its

7    witness list for analysis of this Motion, in order for the defense to respond in its reply.  For now,

8    the following may be said as to witnesses, recognizing that "[n]ot all witnesses . . . have equal

9    value in this venue-transfer analysis."  *Fritts*, 2005 WL 3299834, at *3.

10        First, "Individual One" Evatt Tamine, whether a resident of Bermuda, England, or

11    Australia, and "Individual Two" Robert Smith, a resident of Austin, Texas, cannot claim greater

12    convenience by a trial in San Francisco, nor any "inconvenience" by a trial in Houston.  Keneally

13    Decl. Ex. C, Ex. F, Ex. M at Statement of Facts ¶ 1.  Apart from geography, given that each

14    avoided prosecution by agreeing, in the words of Smith's deal, to render assistance "pursuant to

15    the specific instructions and control of the United States and its designated investigators," they

16    will show up when and where they are told.  *See* Keneally Decl. Ex. E, Ex. M at ¶ 3(b).  No less

17    than "IRS agents and the government attorney who are potential witnesses," they "are effectively

18    part of the prosecution team.  If they are still so employed, they will be paid for their

19    inconvenience."  *Fritts*, 2005 WL 3299834, at *3.

20        Second, the same can be said for Vista, the firm of which Smith is founder, CEO, and

21    controlling owner.  We address the role of Vista in the Indictment under "the location of events

22    likely to be in issue" below.  *See infra* at Part III.D.  But no matter how extensive or important the

23    evidence of Vista transactions, the government can count on Vista's ready cooperation wherever

24    this case may be tried.  Even if Vista did not have this special incentive, Vista's headquarters at

25    401 Congress Street, Austin, Texas are 146 air miles or 163 driving miles (estimated 2 hours 34

26    minutes) from the Southern District of Texas courthouse at 515 Rusk Street, Houston, Texas.

27    Keneally Decl. Ex. K, Ex. L.  Vista can hardly claim undue inconvenience if the trial is moved to

28    Houston from San Francisco.

Third, the only other likely witnesses identified in this District to date are "custodians of records [who] sometimes are not called at trial because the parties stipulate to the authenticity of and foundation for the records." *Fritts*, 2005 WL 3299834, at *3. This is true of the one or two "investor[s] in the Northern District of California," Indictment ¶¶ 178-79, and "Entity One" and "Entity Two," Indictment ¶¶ 183, 189, which sold DCS debt to Deutsche Bank eleven years ago with no knowledge of or dealings with Evatt Tamine, Mr. Brockman, or the counter-party to whom Deutsche Bank might sell the debt. The same is true of the banks that wired funds at Vista's direction to some entity that is alleged in the Indictment, as any such transfers were anonymous and indistinguishable to the banks from hundreds of other such transfers.

Fourth, and by contrast, the Statement of Facts made by Smith ("Individual Two") in connection with his Non-Prosecution Agreement describes the extensive role of "Individual B, a lawyer in private practice in Houston, Texas who specializes in foreign trusts and 'asset protection' planning," whom the defense recognizes to be Carlos Kepke. Keneally Decl. Ex. M at Statement of Facts ¶ 5. Mr. Kepke's practice is located in Houston, Texas, as reflected on his website, his LinkedIn Profile, and the State Bar of Texas lawyer profile. Keneally Decl. Ex. N, Ex. O, Ex. P. The defense is not aware of Mr. Kepke's role in this investigation, but he is an obvious potential witness.

Fifth, counsel is aware of at least 17 subpoenas that have been presented to individuals and entities located in and around Houston. Keneally Decl. ¶ 36. The Indictment's first eight counts charge conspiracy to evade tax and tax evasion. Mr. Brockman's return preparer is located in Houston, and his tax returns are filed from his residence there. Keneally Decl. ¶ 35. These witnesses do not owe the same fealty to this prosecution, and do not have the same travel flexibility, as Tamine, Smith and Vista, and therefore would suffer genuine inconvenience by a trial in San Francisco.

Sixth, and critical before we get to trial in this case, the location of witnesses who will address Mr. Brockman's health and his inability to assist in his defense mandates a hearing in Houston. As addressed with the Court at the November 17, 2020 appearance, the defense will be filing a motion by December 8, 2020, pursuant to 18 U.S.C. § 4241(a), for a hearing to determine

whether Mr. Brockman can assist in his defense.  Section 4241(a) requires such a hearing "if there is reasonable cause to believe that" a defendant "may presently be . . . mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  Four highly qualified doctors, all based in Houston, examined Mr. Brockman in connection with his medical care, and all four have concluded that Mr. Brockman cannot assist in his defense.  Keneally Decl. ¶¶ 8-13; *see* Pool Decl. ¶¶ 3-5, 7.  Further proceedings to decide this issue are likely to be lengthy and complex.[10] None of the witnesses or evidence to be presented in such proceedings are in this District.

It would be difficult under ordinary circumstances for the Houston-based medical witnesses to travel to San Francisco for a hearing.  As Dr. Pool explains, during the pendency of the COVID-19 pandemic, these doctors would be confronted with the increased risk of exposure and the potential need to quarantine before and after travel, which would have a detrimental impact on other patients.  Pool Decl. ¶ 8.  Dr. Pool also advises that Mr. Brockman's age and medical conditions put him at increased risk for severe illness were he to contract COVID-19. Pool Decl. ¶ 9.

The defense will call upon other Houston-based witnesses as well, including Mr. Brockman's wife of fifty-one years, and friends and colleagues who have observed Mr. Brockman in recent years.  *See* 18 U.S.C. § 4247(d) (requiring that defendant "be afforded an opportunity to testify, to present evidence, [and] to subpoena witnesses on his behalf" at competency hearing); *United States v. Benson*, 2015 WL 1869476, *18 (N.D. Cal. Apr. 22, 2015)

---

[10] Any hearings regarding Mr. Brockman's competency must be held in person, rather than over video conferencing, notwithstanding the COVID-19 pandemic.  Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), video teleconferencing can be used for certain specified criminal proceedings during the present national emergency, including "Detention hearings under section 3142 of title 18," "Initial appearances under Rule 5 of the Federal Rules of Criminal Procedure," and "Preliminary hearings under Rule 5.1 of the Federal Rules of Criminal Procedure," among others.  CARES Act § 15002(b).  The list of proceedings for which the use of video teleconferencing is authorized, however, is detailed and specific, and does not include competency hearings under 18 U.S.C. § 4241(a).  Thus, under the principle of "*expressio unius est exclusio alterius*," the "most natural reading" of the CARES Act is that video teleconferencing is not permitted for § 4241(a) hearings.  *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (citation omitted).  Moreover, video teleconferencing would be inappropriate for such a hearing, given that the "defendant's demeanor and behavior in the courtroom can often be as probative on the issue of his competence as the testimony of expert witnesses."  *Sturgis v. Goldsmith*, 796 F.2d 1103, 1109 (9th Cir. 1986) (holding that because "the interests underlying the right to be present at trial apply to the right to be present at a pretrial competency hearing" a defendant has "a constitutional right to be present" at such a hearing).  An in-person competency hearing is therefore indispensable.

(describing competency testimony of "eight lay witnesses," including colleagues and family members, in addition to medical experts); *United States v. Chun*, 2019 WL 6683878, *11 (E.D. Mich. Dec. 6, 2019) (lay witnesses including wife); *United States v. Fannin*, 2017 WL 9401160, * 5 (E.D. Ky. Aug. 15, 2017) (magistrate recommendation), *adopted by* 2017 WL 5451751 (E.D. Ky. Nov. 14, 2017) (same).  Similar to the doctors, these witnesses will face challenges if asked to participate in proceedings in San Francisco, but would be readily present in Houston.

In sum, the compelling necessity, and not just the "convenience," of many identifiable witnesses overwhelmingly favors Houston.  We predict that the government cannot demonstrate countervailing "witness convenience" in the Northern District of California.

**D.      The "location of events likely to be in issue" is substantially in Houston and the rest of the world, but least of all in this District ("*Platt* factor" #3)**

As summarized above, the events put in issue by the Indictment took place largely between Mr. Brockman in Houston and Evatt Tamine in Bermuda and other places outside the United States.  One by one, some activities allegedly involved Switzerland, the British Virgin Islands, Australia, Nevis, Barcelona, the Cayman Islands, and several states of the United States outside this District.  Keneally Decl. ¶ 37.

The Indictment makes much of allegations that "BROCKMAN, through Point, invested in numerous Vista funds" and "[f]rom 2000, and continuing through 2014, funds were invested by BROCKMAN, through Point, in VEF II, as needed to purchase portfolio companies," Indictment ¶¶ 16, 36, often by alleged "directions" to Tamine "to make additional investments."  *E.g.*, Indictment ¶ 87.  But tellingly for venue purposes, none of these transactions are alleged to have anything to do with the Northern District of California.  To the contrary, the government alleges that Mr. Brockman "only invested in Vista funds that were organized outside the United States," and not in this District.  Indictment ¶ 16.  The Indictment alleges that "the capital gains distributed by Vista . . . were directed by BROCKMAN . . . to be wired from Vista's bank accounts" in this District, Indictment ¶ 39, but makes no other reference to any conduct that took place at Vista's San Francisco location.

In terms of the extent of evidence to be presented, the alleged contacts with the Northern

District of California are nothing more than a make-weight hook to permit the government to make the most threadbare claim to venue in this District.  *See supra* at Part II.A.2.  The "location of events likely to be in issue" favors transfer to Houston.

### E.     The "disruption" factor favors transfer ("*Platt* factor" #5)

The "disruption of defendant's business unless the case is transferred" is among the factors to be weighed.  *Platt*, 376 U.S. at 244.  Due to his deteriorating health, Mr. Brockman is now fully retired.  Keneally Decl. ¶ 14.  Today his only "business" is preserving his deteriorating health, which will be best served in Houston, where he will be near his doctors, and in the familiar environment of his home and family.  Pool Decl. ¶ 10.

### F.     The "location of counsel" weighs equally between San Francisco and Houston ("*Platt* factor" #7)

Of course the government appears in this District by an Assistant United States Attorney from the local office, no doubt a full partner in this prosecution.  But tellingly, the immunity bargains struck with Evatt Tamine and Robert Smith are on the letterhead from the DOJ Tax Division in Washington, whose attorneys are assigned responsibility and are prepared to try cases in any district.  Keneally Decl. Ex. E, Ex. M.  Like the government, Mr. Brockman's law firm has lawyers resident in both districts, but the attorneys who have met with him in person throughout this investigation are located in Houston, New York, and Washington, D.C., and those meetings were always conducted in Houston, with one exception in Colorado.  Keneally Decl. ¶ 39.  The convenience of counsel is in balance between Houston and San Francisco.

### G.     "Docket conditions in each district involved" favor the Southern District of Texas ("*Platt* factor" #9)

Relative docket congestion suggests a speedier disposition of this matter in the Southern District of Texas, according to June 2020 statistics:[11]

---

[11] *See* Federal Court Management Statistics, Administrative Office of the Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf at 36, 66 (last visited Nov. 19, 2020).

|  | NDCA | SD Texas |
|---|---|---|
| Total number of active judges | 14 | 19 |
| Cases pending per judge | 870 cases | 761 cases |
| Median time from filing to disposition in felony cases | 11.2 months | 4.0 months |
| Average time from filing to trial in civil cases | 29.3 months | 24.9 months |

The Southern District of Texas is the third-fastest jurisdiction in the country for felony cases, while the Northern District of California is ranked fifty-ninth.[12]  Although no statistics are available for the time from filing to trial in criminal cases, civil cases in the Southern District of Texas reach trial five months faster than civil cases in the Northern District of California, on average.[13]  All available statistics therefore suggest that this case will proceed more expeditiously in the Southern District of Texas than in this District.

Even more important in terms of judicial economy, venue is improper in the Northern District of California for the tax evasion and FBAR counts, 13 out of 39 counts of the Indictment, all of which may be tried in the Southern District of Texas.  *See infra* at Part IV.  If the government is serious about trying all of these charges, transfer to the Southern District of Texas is the only way to avoid two complete trials in two districts of all the same facts.  This is reason enough by itself to compel transfer.  *See, e.g.*, *United States v. Shayota*, 2015 WL 9311922, at *4 (N.D. Cal. Dec. 23, 2015) (applying the *Platt* factors and noting "'the significant efficiency gained by having one trial (or even several) in one location rather than two'" (quoting *United States v. Napoli*, 2011 WL 1303571, *2 (N.D. Cal. Apr. 5, 2011)); *United States v. Miller*, 314 F.R.D. 574, 578-79 (S.D. Ohio 2016) (explaining in its *Platt* analysis that "given the scope of the related case [pending in the requested transfer district], this Court sees <u>no reason</u> why [that district] would not be the most convenient and logical location for prosecution of all charges.")

---

[12] *Id.*

[13] *Id.*

(emphasis in original).

**H.    The remaining three particularized factors – "location of documents and records likely to be involved," ("*Platt* factor" #4) "expense to the parties," ("*Platt* factor" #6) and "relative accessibility of place of trial" ("*Platt* factor" #8) – are neutral or favor transfer**

The Court in *Platt* listed "location of documents and records likely to be involved," "expense to the parties," and "relative accessibility of place of trial" as the fourth, sixth, and eighth of its ten itemized factors.  *Platt*, 376 U.S. at 244.  The criteria to be considered on each of these factors would appear to be co-extensive with the particularized factors already discussed:  to the extent that the location of witnesses and the locus of events favors Houston, it is potentially a less expensive and more convenient, and at least as accessible, venue as this District.

**I.    This case presents "other special elements" as contemplated by *Platt* ("*Platt* factor" #10)**

The final *Platt* factor informs courts to consider "any other special elements which might affect the transfer."  *Platt*, 376 U.S. at 244.  This factor takes us back to the beginning of the analysis.  As set out in detail above, Mr. Brockman's health, coupled with the need for a hearing to determine whether he is capable of assisting in his own defense, are the special elements of this case that simply compel transfer to the Southern District of Texas, where he lives and where his doctors are.  In striking contrast, no factor supports venue in the Northern District of California.

## IV.   THIRTEEN COUNTS MUST BE DISMISSED OR TRANSFERRED FOR SEPARATE REASONS

On the face of the Indictment, the charges for failure to file FBARs (Counts Nine through Fourteen) allege no basis for venue in this District, but may be brought in the district of the defendant's residence.  In addition, the charges for tax evasion (Counts Two through Eight) must be transferred pursuant to 18 U.S.C. § 3237(b).

**A.    The FBAR Counts Nine through Fourteen must be dismissed in this District for improper venue, and if not dismissed, must be transferred to the Southern District of Texas**

In Counts Nine through Fourteen, the Indictment alleges that Mr. Brockman "had a financial interest in . . . bank, securities, and other financial accounts in foreign countries" that

1   required the annual filing of an FBAR, and that he committed felonies by failure to file FBARs

2   for each of the years 2013 through 2018.  Indictment ¶¶ 149-60.  There is no venue in the

3   Northern District of California for these offenses, which may be brought only in the district where

4   the defendant resides, or in the Eastern District of Virginia where FBARs are due to be received.

5       Criminal trials must be held where the alleged offense was committed.  U.S. Const. Art.

6   III, § 2; U.S. Const. Amend. VI; Fed. R. Crim. P. 18.  "[W]here the crime charged is a failure to

7   do a legally required act, the place fixed for its performance fixes the situs of the crime."

8   *Johnston v. United States*, 351 U.S. 215, 220 (1956) (footnote omitted; statutory language

9   supported venue in the district where conscientious objectors failed to perform alternative to

10  military service).  For example, the Ninth Circuit has held that the failure to file a tax return

11  legally occurs "either at the defendant's place of residence, or at the collection point where the

12  return should have been filed."  *United States v. Clinton*, 574 F.2d 464, 465 (9th Cir. 1978)

13  (citations omitted).  Criminal venue for the non-filing would thus be proper in either location.

14  *See id.*[14]

15      Since tax year 2013 – the first year the Indictment alleges that Mr. Brockman failed to file

16  an FBAR – filers have been required to use the Bank Secrecy Act ("BSA") E-Filing System to

17  file FBARs.[15]  That system "supports secure electronic transmission of BSA data to the Financial

18  Crimes Enforcement Network (FinCEN)."[16]  Because FBARs could only be filed directly with

19  FinCEN, the "collection point" where the FBARs allegedly "should have been filed" is FinCEN

20  headquarters, located in Vienna, Virginia.[17]  *See United States v. Hassanshahi*, 185 F. Supp. 3d

21  55, 58 (D.D.C. 2016) (finding that the "place of performance" for a filing that can be performed

22  _____

23  [14] *See also United States v. Hicks*, 947 F.2d 1356, 1361 (9th Cir. 1991) (reaffirming *Clinton*); *United States v. Garman*, 748 F.2d 218, 220–21 (4th Cir. 1984) (venue proper for failure to file tax returns "either in the district of [the defendant's] residence or the district where the service center is located"); *DiJames*, 731 F.2d at 763 (vacating failure-to-file conviction for lack of venue where filing was required in District of Columbia, rather than Northern District of Georgia where prosecution was brought); *United States v. Bugai*, 162 F.3d 1162, 1998 WL 553168, *2 (6th Cir. 1998) (unpublished table opinion) (venue proper for failure to file tax returns in "district of one's legal residence" or where taxpayer required to file returns).

26  [15] *See* IRS FBAR Reference Guide at 1, *available at* https://www.irs.gov/pub/irs-utl/irsfbarreferenceguide.pdf.

27  [16] *See* https://bsaefiling.fincen.treas.gov/AboutBsa.html.

28  [17] *See, e.g.*, https://www.fincen.gov/sites/default/files/advisory/advis11a.pdf.

1   online is the receiving agency's headquarters (emphasis omitted)).  Under *Clinton*, then, venue

2   would be proper for these counts either in the Eastern District of Virginia or "at the defendant's

3   place of residence" in the Southern District of Texas.  574 F.2d at 465.

4       There is no basis for venue for the FBAR charges in the Northern District of California.

5   Mr. Brockman has never resided here.  Nor is the Northern District of California a "collection

6   point" for FBARs, given the centralized collection mandated by the BSA E-Filing System.  That

7   alone disqualifies the Northern District of California as a potential venue for these charges under

8   *Clinton*.  *See id.*

9       Counts Nine through Fourteen must be dismissed in this District.  If not dismissed, they

10  should be transferred to the Southern District of Texas for the same reasons as the rest of the case.

11      **B.      The tax evasion Counts Two through Eight must be transferred**

12      For the reasons explained in Defendant's § 3237(b) Motion pending before this Court,

13  these charges must be transferred to the Southern District of Texas, where Mr. Brockman has his

14  home and filed his tax returns.  If they are not ordered transferred by reason of § 3237, they must

15  be transferred with the rest of the case pursuant to Rule 21(b), for all the reasons stated in this

16  Motion.

17  **V.      CONCLUSION**

18      For the reasons set forth above and in Defendant's § 3237(b) Motion, this Court should (i)

19  transfer this case pursuant to Federal Rule of Criminal Procedure 21(b) and 18 U.S.C. § 3237(b)

20  from the Northern District of California to the Southern District of Texas, and (ii) dismiss Counts

21  Nine through Fourteen of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(A)(i)

22  for improper venue, or in the alternative, transfer Counts Nine through Fourteen to the Southern

23  District of Texas.

24  Dated:  November 30, 2020                    Respectfully submitted,

25                                               JONES DAY

26                                               *s/ Neal J. Stephens*
                                                 _____
27                                               NEAL J. STEPHENS
                                                 Counsel for Defendant
28                                               ROBERT T. BROCKMAN