DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5040
Facsimile:  (408) 535-5081
michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
LEE F. LANGSTON (NYBN 4910311)
CHRISTOPHER M. MAGNANI (Maryland)
Trial Attorneys
United States Department of Justice, Tax Division

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>Defendant. | Case No.: 3:20-cr-00371-WHA<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, IN PART, AND TO TRANSFER VENUE<br><br>Date:   December 15, 2020<br>Time:  12:00 PM |

The United States respectfully opposes Defendant's Motion to Dismiss in Part for Lack of Venue and to Transfer to the Southern District of Texas, filed on November 30, 2020 (ECF No. 49) (the "Motion").

**I.      Every Count of the Indictment is Properly Venued in the Northern District of California**

Criminal defendants have a Constitutional right to be tried in, and by a jury drawn from, a district in which the crime was committed. *See United States v. Cabrales*, 524 U.S. 1, 6 (1998) (citing U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI); *United States v. Ruelas-Arreguin*, 219 F.3d 1056,

1060 (9th Cir. 2000). Rule 18 of the Federal Rules of Criminal Procedure similarly provides that the government generally "must prosecute an offense in a district where the offense was committed." The government bears the burden of proving venue, by a preponderance of the evidence, at trial. *See United States v. Trenary*, 473 F.2d 680, 682 (9th Cir. 1973); *see also United States v. Jensen*, 93 F.3d 667, 669 n.2 (9th Cir. 1996) (citing *United States v. Kaytso*, 868 F.2d 1020, 1021 (9th Cir. 1988)). Generally, venue is proper in any judicial district in which a criminal offense was begun, continued, or completed. *See* 18 U.S.C. § 3237(a); *Ruelas-Arreguin*, 219 F.3d at 1061. In this case, the Indictment covers several schemes comprised of crimes committed in the Northern District of California.

   **A.**  <u>***Defendant's Conspiracy & Tax Evasion Scheme - Counts 1 through 8:***</u>

   Tax evasion and conspiracy are both continuing offenses for venue purposes, and venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Tax evasion is properly venued in any district in which an affirmative act of evasion was begun, continued, or completed, *see United States v. Strawberry*, 892 F. Supp. 519, 521 (S.D.N.Y. 1995) (citing *United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir. 1973)), and any potentially misleading or concealing conduct undertaken with a tax evasion motive can be an affirmative act of evasion, including directing funds to nominee accounts. *See United States v. Carlson*, 235 F.3d 466, 468-69 (9th Cir. 2000) (citing *Spies v. United States*, 317 U.S. 492, 499 (1943); *Edwards v. United States*, 375 F.2d 862, 866 (9th Cir. 1967)). Conspiracy is properly venued in any district in which one member of the conspiracy committed an overt act. *See United States v. Ahumada-Avalos,* 875 F.2d 681, 682-83 (9th Cir. 1989); *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir. 1988).

   Defendant's tax evasion and conspiracy scheme was a machine built of two components. One component was a complex network of offshore entities, nominees, and secret foreign accounts, which allowed Defendant to conceal his income and assets, and this component was necessarily largely offshore. The other component was an investment vehicle through which Defendant secretly funded his offshore structure. That vehicle was Vista Equity Partners.

   Vista is a private equity firm. It was founded in San Francisco in 2000 as the result of a collaboration between Defendant and Individual Two, and Defendant was the sole investor in Vista's first private equity fund. From the very beginning and throughout the entire conspiracy, Defendant

worked with his co-conspirators to ensure that his investments in Vista funds would be illegally concealed using nominee entities including Point Investments, and that Defendant could thus evade the income tax he owed on any profits. Over the following two decades, Defendant made investments (through Point) in several Vista funds, yielding gains of approximately $2 billion, none of which Defendant (or anyone else) reported as income.

The scheme involved continuous contacts with Vista employees located in the Northern District. It required Defendant to make commitments to Vista funds, Vista to call capital as required, Defendant to fund those capital calls, and Vista to receive, invest, and account for Defendant's capital. Once an investment matured, the scheme required Vista to sell the investment, calculate the waterfall, issue distribution notices, and prepare wire instructions (some of which were sent to banks in the Northern District) based on instructions received from Defendant's nominees to move money into Defendant's offshore structure. All of these steps were repeated several times for each Vista fund in which the Defendant invested (and he invested in many of them), and local Vista employees performed each of the functions described above. Although it began opening offices outside the Northern District a decade after it was founded, Vista's core finance and accounting functions have always been located in the Northern District (in San Francisco, and, beginning in 2016, also in Oakland). Thus, Defendant's conspiracy and tax evasion flowed through Vista's offices in the Northern District.

More fundamentally, when he began his scheme in 1999, Defendant was well aware that Vista was going to be located in the Northern District. In essence, Defendant decided to build a complex, tax evasion machine, and he made the conscious choice to put the engine in San Francisco. The Motion's suggestions that the Indictment makes no reference to conduct that took place at Vista's San Francisco location, Motion at 13, that the Indictment's references to Vista personnel have nothing to do with activity in the Northern District, Motion at 6, and that relevant Vista functions and employees have not been located in the Northern District since 2011, Motion at 6 & 10, are all wrong. In fact, no district was more integral to Defendant's tax evasion and conspiracy than the Northern District of California, and the scheme could not have existed but for contacts with the Northern District.

### B. *Defendant's FBAR Violations - Counts 9 through 14:*

The FBAR Counts do not merely charge Defendant with failing to file FBARs. Rather, they charge Defendant with aggravated FBAR felonies in violation of 31 U.S.C. §§ 5314 & 5322(b). Section 5322(b) includes enhanced penalties for failing to file an FBAR "while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period." Here, the illegal activity at issue is Defendant's tax evasion and conspiracy, and the government anticipates bearing the burden of proving at trial that funds tainted by those crimes moved through Defendant's secret foreign accounts. Because Defendant's tax evasion and conspiracy occurred in the Northern District, the FBAR Counts, which will require proof of those crimes, are properly venued here.

Venue would be proper for the FBAR Counts regardless because FBAR charges can be brought in any district, so long as constitutional safeguards are not violated. In *United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011), the defendant was prosecuted for failing to file an FBAR. In evaluating the defendant's claim that the prosecution was improperly venued in the district where his tax returns were prepared rather than the district where he lived, the court noted that, for Sixth Amendment venue purposes, the crime of failing to file a required report is "committed in the district or districts where the report is to be filed." *Id*. at 1252. Because the FBAR form in question allowed filing in "any local office" of the IRS, "for purposes of venue, the form is 'required' to be filed in any and every district that houses a local IRS office. So long as its choice does not create a constitutional hardship, the Government may choose, from among those districts, one where it is most convenient to pursue an indictment." *Bradley*, 644 F.3d at 1252-53. "Presumably, the Government may choose any district that would not be unfair to the defendant or create a hardship." *Id*. at 1252 n.82.

Similarly, in *United States v. Clines*, 958 F.2d 578 (4th Cir. 1992), the defendant was also prosecuted for failing to file an FBAR. The prosecution was venued in Maryland, where the defendant's tax returns were prepared, although he lived in Virginia. *Id*. at 583-84. The court found that - because FBARs could be filed in any local office of the IRS, and because the defendant was not unfairly burdened - venue was proper in Maryland under the Sixth Amendment. *Id*. The court also recognized that its ruling could permit nationwide venue for FBAR prosecutions, but seemed unfazed by the possibility (unless the government engaged in forum shopping). *Id*. at 584 n.3.

The Motion fails to cite *Bradley* or *Clines*, relying instead on *United States v. Clinton*, 574 F.2d 464 (9th Cir. 1978), and other decisions addressing the proper venue for the misdemeanor of failing to file a federal tax return in violation of 26 U.S.C. § 7203.  But these decisions only buttress the principle that failing to file a required document occurs in any district where the document was supposed to be filed.  *See, e.g., United States v. Hicks*, 947 F.2d 1356, 1361 (9th Cir. 1991) ("Failure to file a tax return is an offense either at the defendant's place of residence, or at the collection point where the return should have been filed").  That principle results in different conclusion in the context of tax returns, as opposed to FBARs, because tax returns (unlike FBARs) have to be filed in specific places.  *See* 26 U.S.C. § 6091.  Additionally, when evaluating decisions addressing Section 7203, it is noteworthy that Congress has expressed a concern regarding defendants being charged under Section 7203 in forums distant from their homes, *see* 18 U.S.C. 3237(b), but has not expressed a similar concern regarding FBAR charges.  Thus, *Clinton* and *Hicks*, both of which were decided before both *Bradley* and *Clines* and were available to the courts who wrote them, do not change the result.

It is true that the rules for filing FBARs changed after *Bradley* and *Clines* were decided.  Before 2013, FBAR forms could be filed in any IRS office, and this fact is cited in both *Bradley* and *Clines*.  But beginning on July 1, 2013, FBARs had to be filed electronically, and not in any office of the IRS as before.  Now FBARs can be filed electronically from anywhere.  The Motion's argument that this change should affect the analysis is based on non-binding authority interpreting a different statute.

Litigating the FBAR Counts in the Northern District would not offend the Sixth Amendment because the Defendant committed aggravated FBAR felonies here, because the FBAR Counts were not brought here as an exercise in forum shopping, and because trying them here will create no unfairness or undue hardship to Defendant.  Accordingly, the FBAR Counts should not be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(A)(i), or transferred under Rule 21(b).  Defendant will have an opportunity to hold the government to its burden of establishing venue at trial.

### C. *Defendant's Fraud & Money Laundering Scheme - Counts 15 through 37:*

Wire fraud is a "continuing offense" for venue purposes, and is properly venued "in all of the places where any part was accomplished."  *United States v. Pace*, 314 F.3d 344, 350 (9th Cir. 2002).  Money laundering is also a continuing offense for venue purposes, *see United States v. Angotti*, 105 F.3d

539, 544-45 (9th Cir. 1997), and is triable in "any district in which the financial or monetary transaction is conducted;" or "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." 18 U.S.C. § 1956(i). Defendant's fraud and money laundering scheme was facilitated by multiple emails into, and a wire transfer out of, the Northern District. Nothing more is required, and the Motion does not argue otherwise.

### D. *Defendant's Obstruction of Justice Scheme - Counts 38 & 39:*

Prosecution under Section 1512 "may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." 18 U.S.C. § 1512(i). Because the federal grand jury investigation he sought to obstruct was conducted by a Northern District Grand Jury, Defendant's scheme to obstruct justice is properly venued here.

## II. The *Platt* Factors Overwhelming Weigh Against Transfer Pursuant to Rule 21

The Motion argues that this prosecution should be moved, in whole or in part, to the Southern District of Texas under Federal Rule of Criminal Procedure 21(b). Rule 21(b) provides that, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." "[T]he Defendant bears the burden of showing why transfer is warranted." *United States v. Napoli*, 10-CR-00642-CRB, 2011 WL 1303571, at *1 (N.D. Cal. Apr. 5, 2011) (Breyer, J.) (citing *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977)). "'A district court has broad discretion in ruling on a motion for change of venue, [and only] in rare instances have appellate courts overridden a trial court's decision not to transfer.'" *United States v. Shayota*, 15-CR-00264-LHK, 2015 WL 9311922, at *1 (N.D. Cal. Dec. 23 2015) (Koh, J.) (quoting *United States v. Sherwood*, 98 F.3d 402, 410 (9th Cir. 1996); *United States v. Ward*, 878 F.2d 387, 1989 WL 69897, at *1 (9th Cir. 1989) (unpublished)).

The Supreme Court enumerated ten factors to be considered when deciding whether to transfer a case in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964): (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of

documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *Id*. at 243-44.  These factors have been adapted to non-corporate defendants as well. *See United States v. Fritts*, 05-CR-00216-WHA, 2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005) (Alsup, J.).  No single *Platt* factor is determinative.  Courts try to strike a balance based on the relative importance of the factors.  *See United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (citing *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990)).

These factors apply, in this matter, as follows:

### *Factor 1 - Location of Defendant*

While it is true that Defendant can be said to reside more in Houston than anywhere else, he is not particularly tethered to the Southern District of Texas.  In 2019, alone, private jet records and other evidence indicate Defendant visited the following destinations:

- Houston, Texas
- Fort Lauderdale, Florida
- San Francisco, California
- Nassau, Bahamas
- Aspen, Colorado (for a routine, annual three-month trip to a vacation home for the summer)
- Anchorage, Alaska (for a routine, annual fishing trip)
- Washington, DC
- Cordoba, Argentina (for a routine, annual hunting trip)
- Salt Lake City, Utah
- Dayton, Ohio

This travel history is difficult to square with the Motion's suggestion that the trip from Houston to San Francisco for trial would be a hardship.  The majority of pretrial proceedings in this matter are likely to be conducted remotely, and will probably not require Defendant (or anyone else) to travel.  *See Napoli*, 2011 WL 1303571, at *1 ("[B]ecause the Court has waived Defendant Napoli's presence at all non-essential court appearances, the time and financial burden on him has been mitigated.").  If he is capable

of traveling great distances to hunt and fish, and to stay away from home for months at a time for vacation, then he is capable of traveling to the Northern District for trial.  Defendant has not carried his burden with respect to this factor.

### *Factor 2 - Location of Possible Witnesses*

The Motion does not identify a single defense trial witness from Houston, much less allege that any such witness would be unwilling or unable to travel to the Northern District for trial.  This failure, alone, is sufficient to tip this factor against transfer.  *See, e.g., Shayota*, 2015 WL 9311922, at *1 ("[T]he moving Defendants have not specified to what their witnesses will testify and how these witnesses are essential to the resolution of this case.  The Ninth Circuit addressed a similar situation in *United States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1977) . . . [and] determined that the defendant had failed to demonstrate that transfer was warranted."); *see also United States v. Blakstad*, 19-CR-486-ER, 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020) ("As the burden of justifying a transfer rests on Blakstad, he must specifically describe how particular witnesses would be entirely prevented from testifying at trial in the Southern District of New York.") (citing *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456-57 (S.D.N.Y. 1997) (Sotomayor, J.)); *United States v. Calk*, 19-CR-366-LGS, 2020 WL 703391, at *3 (S.D.N.Y Feb. 12, 2020) ("Defendant does not allege that any of the prospective witnesses will be unable to testify in this District or even that they would be significantly inconvenienced by such testimony, and the Government represents that it will pay or reimburse the travel and lodging costs of any witnesses it calls who reside outside the New York area.  Based on this information, this factor does not weigh in favor of transfer.").

Conversely, the Motion glosses over the fact that there are at least two victim entities - Entity One and Entity Two in the Indictment - in the Northern District.  Rule 21(b), as amended in 2010, requires the Court consider the convenience of victims, *see United States v. Larsen*, 13-CR-688-JMF, 2014 WL 177411, at *2 n.2 (S.D.N.Y. Jan. 16, 2016), and the government expects to call at least one witness from each of the victim entities at trial.  In addition, the government expects to call at least one, and possible as many as three, local Vista facts witnesses at trial.  Moving the case to convenience compensated experts at the expense victims and third-party witnesses would be perverse.

The Motion does identify, and relies heavily upon, the location of witnesses Defendant expects to call at his anticipated competency motion, including several expert witnesses. Even if it is appropriate to consider the location of these witnesses although they are likely to be witnesses in a pretrial proceeding initiated by Defendant, and not at trial, such consideration would not change the result. Although the Indictment alleges, and the government expects to prove at trial, that Defendant knew or should have known in June 2016 that it was likely there would be a federal grand jury investigation into his conduct, there can be no doubt that Defendant knew that he was the target of an investigation in the Northern District by late 2018 when Individual One, Defendant's primary offshore nominee, began cooperating with the government. *See* Immunity Letter dated October 2, 2018, attached to Ms. Keneally's Declaration in support of the Motion (ECF No. 49-1) as Exhibit E. Apparently, it was around this time that Defendant first began to complain of the amorphous malaise described in the Motion. *See* Declaration of James L. Pool M.D., attached to Ms. Keneally's Declaration as Exhibit P, at ¶ 3 ("I conducted a complete physical examination of Mr. Brockman on December 11, 2018."). Although he knew he was under investigation by authorities in the Northern District, and despite the fact that there are renowned medical institutions within the Northern District, Defendant elected to draw the medical professionals upon whom he relies exclusively from one institution, the Baylor College of Medicine in Houston (an institution Defendant has endowed with tens of millions of dollars). Naturally, any patient should select their physicians based on criteria of their own choosing. But having elected to hire exclusively Houston-based medical professionals, Defendant should not be permitted to force this prosecution to move to Houston as a result. Moreover, to the extent the Motion suggests that Defendant's anticipated competency hearing must be conducted entirely in-person, Motion at 12 n.2, it is wrong: Witnesses and experts regularly appear remotely at competency hearings. Defendant may seek to force his own experts, wife, friends, and colleagues to appear in-person at any competency hearing, but it would be odd bootstrapping to allow that tactic to weigh heavily in favor of transfer.

### *Factor 3 - Location of Events Likely to be in Issue*

The Motion's suggestion that the central events described in the Indictment are more closely tied to the Southern District of Texas than to the Northern District, Motion at 2, is curious, since the Motion itself, in attempting to tally the locus of events described in the Indictment, identifies only two tied to

Houston. *See* Motion at 7. In fact, venue for several Counts in the Indictment could fail completely in the Southern District of Texas. That failure technically does not preclude transfer, since Defendant has now implicitly waived any objection to venue in the Southern District of Texas, *see United States v. Aronoff*, 463 F. Supp. 454, 457 n.2 (S.D.N.Y. 1978), but it certainly indicates that this *Platt* factor does not support transfer. The Motion's argument to the contrary, Motion at 7, is based on its tally which simply omits events which occurred in the Northern District. It is telling that the Motion must resort to a balancing test with weight on only one side of the scale to reach its erroneous conclusion that the center of gravity for this case is not in the Northern District.

### *Factor 4 - Location of Documents and Records Likely to be Involved*

The relevant documents and records are either already in the Northern District or are electronically accessible, which weighs against transfer. *See Shayota*, 2015 WL 9311922, at *3.

### *Factor 5 - Disruption of Defendant's Business*

Although he was the CEO of a multi-billion company until November 2020 (a few weeks after the Indictment became public, and almost two years after he began to lay the foundations for his incompetence defense), Defendant claims to now be retired. This factor does not favor transfer.

### *Factor 6 - Expense to the Parties*

Transferring only a portion of this case would be enormously expensive. Although the Indictment covers a broad swath of criminal conduct, the various Counts share common evidence. For instance, Defendant's relationship with Individual One is significant to every Count in the Indictment. Similarly, Defendant's relationship with and control over multiple offshore entities, including the A. Eugene Brockman Charitable Trust, Spanish Steps, and Point Investments, is crucial to the conspiracy, tax evasion, FBAR, fraud, and money laundering Counts. Effectively severing the Counts by transferring only some of them, even just the FBAR Counts, would necessitate two largely overlapping trials in different districts, dramatically increasing the expense to the parties, witnesses, and courts. Additionally, since both trials would have evidence in common, they could not proceed simultaneously, which would delay the ultimate resolution of this matter until the trailing case was complete. This is a result to be avoided. *See Shayota*, 2015 WL 9311922, at *4 ("The Ninth Circuit has discouraged transfer in cases where transfer would result in duplicative trials, and other circuit courts are in

accord."); *see also Napoli*, 2011 WL 1303571, at *2 ("The best reasons for denying transfer concern the significant efficiency gained by having one trial (or even several) in one location rather than two."). While there is no basis for transferring this case in its entirety, transferring only part of it would be particularly inefficient.

### *Factor 7 - Location of Counsel*

Of the attorneys who have entered appearances in this matter, only one (Mr. Varnado) is based in Houston, while three (Messrs. Stephens, Doctor, and Pitman) are based in the Northern District. Although three of the four prosecutors are based in Washington, DC, the other one is a local AUSA who is not a fungible local counsel, but rather has been actively involved in this matter (the investigation of which was conducted exclusively by a Northern District Grand Jury) since 2016. Defendant has not carried his burden with respect to this factor.

### *Factor 8 - Relative Accessibility of Place of Trial*

The Northern District is easily accessible. *See Shayota*, 2015 WL 9311922, at *6; *Napoli*, 2011 WL 1303571, at *2.

### *Factor 9 - Docket Conditions*

The Court has entered a stipulated schedule in this matter, adopting the trial date to which Defendant has agreed. Because this is not a case in which the Defendant seeks a trial date earlier than can be accommodated by the Northern District, this factor does not weigh in favor of transfer. *See Shayota*, 2015 WL 9311922, at *5. Additionally, given the progress that has already been made in the Northern District, it is not certain that a newly transferred case would progress to trial in the Southern District of Texas any sooner than November 2021, the trial date already set in this matter.

### *Factor 10 - Special Elements*

Although we are all hopeful that effective treatments and vaccines may be available soon, the entire country is currently suffering the effects of the COVID-19 pandemic. The Motion argues that Defendant is particularly susceptible to the virus, but "this is an argument against holding any trial at all, rather than *where* to hold the trial." *United States v. Blakstad*, 19-CR-486-ER, 2020 WL 5992347, at *6 (S.D.N.Y. Oct. 9, 2020); *see also United States v. Yates*, 19-CR-266-AWT, 2020 WL 3316053, at *7 (D. Conn. June 18, 2020). Moreover, although the numbers are in constant flux and will certainly change

before trial, as of the date of this writing (according to Johns Hopkins) Harris County's per capita COVID infection rate is more than double San Francisco County's.[1]  Thus, the current data suggest that Defendant and all other trial participants (including the jury) are likely to be safer if the Motion is denied, and also that safe jury trials are more likely to resume more quickly in the Northern District than in the Southern District of Texas.  It would not serve the interests of justice to require the victims and witnesses who are from neither district to travel to Houston where their chances of infection (as of today) would be significantly greater than in the Northern District, for trial.  To the extent the Court is inclined to consider this factor, it weighs against transfer.

## CONCLUSION

The Motion boils down to a request that the Court exercise its discretion to uproot this prosecution from the Northern District based on little more than Defendant's personal preference.  The Motion does seek to add weight by pointing to the location of Defendant's expert witnesses, but it surely cannot be the law that wealthy defendants can buy their venue simply by hiring experts.  And once the experts are stripped out of the equation, there is almost nothing left supporting the relief requested in the Motion.  The countervailing considerations (including the absence of any defect in venue, local victims and witnesses, and the fact that the Court and government are likely to hire their own, local experts) are overpowering.  Having elected to commit his crimes in the Northern District, Defendant should not now be heard to complain about being held to account here.  The Motion should be denied in its entirety.

Respectfully submitted this 7th day of December 2020,

DAVID L ANDERSON
United States Attorney

s/ Michael G. Pitman
COREY J. SMITH
Senior Litigation Counsel
MICHAEL G. PITMAN
Assistant United States Attorney

Attorneys for United States of America

---

[1] *See* https://coronavirus.jhu.edu/us-map (last visited December 7, 2020) (County Cases Per 100K Population: Harris County, Texas = 4,234; San Francisco County, California = 1,900).