Jason Varnado (State Bar No. 211067)
jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone +1-832-239-3939
Facsimile +1-832-239-3600

Neal J. Stephens (State Bar No. 152071)
nstephens@jonesday.com
Vincent Doctor (State Bar No. 319408)
vdoctor@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: +1-650-739-3939
Facsimile: +1-650-739-3900

Kathryn Keneally
(appearance *pro hac vice*)
New York State Bar No. 1866250
kkeneally@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-047
Telephone: +1-212-326-3939
Facsimile: +1-212-755-7306

Attorneys for Defendant
ROBERT T. BROCKMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>        Defendant. | Case No. 3.20-cr-00371-WHA<br><br>DECLARATION OF PETER J. ROMATOWSKI IN SUPPORT OF DEFENDANT ROBERT T. BROCKMAN'S MOTION FOR A HEARING TO DETERMINE WHETHER MR. BROCKMAN IS COMPETENT TO ASSIST IN HIS DEFENSE |

## **DECLARATION OF PETER J. ROMATOWSKI**

I, Peter J. Romatowski, declare as follows:

    1.    I am a member of the bars of the District of Columbia, the states of Montana and New York, the United States Supreme Court and various other federal courts. I am of counsel to the law firm Jones Day, counsel for the defendant Robert T. Brockman. I make this Declaration in support of Defendant Robert T. Brockman's Motion For a Hearing to Determine Whether Mr. Brockman is Competent to Assist in His Defense.

2. I served from 1979 to 1986 as an assistant United States attorney. In that role I investigated, prosecuted and tried cases involving the full range of federal offenses, with a particular focus on securities fraud. *See, e.g., United States v. Winans,* 612 F. Supp. 827 (S.D.N.Y. 1985), *aff'd in part, rev'd in part part sub nom. United States v. Carpenter,* 791 F.2d 1024 (2d Cir. 1986), *aff'd sub nom. Carpenter v. United States,* 484 U.S. 19 (1987). Since 1986, I have been engaged in the private practice of law, specializing almost exclusively in white collar criminal defense, and defense of regulatory investigations and enforcement actions by the U.S. Securities and Exchange Commission. I am a fellow of the American College of Trial Lawyers.

3. In the course of that experience, I have engaged with hundreds of witnesses, in order to gain their assistance in the prosecution or defense of federal criminal cases. This includes clients, one of whom was approximately Mr. Brockman's age, who assisted effectively in their own successful defense of complex regulatory charges in federal criminal jury trials. I have testified in a federal grand jury (as a law student) and in a federal criminal jury trial (while in private practice, called as a witness by the government). I believe that I recognize those cognitive and other skills that enable individuals to assist effectively in the prosecution or defense of such cases, whether as a witness or a defendant. It is my firm opinion that Mr. Brockman cannot do so.

4. From that experience, I also have an appreciation of the participation that is necessary from knowledgeable witnesses in order to assemble and present in court a case of the complexity of this one, whether on behalf of the prosecution or the defense. Mr. Brockman's assistance is indispensable to the defense of the Indictment, and he is unable to render it.

5. I first met Mr. Brockman when my firm was retained as his counsel in September 2018. Between that date and March 2020 when the pandemic prevented further meetings in person, my colleagues and I met with Mr. Brockman ten times at his home in Houston, and once at a summer residence in Colorado. Each of these meetings was several hours in length. In addition, we have had countless meetings with Mr. Brockman by telephone.

1          6.      By this declaration, I do not and do not intend to waive Mr. Brockman's attorney-client privilege or work product protection. I have not disclosed any conversation by which Mr. Brockman requested or we gave legal advice. I disclose below only that part of a conversation on July 18, 2019 which Mr. Brockman initiated for another purpose, to convey information to us concerning his medical condition, and my personal observations of his physical and cognitive condition.

7          7.      On July 18, 2019, I met with Mr. Brockman at a summer residence in Aspen, Colorado. Two other Jones Day attorneys, Kathryn Keneally and Georgina Druce, participated in that meeting by conference call.

10         8.      At the outset of the July 18, 2019 meeting, Mr. Brockman told us that he had an issue that he wanted to raise. He showed me a binder that contained medical reports. He explained that he had been diagnosed with Parkinson's disease and dementia. He expressed surprise concerning this diagnosis. He explained that he wanted us to understand that he may need us to address issues with him more slowly, that he may have some difficulty remembering what we told him, and that he may need to review things several times to understand what he needed to know. He never suggested or asked whether this medical condition would have any legal consequence for the criminal investigation.

18         9.      We subsequently obtained the medical reports from Mr. Brockman. I now understand that Mr. Brockman's doctors diagnosed that he has cognitive impairment and other symptoms consistent with Parkinson's disease, parkinsonism, or Lewy body dementia, or some combination of the three.

22         10.     The information provided in the medical reports is consistent with and helped me to better understand my experience with Mr. Brockman throughout this representation.

24         11.     In my experience in communicating with Mr. Brockman, I have found that he has consistently been unable to assist in his defense, either by providing his own account of past events, or by providing leads to other evidence. He is unable to review and evaluate documents. I have also experienced repeated instances in which he did not retain information that we had provided to him. In certain instances, when we would provide him with information, he would

report it back to us a few days later, often in garbled form, as if it were something that he remembered separate from and without regard to having heard it from us. In other instances, he repeatedly provides us the same information, regardless of relevance.

12. I do not believe that this experience has been the product of any deliberate deception on Mr. Brockman's part. There have been many occasions where Mr. Brockman understood our questions sufficiently to recognize that an obvious answer – or any answer at all – would better serve his interests. Yet he is unable to provide any answer.

13. My experience with Mr. Brockman is consistent with – in fact is well explained by – the findings that I have read in the medical reports from his treating physicians.

14. Further, it has been my layman's observation that Mr. Brockman's disabilities have worsened over time. He has become more physically frail. He has slowed down in many respects, from his walking gait to his response time in ordinary conversation. He is having increasingly greater difficulty in understanding information that we provide or inquiries that we put to him.

15. Stated at its simplest, Mr. Brockman has proven unable to assist us in his defense.

I declare under penalty of perjury that the foregoing is true and correct. Executed in McLean, Virginia, on December 8, 2020.

Peter J. Romatowski