Jason Varnado (State Bar No. 211067)
jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone +1-832-239-3939
Facsimile +1-832-239-3600

Neal J. Stephens (State Bar No. 152071)
nstephens@jonesday.com
Vincent Doctor (State Bar No. 319408)
vdoctor@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:    +1-650-739-3939
Facsimile:    +1-650-739-3900

Kathryn Keneally (appearance *pro hac vice*)
New York State Bar No. 1866250
kkeneally@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-047
Telephone:  +1-212-326-3939
Facsimile:  +1-212-755-7306

Attorneys for Defendant
ROBERT T. BROCKMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>Defendant. | Case No. 3:20-cr-00371-WHA<br><br>DEFENDANT ROBERT T. BROCKMAN'S REPLY IN SUPPORT OF MOTION TO DISMISS IN PART FOR LACK OF VENUE AND TO TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS<br><br>Date:          December 15, 2020<br>Time:          12:00 p.m.<br>Judge:         Hon. William Alsup<br>Place:         Courtroom 12 |

# TABLE OF CONTENTS

**Page**

I.      THE FOREIGN BANK ACCOUNT REPORT ("FBAR") COUNTS NINE
        THROUGH FOURTEEN MUST BE DISMISSED IN THIS DISTRICT FOR
        IMPROPER VENUE ............................................................................................ 1

II.     THE *PLATT* FACTORS FAVOR TRANSFER, AS SEVERAL FACTORS
        SUPPORT TRANSFER AND NO FACTOR SUPPORTS TRIAL IN THIS
        DISTRICT ........................................................................................................... 5

        A.      "*Platt* factor" # 1:  the location of the defendant ..................................... 6

        B.      "*Platt* factor" # 2:  the location of possible witnesses ............................ 7

        C.      "*Platt* factor" # 3:  location of events likely to be in issue ................... 10

        D.      "*Platt* factor" # 4:  location of records ................................................... 11

        E.      "*Platt* factor" # 5:  disruption to the defendant's business.................... 11

        F.      "*Platt* factor" # 6:  expense to the parties ............................................ 11

        G.      "*Platt* factor" # 7:  location of counsel ................................................. 12

        H.      "*Platt* factor" # 8:  relative accessibility of place of trial...................... 12

        I.      "*Platt* factor" # 9:  docket condition of each district or division involved .......... 12

        J.      "*Platt* factor" # 10:  "Special Elements".............................................. 14

III.    CONCLUSION ................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                        **Page(s)**

*Johnston v. United States*,
  351 U.S. 215 (1956) ........................................................................1

*Platt v. Minnesota Min. & Mfg. Co.*,
  376 U.S. 240 (1964) ................................................................. *passim*

*Sturgis v. Goldsmith*,
  796 F.2d 1103 (9th Cir. 1986) ......................................................10

*United States v. Blakstad*,
  2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ..................................9

*United States v. Bowdoin*,
  770 F. Supp. 2d 133 (D.D.C. 2011) ...............................................7

*United States v. Bradley*,
  644 F.3d 1213 (11th Cir. 2011) ..................................................3, 4

*United States v. Cabrales*,
  524 U.S. 1 (1998) ........................................................................1, 2

*United States v. Calk*,
  2020 WL 703391 (S.D.N.Y. Feb. 12, 2020) ..................................9

*United States v. Clines*,
  958 F.2d 578 (4th Cir. 1992) ......................................................3, 4

*United States v. Clinton*,
  574 F.2d 464 (9th Cir. 1978) .........................................................2

*United States v. Coffee*,
  113 F. Supp. 2d 751 (E.D. Pa. 2000) ..........................................11

*United States v. Cooper*,
  2019 WL 404962 (D. Haw. Jan. 31, 2019) ...................................6

*United States v. Daewoo Indus. Co.*,
  591 F. Supp. 157 (D. Ore. 1984) ...................................................7

*United States v. Francis*,
  2008 WL 1711543 (D. Nev. Apr. 11, 2008) ..................................8

*United States v. Fritts*,
   2005 WL 3299834 (N.D. Cal. Dec. 6, 2005) ....................................................5, 6, 8

*United States v. Hassanshahi*,
   185 F. Supp. 3d 55 (D.D.C. 2016) ............................................................................4

*United States v. Lombardo*,
   241 U.S. 73 (1916) ...................................................................................................4

*United States v. Prasad*,
   2018 WL 3706836 (E.D. Cal. Aug. 3, 2018) ...........................................................9

*United States v. Shayota*,
   2015 WL 9311922 (N.D. Cal. Dec. 23, 2015) .........................................................9

*United States v. Spy Factory, Inc.*,
   951 F. Supp. 450 (S.D.N.Y. 1997) ...........................................................................9

*United States v. Testa*,
   548 F.2d 847 (9th Cir. 1977) ....................................................................................9

*United States v. Williams*,
   2013 WL 4510599 (D. Haw. Aug. 22, 2013) ...........................................................6

STATUTES

31 U.S.C. § 5314 ...............................................................................................................1, 3

31 U.S.C. § 5322 ....................................................................................................................3

OTHER AUTHORITIES

28 C.F.R. 0.70 .......................................................................................................................12

31 C.F.R. § 1010.350 ..........................................................................................................1, 2

Fed. R. Crim. P. 12 ...............................................................................................................14

Fed. R. Crim. P. 18 .................................................................................................................1

Fed. R. Crim. P. 21 .......................................................................................................7, 8, 14

U.S. Const. Amend. VI ............................................................................................................1

U.S. Const. Art. III, § 2 ...........................................................................................................1

**DEFENDANT ROBERT T. BROCKMAN'S REPLY IN SUPPORT OF
MOTION TO DISMISS IN PART FOR LACK OF VENUE AND TO
TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS**

Defendant Robert T. Brockman's Motion to Dismiss in Part for Lack of Venue and to Transfer to the Southern District of Texas (the "Motion"), ECF No. 49, should be granted.

Foremost, there is no basis for venue in this District for Counts Nine through Fourteen of the Indictment, and those counts must be dismissed if this case remains here. Moreover, the factors relevant to venue strongly favor transfer of the entire case to the Southern District of Texas, where Mr. Brockman has long lived, relevant witnesses and events are likely to be centered, and docket conditions will allow the case to proceed more expeditiously.

**I.     THE FOREIGN BANK ACCOUNT REPORT ("FBAR") COUNTS NINE
THROUGH FOURTEEN MUST BE DISMISSED IN THIS DISTRICT FOR
IMPROPER VENUE**

Even the government must acknowledge the "law that is not in doubt:  Both Rule 18 of the Federal Rules of Criminal Procedure and the Constitution require that a person be tried for an offense where that offense is committed; also, the site of a charged offense 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'"  *United States v. Cabrales*, 524 U.S. 1, 5 (1998) (citations and internal quotations omitted); *see also* Def.'s Mot. at 17; Gov't Opp'n at 1 (the "Opposition"), ECF No. 63; U.S. Const. Art. III, § 2; U.S. Const. Amend. VI; Fed. R. Crim. P. 18.

The offense charged in Counts Nine through Fourteen is defined in 31 C.F.R. § 1010.350(a), enacted under 31 U.S.C. § 5314:

> Each United States person having a financial interest in . . . a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as . . . specified in . . . the Report of Foreign Bank and Financial Accounts[.]

Courts have uniformly held that venue for charges for failure to perform such a required act lies in one of two places:  where the required act should have been performed or a required filing should have been received, *see, e.g.*, *Johnston v. United States*, 351 U.S. 215, 220 (1956) (failure to perform alternatives to military service), or the resident district of the defendant.  *See,*

Reply in Support of Motion to Dismiss in Part for Lack of Venue
and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 1 -

1    *e.g., United States v. Clinton*, 574 F.2d 464, 465 (9th Cir. 1978) (failure to file tax returns).  In

2    this case, neither of these places is the Northern District of California.

3          The government erroneously contends the FBAR counts may be brought in this District

4    because (1) venue is proper here for the tax and conspiracy charges in the Indictment, Gov't

5    Opp'n at 4-5; (2) "FBAR charges can be brought in any district," Gov't Opp'n at 4; and (3) the

6    FBAR counts "were not brought here as an exercise in forum shopping, and because trying them

7    here will create no unfairness or undue hardship to Defendant."  Gov't Opp'n at 5.  The

8    government offers no law in support of any of these unprecedented positions.

9          (1)      First, the government contends that, because each of the FBAR counts contains the

10   bare allegation that Mr. Brockman failed to file FBARs "while violating another law of the

11   United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-

12   month period," it somehow can bring charges for failure to file FBARs anywhere that the illegal

13   activity is alleged to have occurred.  Gov't Opp'n at 4.  The government's single paragraph on

14   this point is strikingly devoid of any legal citation, and the law is to the contrary.

15         The government ignores the fundamental rule that "[t]he *locus delicti* must be determined

16   from the nature of the crime alleged and the location of the act or acts constituting it."  *Cabrales*,

17   524 U.S. at 6-7 (quotation marks and citation omitted).  The Supreme Court in *Cabrales* rejected

18   the government's argument that, because an element of the crime of money laundering is that the

19   funds be derived from specified unlawful activity, venue was permitted in the district where the

20   specified unlawful activity took place.  *Id.*  As the Court stated, the "nature of the crime alleged"

21   was "defined in statutory proscriptions that interdict only the *financial transactions*," which

22   occurred in one district, and not "the *anterior criminal conduct* [which occurred in another

23   district] that yielded the funds allegedly laundered."  *Id*. at 6–7 (internal citations omitted)

24   (emphasis added).

25         So too in this case, the regulation that defines the legal duty, and creates an offense for

26   failure to comply, requires simply that each person with an interest in a financial account in a

27   foreign country "shall *report* such relationship to the Commissioner of Internal Revenue for each

28   year in which such relationship exists."  31 C.F.R. § 1010.350(a) (emphasis added).  The venue

1  for that reporting offense lies in the district where the defendant resides (the Southern District of

2  Texas), or in the district where the FBAR was due to be received (the Eastern District of

3  Virginia).

4      Separate and apart from that definition of the offense in the regulation adopted under

5  31 U.S.C. § 5314, Section 5322 is captioned "Criminal Penalties," and sets out escalating

6  sanctions depending upon the presence (or absence) of aggravating factors: Subsection (a)

7  provides a $250,000 fine or up to five years imprisonment for the ordinary violation, and

8  Subsection (b) increases this to $500,000 or 10 years for violators who fail to report "while

9  violating another law of the United States or as part of a pattern of any illegal activity involving

10  more than $100,000 in a 12-month period."  31 U.S.C. § 5322.

11      But the government cites no court that has held that this separate *sentencing enhancement*

12  creates expansive venue for the *failure to report* offense itself.  This Court should not be the first.

13      (2)    The government makes the extravagant claim that "FBAR charges can be brought

14  in any district."  Gov't Opp'n at 4, relying on *United States v. Bradley*,

15  644 F.3d 1213 (11th Cir. 2011) and *United States v. Clines*, 958 F.2d 578 (4th Cir. 1992).  That

16  argument is as disingenuous as it is out-of-date.

17      At the time of the offenses alleged in *Bradley* and *Clines*, "[t]he form in question, Form

18  90–22.1, could be filed either by mailing it to the IRS in Detroit, Michigan, or *by hand-delivering*

19  *it to any local IRS office*."  *Bradley*, 644 F.3d at 1252 (emphasis added); *see also Clines*,

20  958 F.2d at 583.  Those cases found this latter alternative dispositive in favor of nationwide

21  venue.  "Thus, for purposes of venue, the form [was] 'required' to be filed in any and every

22  district that houses a local IRS office."  *Bradley*, 644 F.3d at 1252; *see also Clines*,

23  958 F.2d at 583 ("Because [the FBAR form] also provides that filing may occur in any local

24  office, we conclude that venue in the District of Maryland was proper.").

25      The best that can be said for the "nationwide venue" argument is that the IRS wrote it out of

26  the law in 2013—the first year the Indictment alleges that Mr. Brockman failed to file an FBAR.

27  Since tax year 2013, the IRS has required that FBARs be filed electronically, directly with the

28  Financial Crimes Enforcement Network (FinCEN) located in Vienna, Virginia.  Def.'s Mot. at

17.[1]  The government admits that "beginning on July 1, 2013, FBARs had to be filed electronically, and not in any office of the IRS as before," Gov't Opp'n at 5, but fails to acknowledge that the change renders *Bradley* and *Clines* irrelevant as precedent.

The government leaves dangling the observation that "[n]ow FBAR forms can be filed electronically from anywhere," as if that might imply that "FBAR charges can be brought anywhere."  Gov't Opp'n at 5.  Worse than the stale argument from *Bradley* and *Clines*, the illogic of that *non-sequitur* was rejected by the Supreme Court 104 years ago.  In *United States v. Lombardo*, 241 U.S. 73 (1916), the defendant in Seattle was charged with failure to file a report required to be filed in Washington, D.C. with the Commissioner of General Immigration.  The Supreme Court rejected the government's contention that prosecution for failure to file was proper in Seattle because "the filing of the statement need not be at the office in Washington, but may be deposited in the postoffice of the United States," so as to provide venue wherever there was a post office.  *Id.* at 76.

Although fewer cases have addressed this issue since the switch to electronic filing, the result is the same:  the place fixed for performance is where the filing was to be *received*, not every possible location from which a filing could be sent.  *See, e.g.*, *United States v. Hassanshahi*, 185 F. Supp. 3d 55, 58 (D.D.C. 2016) (finding in failure-to-file case that proper venue was "the place of *performance* of the request," meaning the place where "application must be sent to, received by, and then approved . . . regardless of from where that request is sent") (emphasis in original).  The fact that this authority construed "a different statute," as the government remarks, is meaningless, as even the government cannot explain why the FBAR statute should be analyzed any differently.  Gov't Opp'n at 5.

(3)     The government's final attempt at articulating its position—that the FBAR charges may remain in this District because, per the government's phrasing, the charges "were not brought here as an exercise in forum shopping, and because trying them here will create no unfairness or undue hardship to Defendant," Gov't Opp'n at 5—does not cure the lack of venue

---

[1] *See also* https://www.fincen.gov/how-do-i-file-fbar; https://www.fincen.gov/sites/default/files/shared/FBAR%20Line%20Item%20Filing%20Instructions.pdf, at *8.

Reply in Support of Motion to Dismiss in Part for Lack of Venue and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 4 -

1   for the FBAR counts, and flatly contradicts the reality of this case.

2          The government has two choices for venue for the FBAR charges:  the Southern District

3   of Texas, the place where Mr. Brockman has lived for over five decades and where, if in fact and

4   law he was required to file, any failure to do so took place; or the Eastern District of Virginia,

5   where any required FBAR filing would have been received.  The government's attempt, without

6   any authority, to keep the FBAR counts in this District lacks legal support and is an improper

7   attempt to keep this case at a location distant from Mr. Brockman's residence.

8          The government would have this Court do what no court has done:  find that there is

9   venue for failure to file an FBAR in a district other than where the filing would have been

10  received or where the defendant resides.  And the government is seeking to put this stake down in

11  a case in which, independent of the FBAR venue issue, the facts and law amply support transfer

12  of the entire case to a district where venue would also clearly lie for the FBAR counts.  But if this

13  case remains in this District, Counts Nine through Fourteen must be dismissed.

14  II.    **THE *PLATT* FACTORS FAVOR TRANSFER, AS SEVERAL FACTORS
        SUPPORT TRANSFER AND NO FACTOR SUPPORTS TRIAL IN THIS
15      DISTRICT**

16         As this Court has observed, and as the government does not dispute, there is no

17  presumption favoring the prosecution's choice of venue in criminal cases.  *See United States v.*

18  *Fritts*, 2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005) (Alsup, J.).  The government expends

19  roughly half of its Opposition in a misdirected argument exaggerating the basis for venue in this

20  district.  Gov't Opp'n at 1-6.  Apart from the FBAR counts, for which there is no venue in this

21  District, the issue on this Motion is not whether there is *any* basis for venue in this District, but

22  whether this case would be better moved to another district.

23         As no one can dispute, the test for deciding whether to transfer venue is determined by the

24  ten factors set forth by the Supreme Court in *Platt v. Minnesota Min. & Mfg. Co*.,

25  376 U.S. 240, 243-44 (1964).  Def.'s Mot. at 8; Gov't Opp'n at 6-7.  To reiterate, those factors

26  are:  "(1) location of [the] defendant; (2) location of possible witnesses; (3) location of events

27  likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of

28  [the] defendant's business unless the case is transferred; (6) expense to the parties; (7) location of

Reply in Support of Motion to Dismiss in Part for Lack of Venue
and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 5 -

1  counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division

2  involved; and (10) any other special elements which might affect the transfer." *Platt*,

3  376 U.S. at 243-44; *see also, e.g.*, *Fritts*, 2005 WL 3299834, at *2.

4       Mr. Brockman's Motion was supported with detailed submissions. *See* Def.'s Mot. at 8-

5  16; Keneally Decl. and accompanying exhibits.[2]  In response, the government's Opposition offers

6  no evidence or potential testimony when discussing the *Platt* factors,[3] nor does the government

7  even cite the Indictment.  Gov't Opp'n at 7-12.  Instead, the government's *ipse dixit* seeks to

8  gloss over or misconstrue the reasons why this case better belongs in the Southern District of

9  Texas.

10      **A.**    **"*Platt* factor" # 1:  the location of the defendant**

11       Mr. Brockman's long-time home in Houston, Texas weighs strongly in favor of transfer.

12       There is no dispute that Mr. Brockman currently resides in Houston, and has lived there

13  for over five decades.  The government's assertion that Mr. Brockman is "not particularly

14  tethered" to the district where he has made a home with his wife and family and built a business,

15  is as cavalier as it is groundless.  *See* Gov't Opp'n at 7.  The bland reference to "private jet

16  records and other evidence" of travel to other locations, Gov't Opp'n at 7, in no way diminishes

17  the paramount principle—which is even the government's stated policy for criminal tax

18  prosecutions—that "'a defendant should ordinarily be tried, whenever possible, where he

19  resides.'"  *United States v. Williams*, 2013 WL 4510599, at *2 (D. Haw. Aug. 22, 2013) (quoting

20  *United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978)); *see also* U.S. Dep't of Justice,

21  Criminal Tax Manual § 6.01[2] (2012) (stating policy "generally to attempt to establish venue for a

22  criminal tax prosecution in the judicial district of the taxpayer's residence or principal place of

23  business.").  This principle is particularly applicable in a case with a complex and likely lengthy

24  trial.  *See, e.g.*, *United States v. Cooper*, 2019 WL 404962, *2 (D. Haw. Jan. 31, 2019) (noting

25

26      [2] "Keneally Decl." refers to the Declaration of Kathryn Keneally, affirmed November 30, 2020 and submitted in support of the Motion.  ECF No. 49-1.

27      [3] *See* Criminal L.R. 47–2 (requiring compliance with Civil L.R. 7–5, which in turn requires that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record").

28

Reply in Support of Motion to Dismiss in Part for Lack of Venue and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 6 -

1   that a longer trial makes the location of the defendant's home more important).

2           Finally, nowhere in its Opposition does the government even acknowledge the gravity of

3   Mr. Brockman's medical condition that has manifested in movement disorders and cognitive

4   impairment.  Pool Decl. ¶¶ 3-5.[4]  Instead the government cynically dismisses Mr. Brockman's

5   "amorphous malaise."  Gov't Opp'n at 9.  The doctors who have diagnosed and treated

6   Mr. Brockman state that he has Parkinson's disease, parkinsonism, or Lewy body dementia, or

7   some combination of the three.  Pool Decl. ¶ 5.[5]  These are degenerative, progressive, non-curable

8   conditions that, in Mr. Brockman's case, have resulted in dementia.  Pool Decl. ¶ 5.  There is

9   nothing "amorphous" about Mr. Brockman's condition, which goes far beyond "malaise."

10          The government simply has no answer to the attestation by Mr. Brockman's primary care

11  physician that facing legal proceedings at some distance from his home would create a risk "to his

12  existing cardiac condition, and could exacerbate the overall progression of his symptoms."  Pool

13  Decl. ¶ 10; *see also United States v. Bowdoin*, 770 F. Supp. 2d 133, 142 (D.D.C. 2011) (transfer

14  should be granted when a defendant's "ill health would prevent a defendant from full

15  participation at his own trial").

16      **B.      "*Platt* factor" # 2:  the location of possible witnesses**

17          From the first pretrial conference, the government has boasted that it is "ready for trial."

18  *See* Nov. 17, 2020 Hr'g Tr. at 15:20–15:25, ECF No. 47; Dec. 1, 2020 Hr'g Tr. at 11:23–12:25,

19  ECF No. 61.  Yet the government does not identify a single witness by name, much less explain

20  the length or importance of any witness testimony, to support its contention that this factor favors

21  the Northern District of California.  *See United States v. Daewoo Indus. Co.*,

22  591 F. Supp. 157, 160 (D. Ore. 1984) (granting Rule 21(b) transfer; "The Ninth Circuit has

23  required more than a bald statement of numbers and general location of witnesses in the cases

24

25          [4] "Pool Decl." refers to the Declaration of James L. Pool, M.D., affirmed November 25, 2020 and submitted in support of the Motion.  ECF No. 49-2.

26          [5]A total of seven diagnostic and forensic reports from three medical doctors and a neuropsychologist, based on examinations conducted over a period of nearly two years, have been submitted to this Court in support of the
27  defense's Motion For a Hearing to Determine Whether Mr. Brockman is Competent to Assist in His Defense on December 8, 2020.  *See* Declaration of Kathryn Keneally in Support of Defendant Robert T. Brockman's Motion for
28  a Hearing to Determine Whether Mr. Brockman is Competent to Assist in His Defense, ECF No. 64-1.

Reply in Support of Motion to Dismiss in Part for Lack of Venue
and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 7 -

where the issue of witness convenience is addressed;" here "the government proposes to call fifty-six witnesses but refuses to disclose their identities or location," except by general area); *United States v. Francis*, 2008 WL 1711543, at *2 (D. Nev. Apr. 11, 2008) (granting Rule 21(b) transfer in tax evasion prosecution; "The cases require that the witnesses be identified, and the nature of their testimony described."). The potential witnesses the government identified by position are not demonstrated to be anything more significant than document custodians.

The government states that it "expects to call at least one, and possible [sic] as many as three, local Vista facts witnesses at trial," Gov't Opp'n at 8, presumably to testify to the local back-office administration of Vista's investment funds that is emphasized in the government's Opposition. *See* Gov't Opp'n at 3. Since no other role is attributed to these or any other witness in the government's Opposition, they cannot be regarded as anything more than "custodians of records [who] sometimes are not called at trial because the parties stipulate to the authenticity of and foundation for the records." *Fritts*, 2005 WL 3299834, at *3. By contrast, the government nowhere acknowledges the importance of Robert Smith ("Individual Two" in the Indictment), Vista's founder, a key witness and government cooperator who resides in Vista's headquarters city of Austin, Texas, less than 200 miles from the federal courthouse in Houston. Keneally Decl. ¶ 21, Ex. F, Ex. G, Ex. H, Ex. I, Ex. J, Ex. K, Ex. M.

The only other reference by the government under this factor is its complaint that "the Motion glosses over the fact that there are at least two victim entities – Entity One and Entity Two in the Indictment – in the Northern District." Gov't Opp'n at 8. So too does the government "gloss over" this fact, offering no description of who might testify from either Entity, or what that testimony might be, much less why it compels a trial in this District. Gov't Opp'n at 8. The Opposition ignores the defense's summary from the Indictment: at most, these two unnamed entities are alleged to have sold debt to Deutsche Bank eleven years ago with no knowledge of or dealings with Mr. Brockman, or the counter-party to whom Deutsche Bank might sell the debt. Indictment ¶¶ 178-79, 183, 189; *see* Def.'s Mot. at 6-7, 11. The government offers nothing to refute that these entities' role is no more than a thin thread by which the government has claimed a technically sufficient case for venue in this District. *Fritts*, 2005 WL 3299834, at *3.

Reply in Support of Motion to Dismiss in Part for Lack of Venue and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 8 -

1    To deflect its own default in describing the evidence, the government faults the defense

2    for failing to identify specific trial witnesses, Gov't Opp'n at 8, after delaying until last week the

3    first production of some of the 1.1 terabytes (the equivalent of 22 million pages) of discovery.

4    This case is at its earliest stages, which is itself a factor that supports timely transfer.  *See United*

5    *States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1977) (noting that it is "proper to require greater

6    showing of inconvenience when transfer sought late in proceedings") (citing *United States v.*

7    *Polizzi*, 500 F.2d 856, 901 (9th Cir. 1974)); *see also United States v. Prasad*,

8    2018 WL 3706836, at *7 (E.D. Cal. Aug. 3, 2018) (granting transfer in part because "transfer

9    would not waste judicial resources" due to the early filing of the transfer motion).[6]

10    All that aside, the defense's Motion still contains significantly more detailed and more

11    compelling information regarding the location of witnesses than the government's Opposition.

12    As the defense set out, the Indictment, Mr. Smith's Statement of Facts, and counsel's knowledge

13    of the government's investigation all indicate that trial witnesses—particularly witnesses who

14    could address disputed questions central to the charges—are likely to be centered in and around

15    Houston.  Mr. Smith lives in Austin, a short drive from the Southern District of Texas.  Keneally

16    Decl. Ex. F, Ex. K, Ex. M at Statement of Facts ¶ 1.  Mr. Smith, in turn, has alleged that Carlos

17    Kepke, a lawyer in practice in Houston, Texas, had a central role in establishing the trusts and

18    assisting Mr. Brockman with asset planning.  Keneally Decl. Ex. M at Statement of Facts ¶ 5,

19    Ex. N, Ex. O, Ex. P.  Mr. Brockman's tax preparers are located in Houston.  Keneally Decl. ¶ 35.

20    And counsel is aware of numerous subpoenas that the government has served on individuals and

21    entities in Houston.  Keneally Decl. ¶ 36.  The government's Opposition ignores all of this.

22    Gov't Opp'n at 8-9.

23    But no trial can take place before Mr. Brockman is determined to be competent, and that

24

25    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

      [6] In contrast, the government cites cases that were close to or on the eve of trial when the transfer motion
      was made.  *See Testa*, 548 F.2d at 857  (defendant "moved for change of venue only eight days before trial"); *United*

26    *States v. Spy Factory, Inc*., 951 F. Supp. 450, 460 (S.D.N.Y. 1997) (deciding transfer motion one month before trial
      was set to begin); *United States v. Shayota*, 2015 WL 9311922, at *6 (N.D. Cal. Dec. 23, 2015) (hearing scheduled to
      "be a trial setting" five days after the transfer motion was decided); *United States v. Calk*,

27    2020 WL 703391, at *1 (S.D.N.Y. Feb. 12, 2020) (deciding transfer motion nearly a year after the unsealing of the
      indictment); *United States v. Blakstad*, 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020) (deciding motion in October

28    2020 when trial was originally scheduled for November 2020 and was delayed only due to COVID-19).

Reply in Support of Motion to Dismiss in Part for Lack of Venue
and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 9 -

1   determination will require a competency hearing.[7]  The government offers nothing to dispute that

2   the location of witnesses essential to this hearing must be included in the *Platt* analysis.  *See*

3   Gov't Opp'n at 9.  A competency hearing is a "critical stage" of a criminal trial, for which the

4   defendant is generally entitled to the same safeguards that would apply at trial.  *See, e.g.*, *Sturgis*

5   *v. Goldsmith*, 796 F.2d 1103, 1109 (9th Cir. 1986).

6          The government's crass dismissal of Mr. Brockman's treating physicians as "compensated

7   experts," Gov't Opp'n at 8, and an example of "wealthy defendants [buying] their venue simply

8   by hiring experts," Gov't Opp'n at 12, crosses a line that prosecutors should not approach.  It is

9   no rebuttal to the fact that requiring the medical witnesses to testify in this District would impose

10  an nearly insurmountable hardship.  *Compare* Def.'s Mot. at 11-12 and Pool Decl. ¶ 8 *with* Gov't

11  Opp'n at 8-9.  The government also offers no support for its contention that "[w]itnesses and

12  experts regularly appear remotely at competency hearings," Gov't Opp'n at 9, and ignores that

13  Mr. Brockman has a right to an in-person, rather than a video-conferenced, hearing.  *See* Def.'s

14  Mot. at 12 n.10 (§ 4241(a) competency hearings not permitted under CARES Act video

15  teleconferencing provisions for criminal proceedings).

16         There is only one choice that may be made between a largely remote hearing, or a hearing

17  at which Mr. Brockman's doctors can be available to testify in person.  The competency hearing

18  is a fundamental due process safeguard, and cannot be brushed aside as facilely as the

19  government suggests.  Only a transfer to the Southern District of Texas will ensure that this

20  hearing can be fairly held.

21         **C.    "*Platt* factor" # 3:  location of events likely to be in issue**

22         Nowhere does the government come to grips with the fact that "the events put in issue by

23  the Indictment took place largely between Mr. Brockman in Houston and Evatt Tamine"—

24  "Individual One" in the Indictment—in various other locations, but never in the Northern District

25  of California.  Def.'s Mot. at 13.  By contrast, the government's argument on this factor does not

26  identify a single event that is likely to be in issue that took place in this District.  Gov't Opp'n at

27

28          [7] As instructed by the Court, the defense filed its Motion For a Hearing to Determine Whether
Mr. Brockman is Competent to Assist in His Defense on December 8, 2020.  ECF No. 64.

Reply in Support of Motion to Dismiss in Part for Lack of Venue
and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 10 -

1   9-10.  The weight of this factor is not cancelled by disparaging the defense for "attempting to

2   tally the locus of events described in the Indictment."  Gov't Opp'n at 9-10.  Nor is it overcome

3   by the government's objection that "venue for several Counts in the Indictment," nowhere

4   identified in the Opposition, "could fail completely in the Southern District of Texas."  Gov't

5   Opp'n at 10.

6         **D.    "*Platt* factor" # 4:  location of records**

7         Contrary to the government's contention, this factor does not "weigh[] against transfer."

8   Gov't Opp'n at 10.  The government asserts that all "relevant documents and records are either

9   already in the Northern District or are electronically accessible."  Gov't Opp'n at 10.  Even if

10  true, electronically accessible documents can be accessed just as easily in Houston as in San

11  Francisco, and the government does not suggest it would create any burden to transport any

12  necessary documents if the case were transferred.  To the extent the government has collected

13  documents from Houston and transported them to San Francisco—as suggested by the many

14  subpoenas it has served on individuals and entities in Houston—those documents in particular

15  should not be weighed against transfer.  *See United States v. Coffee*,

16  113 F. Supp. 2d 751, 756 (E.D. Pa. 2000) ("[I]t would be odd indeed to allow the Government to

17  create venue by its act of shipping documents, especially as they can readily be shipped back.").

18        **E.    "*Platt* factor" # 5:  disruption to the defendant's business**

19        The Court in *Platt* specifically addressed venue with regard to a corporate defendant in a

20  criminal proceeding.  *Platt*, 376 U.S. at 243-44.  It is more than reasonable, by analogy, to

21  consider the disruption to Mr. Brockman, who is in failing health, if he is forced to face a

22  competency hearing and a possible trial away from his doctors, his family, and his home.  As

23  Dr. Pool attested, this disruption may have serious detrimental consequences to Mr. Brockman's

24  already precarious physical and cognitive condition.  Pool Decl. at ¶ 10.

25        **F.    "*Platt* factor" # 6:  expense to the parties**

26        The government states:  "Transferring only a portion of this case would be enormously

27  expensive."  Gov't Opp'n at 10.  This is exactly the defense's point:  the FBAR counts cannot be

28  tried in this District.  Only transfer to the Southern District of Texas will allow all of the counts in

1   the Indictment to be addressed in a single proceeding.

2   **G.    "*Platt* factor" # 7:  location of counsel**

3   In listing counsel who have made appearances to date in this matter, the government

4   identifies one attorney in the Southern District of Texas and three in the Northern District of

5   California.  Gov't Opp'n at 11.  The government also candidly notes that three of the four

6   prosecutors are based in Washington D.C.  Gov't Opp'n at 11.  The three D.C.-based prosecutors

7   are with the DOJ Tax Division, which has had a lead role in the investigation and prosecution of

8   this case, *see* Keneally Decl. Ex. E, Ex. M, and which has nationwide jurisdiction over tax

9   prosecutions.  28 C.F.R. 0.70(b).  While the government asserts that the "local AUSA . . . is not a

10  fungible local counsel," Mr. Brockman's attorneys are no more fungible.  *See* Gov't Opp'n at 11.

11  Mr. Brockman's defense team is not limited only to those lawyers who have formally made an

12  appearance.  While defense counsel is capable of defending him in either district, all of the

13  attorneys who have met with him in person throughout the investigation and subsequent to the

14  Indictment are located in Houston, New York, and Washington.  Keneally Decl. ¶ 39.  It is fair to

15  say that this factor is equally balanced, and should not affect the transfer analysis.

16  **H.    "*Platt* factor" # 8:  relative accessibility of place of trial**

17  The government does not refute that both courthouses are easily accessible.  *See* Gov't

18  Opp'n at 11.  This factor is neutral.

19  **I.    "*Platt* factor" # 9: docket condition of each district or division involved**

20  This penultimate factor is among the most compelling:  the Southern District of Texas has

21  more active judges, fewer pending cases per judge, a far-shorter median time from filing to

22  disposition of felony cases, and an overall faster docket than the Northern District of California.

23  The defense's Motion relied on June 2020 statistics, which were the most recent that were

24  then available, and which reflected the likelihood of a speedier disposition of this matter in the

25  Southern District of Texas.[8]  Since the Motion was filed, the Administrative Office of the Courts

26

27  _____

28  [8] *See* Federal Court Management Statistics, Administrative Office of the Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf at 36, 66 (last visited Nov. 19, 2020).

has published updated statistics, reflecting the operation of the courts through September 2020:[9]

|  | NDCA | SD Texas |
|---|---|---|
| Total number of active judges | 14<br>(no change) | 19<br>(no change) |
| Cases pending per judge | 870 cases<br>(no change) | 770 cases<br>(9 case increase) |
| Median time from filing to disposition in felony cases | 12.4 months<br>(1.2 month increase) | 4.2 months<br>(0.2 month increase) |
| Average time from filing to trial in civil cases | 44.5 months<br>(15.2 month *increase*) | 20.3 months<br>(4.6 month *decrease*) |

The updated data is telling. In the midst of the COVID-19 pandemic, it is no surprise that the average time from filing to trial in civil cases lengthened significantly in this District. But despite the pandemic, the average time from filing to trial in civil cases actually *declined* by 4.6 months in the Southern District of Texas. And while the median time from filing to disposition in felony cases increased in both districts, the gap widened by one month in favor of the Southern District of Texas.[10]

These trends are likely to continue in light of the most recent orders as to court operations in each district. In this District, "all in-person, in-court proceedings" are suspended, "with a planned resumption of some limited proceedings, if possible, on January 4."[11] By contrast, the Houston courthouse of the Southern District of Texas remains open, with judges permitted to continue to hold in-person hearings.[12] Only jury trials are currently on hold in the Houston courthouse, but even they are set to resume on January 19, 2021.[13]

---

[9] *See* Federal Court Management Statistics, Administrative Office of the Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf at 36, 66 (last visited Dec. 9, 2020).

[10] *Id.*

[11] https://www.cand.uscourts.gov/ (last visited Dec. 9, 2020).

[12] *In re: Court Operations in the Houston and Galveston Divisions under the Exigent Circumstances Created by the Covid-19 Pandemic*, Special Order H-2020-24 (Nov. 19, 2020), *available at* https://www.txs.uscourts.gov/sites/txs/files/Special%20Order%20H-2020-24%20Eighth%20Supplemental%20Court%20Operations%20in%20Houston%20and%20Galveston%20During%20COVID-19.pdf (last visited Dec. 11, 2020).

[13] *Id.*

Reply in Support of Motion to Dismiss in Part for Lack of Venue and Transfer to the Southern District of Texas 3:20-cr-00371-WHA

- 13 -

1    All available evidence regarding docket conditions therefore continues to suggest that this

2    case will proceed more expeditiously in the Southern District of Texas than in this District.

3    **J.    "*Platt* factor" # 10:  "Special Elements"**

4    The government contends that it would be safer, given the current comparative COVID-19

5    infection rates in San Francisco and Houston, not to transfer this case.  Gov't Opp'n at 11-12.  If

6    the government is seeking to rest on current infection rates to contend that everyone involved in

7    this matter would be better off in San Francisco, it is seeking to write on an unreliable

8    prognostication of what will come next in the pandemic.

9    The irrefutable point here is that the sole defendant in this case is a 79-year-old man in

10   failing physical health who lacks the mental competency to assist with his defense.  He has lived

11   in Houston for most of his adult life, where he also worked, prepared and filed taxes, consulted

12   with attorneys, and attended to his health.  The Indictment does not allege a single act by him in

13   San Francisco, instead basing venue primarily on the allegation that money moved through this

14   District before being transferred elsewhere.

15   Under all of the circumstances, this case should be transferred in its entirety to the

16   Southern District of Texas.

17   **III.    CONCLUSION**

18   For the reasons set forth above and in Defendant's Motion to Transfer, this Court should

19   (i) transfer this case pursuant to Federal Rule of Criminal Procedure 21(b) from the Northern

20   District of California to the Southern District of Texas, and (ii) dismiss Counts Nine through

21   Fourteen of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(A)(i) for improper

22   venue, or in the alternative, transfer Counts Nine through Fourteen to the Southern District of

23   Texas.

24   Dated:  December 11, 2020                     Respectfully submitted,
                                                     JONES DAY
25
                                                     *s/ Neal J. Stephens*
26                                                   NEAL J. STEPHENS
                                                     Counsel for Defendant
27                                                   ROBERT T. BROCKMAN

28