MEMORANDUM

From:   Evatt Tamine

To:     File

Date:   July 29th, 2017

Subject: BCB's decision to freeze accounts

---

The recent decision of BCB to freeze accounts has highlighted some shortcomings in current operations.

This memo addresses the problems and provides possible solutions. After stating the problems and solutions, I'll detail issues we'll encounter in achieving the solutions.

**PROBLEM 1:**   Having all bank accounts held at the same bank has led BCB to freeze all accounts where I am a signatory. AEBCT, Cabot, Edge and Regency as well as Tangarra and my personal accounts have all been frozen.

**SOLUTION:**   Establish accounts at separate banks for each group.

**PROBLEM 2:**   Having all accounts and operations in a jurisdiction places us at risk of having everything in that jurisdiction frozen if a regulator takes action. The risk of this is real. If BCB tries to justify their decision to freeze accounts all they need to is allege a belief that there is something suspicious about the accounts to the BMA. That could lead to a freezing of all accounts wherever held in Bermuda.

**SOLUTION:**   Set up additional banking relationships for AEBCT, Cabot, Edge and Regency in separate jurisdictions, e.g. keep Point in Switzerland and Singapore, but

move Edge to Guernsey and Cayman Islands; Cabot to Jersey and Nevis; and Regency to the BVI and the Isle of Man. There is a problem with Caribbean banks given I can't travel through the US to get there.

**PROBLEM 3:** The legacy relationships at BCB and Butterfield Bank place all accounts as being connected to Don Jones and, in the case of Butterfield Bank, to RTB.

**SOLUTION:** As we have done in Switzerland and Singapore, set up accounts in places where we get to write our own history. Kill off all reference to RTB and Don Jones.

**PROBLEM 4:** We lack a real fighting fund for legal fees and living costs. If all accounts are frozen, as BCB did, then we are restricted in accessing cash. Right now I cannot pay my American Express bill, the builder's invoices and school fees because most of my funds are held in BCB. Similarly, I could not retain a lawyer to bring an action to free the money. If we are caught like this again, in accessing accounts elsewhere, we would be disclosing where other accounts are held, possibly alerting a regulator as to where they should seek to freeze money.

**SOLUTION:** The solutions above would go part of the way to addressing this problem, but we need a hidden fund, which has nothing to do with either me or RTB, but which we could control. Glenn Ferguson, a lawyer in Australia who I know and can trust, would be a prospect to hold funds in a trust and make a "loan" for legal fees and living expenses.

**PROBLEM 5:** We don't have an escape jurisdiction with back up computer systems so that we can "flick the switch" and keep operating after a day or two.

**SOLUTION:** I made an attempt in setting up a mirror St John's in Singapore; however that fell apart when the service provider wanted full financials for all entities associated with St. John's. We need to set up redundant systems in a few places with shell companies holding operating bank accounts and, if possible, residency rights. The shell companies would be mirrors of existing companies, e.g. another St John's.

In relation to computer systems, we can set up a complete copy of the secure system at the apartment (if there is space) in the UK. Nobody would connect me to that property, which is in the name of Sophie's personal family trust. I can dismantle everything here and we can turn on the system there.

We could also look at setting up a company in Guernsey or Jersey with a residence right and a small apartment. That would make getting bank accounts easier since we have a presence. The reason I need to look at the Channel Islands is that I cannot readily travel to the Caribbean while I cannot travel through the US, which could be some years yet. Even if Robert Smith clears up his problems, the target is well fixed on me and we need to anticipate that we'll be audited at some point.

We would keep the focus on Bermuda with the Foundations established and operating here. They would be active, hopefully drawing the attention of any regulator, while we have low key back up places for me to slip into with the non-Foundation work. As long as everyone pegs me as entirely engaged by the Foundations in Bermuda, we can cover our tracks elsewhere.

**PROBLEM 6:** Jurisdictions like Bermuda, where the employee gene pool is very limited, have weak people who have lost any sense of a robust reaction to the KYC requirements being rammed down their throats. They don't care about business, only about compliance.

**SOLUTION:** Stronger jurisdictions such as Switzerland are doing all they can to comply, but they have stronger people who can still deliver a service to clients. We should look to strong jurisdictions, including considering accounts in the UK, Malta, Canada, Australia, Hong Kong etc. We might be exposed to taxation on some returns, but we could be a lot safer.

**PROBLEM 7:** The target on me is a lot larger than it was some time ago both because of Robert Smith and the Albula, which also draws a lot of attention. I don't have the sort of name that can be hidden, even though I try to maintain a very low key existence with no social media, little contact with professional people etc.

**SOLUTION:** I need to muddy the waters about where I am located. With establishing a presence in additional places such as the Channel Islands, I might be able to avoid being locked into one place. It becomes harder to track me down. This would particularly be the case since the Foundations tie me so closely to Bermuda as does being married to a Bermudian. Regulators will come to Bermuda looking for me, while we build and maintain connections elsewhere.

---

In addressing the issues above, there are a few things to consider:

- We need strong jurisdictions where they will comply, but still be robust about not taking silly actions such as BCB did in freezing the accounts.

- The time differences are important so we can maintain efficient communications.

- Need to be somewhere we I don't have to travel through the US. Even if the fear of detention is lifted, we should be careful about my traveling into the US.

      Certainly, I would never again do it with a computer or telephone (if the later is possible). I could keep all I need at Stuart Yudofsky's office including a phone.

- We must have a good cover story as to why I would like to establish new relationships. In the Channel Islands, Switzerland, Malta, Cyprus etc, this should be because my daughters will soon have to go to school outside Bermuda and I wish to be nearer to them. That is not our plan, but it is something that is readily understood and accepted by all people who work those places.

- Once I gain Bermuda status after October 21st, 2017 (though the application could take up to a year to process), I can establish many of these new relationships on the back of a Bermuda passport.