Jason S. Varnado (State Bar No. 211067)
jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002.2712
Telephone:   +1-832-239-3939
Facsimile:    +1-832-239-3600

Neal J. Stephens (State Bar No. 152071)
nstephens@jonesday.com
Vincent Doctor (State Bar No. 319408)
vdoctor@jonesday.com
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:   +1-650-739-3939
Facsimile:    +1-650-739-3900

Kathryn Keneally (appearance *pro hac vice*)
New York State Bar No. 1866250
kkeneally@jonesday.com
JONES DAY
250 Vesey Street
New York, NY  10281.1047
Telephone:   +1-212-326-3939
Facsimile:    +1-212-755-7306

Attorneys for Defendant
ROBERT T. BROCKMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>Defendant. | Case No. 3:20-cr-00371-WHA<br><br>DEFENDANT ROBERT T. BROCKMAN'S REPLY IN SUPPORT OF MOTION FOR A HEARING TO DETERMINE WHETHER MR. BROCKMAN IS COMPETENT TO ASSIST IN HIS DEFENSE<br><br>Date:    January 12, 2021<br>Time:   2 p.m.<br>Judge:  Hon. William Alsup<br>Place:   Courtroom 12 |

**DEFENDANT ROBERT T. BROCKMAN'S REPLY IN SUPPORT OF MOTION FOR A HEARING TO DETERMINE WHETHER MR. BROCKMAN IS COMPETENT TO ASSIST IN HIS DEFENSE**

**I.  THE GOVERNMENT HAS CONCEDED THAT THE MOTION SHOULD BE GRANTED**

The government has conceded the sole issue raised on the defense's motion:  pursuant to 18 U.S.C. § 4241(a), Mr. Brockman must be accorded a hearing to determine whether he is competent to assist in his own defense.  Gov't Resp. at 1 (the "Response"), ECF No. 69; *see also*

Gov't Resp. at 2 ("As the Motion explained, the threshold for holding a competency hearing is low, and it is satisfied in this case.").

The government could have saved this Court's and the defense's time by agreeing to the hearing without a contested motion, and then turning to the next steps as to how the hearing should proceed.  Now that the government has abandoned its indefensible position that no competency proceedings should be conducted in this case, the defense has asked the prosecutors to meet and confer over appropriate, reciprocal discovery of evidence relevant to competency and proposed for admission at a hearing, the sequence and timing of further examinations of Mr. Brockman, a proposed schedule for the actual competency hearing and other proceedings, and any other issues relevant to competency proceedings.

## II.   AN INDEPENDENT EXAMINATION OF MR. BROCKMAN MUST TAKE PLACE IN A NON-CUSTODIAL SETTING

It would appear that the only remaining open issue, apart from scheduling, is the manner in which an examination of Mr. Brockman should take place.

The government had unhindered access to Mr. Brockman's medical records, and could have had an independent medical examination conducted, during a nearly six-month period prior to the Indictment:  In early April 2020, defense counsel provided medical reports and letters from Mr. Brockman's four diagnostic and treating doctors, setting out their medical conclusion that Mr. Brockman lacks the ability to assist in his defense, along with the results of a DaTscan performed on Mr. Brockman, which showed irrevocable damage to critical neurons responsible for producing dopamine—a visible, measurable marker for dementia caused by Parkinson's disease or Lewy body dementia.[1]  Keneally Decl. ¶ 28, Ex. J at 1–2, 7, Ex. P at 1.[2]  Defense counsel asked that the government interview the doctors, with a pledge that the defense would not

---

[1] A DaTscan is "the first and only FDA-approved aid in differentiating a relatively benign condition, essential tremor, from Parkinsonian syndromes (PS)."  https://www.cedars-sinai.org/programs/imaging-center/exams/nuclear-medicine/datscan.html (last visited Dec. 17, 2020); *see also* https://www.hopkinsmedicine.org/health/conditions-and-diseases/dementia/dementia-with-lewy-bodies (last visited Dec. 18, 2020) (summarizing relationship between damage to dopamine transmitters and Parkinson's disease and Lewy body dementia).

[2] "Keneally Decl." refers to the Declaration of Kathryn Keneally, affirmed December 8, 2020 and submitted in support of the Motion.  ECF No. 64-1.

participate, either by preparing the witnesses in advance or attending the interviews, and provided waivers pursuant to the Health Insurance Portability and Accountability Act ("HIPAA waivers") to allow full access to Mr. Brockman's medical information. Keneally Decl. ¶ 28. Defense counsel also offered to make Mr. Brockman available for examination by medical experts of the government's choosing. Keneally Decl. ¶ 28.

Despite having access to all of this information, and the proffer of full cooperation from defense counsel, the government has never—not before Indictment and not now—identified any expert to conduct an independent examination of Mr. Brockman. Instead, citing no medical or legal basis for its position, the government now makes the stunning request that the Court invoke discretionary authority to "'commit [Mr. Brockman] to be examined for a reasonable period, but not to exceed thirty days'" for observation by "trained Bureau of Prisons mental health professionals and staff." Gov't Resp. at 2–3 (quoting 18 U.S.C. § 4247(b)); 18 U.S.C. § 4241(b).

The law is to the contrary. Due process mandates that a defendant be deprived of his liberty only if the government establishes "compelling governmental interests" that cannot be served by outpatient evaluation.[3] *United States v. Neal*, 679 F.3d 737, 741 (8th Cir. 2012); *see also United States v. Deters*, 143 F.3d 577, 582–84 (10th Cir. 1998) (explaining due process limits on custodial competency examination); *In re Newchurch*, 807 F.2d 404, 408–09 (5th Cir. 1986) (same). Such compelling interests must be substantiated by specific evidence and findings of fact following a hearing. *Neal*, 679 F.3d at 741–42; *Deters*, 143 F.3d at 582–84; *see also United States v. Song*, 530 F. App'x 255, 260–61 (4th Cir. 2013). The generalized conclusion that "'an in-custody evaluation is likely to be more comprehensive than an out-of-custody evaluation' . . . is not sufficient to demonstrate the necessity of a custodial examination." *United States v. Parks*, 2018 WL 2090821, *4 (W.D. Ky. May 4, 2018) (quoting *United States v. Krauth*, 2010 WL 428969, at *5 (N.D. Iowa Feb. 2, 2010)).

These prosecutors' desire to have Mr. Brockman remanded also contradicts Department of

---

[3] Due process safeguards also make orders remanding defendants for custodial evaluation under § 4241(b) subject to immediate appeal. *See, e.g., United States v. Deters*, 143 F.3d 577, 581 (10th Cir. 1998) (holding commitment under § 4241(b) is immediately appealable); *United States v. Davis*, 93 F.3d 1286, 1288–89 (6th Cir. 1996) (same, reversing commitment order); *United States v. Neal*, 679 F.3d 737, 740 (8th Cir. 2012) (vacating and remanding § 4241(b) commitment order on interlocutory appeal).

Justice policy.  "Since the requirements of these provisions stretch the Bureau of Prison's mental health resources to their limits, incompetency (Section 4241) and insanity (Section 4242) studies should, wherever possible, be done in the community by local psychologists/psychiatrists, with commitments to the custody of the Attorney General being reserved for those individuals who cannot safely be examined in the community."  U.S. Dep't of Justice, Just. Manual, Organization and Functions Manual § 8, *available at* https://www.justice.gov/jm/organization-and-functions-manual-8-bureau-prisons (last visited Dec. 21, 2020).

The government's assertion here that "[a] custodial placement is appropriate in cases where malingering is a concern," Gov't Resp. at 2, is equally unsupported and insufficient.  To the contrary, courts routinely accept non-custodial evaluations that include built-in testing to address malingering.  *See United States v. Buckingham*, 2020 WL 7238273, *2–3, 10–12 (N.D. Ala. Dec. 9, 2020) (finding defendant incompetent based on outpatient evaluations that included conclusion that defendant was not malingering); *United States v. Hernandez*, 2018 WL 2738880, *8–15 (N.D. Ohio June 7, 2018) (finding outpatient evaluator's conclusion that defendant was not malingering more reliable than custodial evaluator's conclusion that defendant was malingering).  Dr. York's forensic testing of Mr. Brockman included these safeguards, Keneally Decl. Ex. O at 4, 7, Ex. R. at 5, 7, and the government nowhere addresses why an independent expert cannot meet this standard in a non-custodial setting.

There is no reason, much less a compelling reason, for Mr. Brockman to be subjected to custodial examination prior to the competency hearing.  First, and "[m]ost importantly," Mr. Brockman "is currently on pretrial release," and "should not lose his freedom simply by raising the issue" of competence.  *Parks*, 2018 WL 2090821, at *5.  Nor is there any reason to believe that a custodial evaluation could be completed more quickly than an outpatient examination.  *See Krauth*, 2010 WL 428969, at *4 n.4 (noting that it is "more likely that an in-custody examination would take longer").

Further, in the midst of the COVID-19 pandemic the risk to Mr. Brockman's health far outweighs any "benefit" of incarceration.  As a 79 year-old cancer survivor with a heart condition as well as progressive dementia, remanding Mr. Brockman to the custody of the Bureau of

Prisons would dramatically increase his risk of contracting the disease. *See* Keneally Decl. Ex. G at ¶ 9; *see also* https://www.bop.gov/coronavirus/ (last visited Dec. 17, 2020) (reporting that nearly a quarter of all federal inmates have been diagnosed with COVID-19 over the course of the pandemic).

The defense submits, instead, that the court-ordered examination of Mr. Brockman should occur on an out-patient basis near his home in Houston, the fourth-largest city in the United States, with over 18,000 licensed physicians.[4] Houston's Texas Medical Center is the largest medical facility in the world, and its hospitals have reliably been ranked among the nation's best.[5] Surely "the United States can locate, within a driving distance of [Mr. Brockman's] home that would allow him to travel to and from the appointment each day, a qualified psychologist or psychiatrist to conduct the forensic examination." *Parks*, 2018 WL 2090821, at *5. There is nothing to be gained, and considerable risk, by requiring Mr. Brockman to travel to a distant location, much less to be incarcerated.

### III. THE GOVERNMENT'S CONCESSION THAT A HEARING IS REQUIRED SUPPORTS THE DEFENSE'S MOTION FOR TRANSFER

The government conceded for the first time that a competency hearing is necessary in its Response filed on the evening of December 15, 2020, following a hearing *on that same day* before this Court on the defense's Motion to Dismiss in Part for Lack of Venue and to Transfer to the Southern District of Texas (the "Transfer Motion"), ECF No. 49. The defense set out, as one of many grounds supporting transfer, that a competency hearing should be held in the Southern District of Texas, where Mr. Brockman resides and where all of his doctors practice.[6] Transfer

---

[4] https://www.houston.org/houston-data/health-care-houston (last visited Dec. 20, 2020).

[5] https://www.tmc.edu/news/2019/07/seven-tmc-institutions-ranked-as-best-hospitals-by-u-s-news-world-report/ (last visited Dec. 20, 2020).

[6] In opposing the Transfer Motion, the government argued that venue should not be determined by the location of the defense's "experts." Gov't Opp'n to the Mot. to Dismiss in Part for Lack of Venue and to Transfer to the Southern District of Texas at 9, 12, ECF No. 63. The doctors whose medical reports were included in support of the instant Motion are not, as the government depicts, experts "retained" by the defense. *See* Gov't Resp. at 2. While the defense will present them for their expertise, they are third-party witnesses. Each doctor examined Mr. Brockman for diagnostic and treatment purposes. Keneally Decl. Ex. G at ¶ 4, Ex. H, Ex. I, Ex. J, Ex. K. Even Dr. York, a neuropsychologist, who performed subsequent forensic testing at the request of defense counsel, examined Mr. Brockman in the first instance in response to a referral by his personal doctor to determine a diagnosis and course of treatment. Keneally Decl. Ex. G at ¶ 4.

Mot. at 11–13; *see also* Reply in Supp. of Transfer Mot. at 9–10, ECF No. 66.  The government's conspicuous silence concerning its decision to concede the need for a competency hearing before or during the argument on the Transfer Motion is particularly telling:  this concession greatly undercuts the government's opposition to the Transfer Motion. [7]

### IV. THE BALANCE OF THE GOVERNMENT'S "RESPONSE" HAS NO BEARING ON THE ISSUES ON THIS MOTION

Given its concession on the only issue raised by the Motion, the government captions its current submission not as an "Opposition," but as a "Response," which it then uses to mischaracterize the defense's position and to "preview" its "skepticism" about the defense's medical evidence.

Having "spurned" the defense offer of a cooperative approach at each step so as to force this adversarial proceeding,[8] the government now adds gratuitous but bogus complaints that the defense is "hiding relevant evidence."  Gov't Resp. at 3, 6.  In addition to the unilateral discovery provided so far, the defense previously stated its support for "an independent expert selected by the court, asking only that the examination take place proximate to Mr. Brockman's home in Houston," and acknowledged the government's right to cross-examine the doctors and other witnesses and present its evidence.  Def.'s Mot. at 19.

While ignoring the medical evidence, the government propounds a layman's analysis as to what may be relevant to a competency determination.  Thus the government unloads for seven pages in its "Response" and 536 pages of exhibits, "the government's skepticism [that] will be further developed throughout these competency proceedings" because "it is worth orienting the Court to some of them at the outset."  *See* Gov't Resp. at 4–11.

The government's "skepticism" is distorted, misleading, and at times flatly incorrect on the face of its own "evidence."  It is also premature and not germane to the sole issue before this

---

[7] In its groundless contention that Mr. Brockman be remanded for custodial examination, the government references a facility in Fort Worth, Texas, implicitly acknowledging that Texas, where Mr. Brockman resides, is where his medical issues should be addressed.  Gov't Resp. at 2–3.

[8] The Court: "is it true that they [the defense] offered to let you [the government] talk to the medical people without even the defense being there and you spurned that opportunity?"  AUSA Pitman: "That is true, Your Honor."  Dec. 15, 2020 Hr'g Tr. at 33:1–33:4.

1   Court that the government has now conceded in its Response—a competency hearing is necessary
2   in this matter.  It is sufficient for present purposes to note that the accurate facts will be presented,
3   and the government's version rigorously disputed—in the full evidentiary presentation at the
4   hearing.  Now that the government has dropped its strategic opposition to that hearing, the parties
5   and the Court can get on with the proceeding guaranteed to Mr. Brockman by due process.

## V.   THE GOVERNMENT IS WRONG THAT IT WOULD HAVE BEEN INAPPROPRIATE TO EVALUATE THIS ISSUE PRE-INDICTMENT

The government's final point in its Response is an attempt to assert that it would have been "inappropriate" for the government to consider Mr. Brockman's competency pre-indictment. Gov't Resp. at 11.

It is the essence of a prosecutor's job to review all of the circumstances of the government's investigation when making a decision to indict.  *See* U.S. Dep't of Justice, Just. Manual § 9-27.110 & Comment; *see also* § 9-27.220, *available at* https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution (last visited Dec. 21, 2020).  The Department of Justice has made clear that this fundamental responsibility extends to the consideration of an individual's health and competency:  the United States Justice Manual provides that a "person's personal circumstances" should be considered in determining whether there is a substantial federal interest supporting prosecution.  U.S. Dep't of Justice, Just. Manual § 9-27.230, *see also* § 9-27.220. Circumstances particular to the accused which "may suggest that prosecution is not the most appropriate response" include "advanced age, or mental or physical impairment."  U.S. Dep't of Justice, Just. Manual § 9-27.230, Comment 7; *see also United States v. Lovasco*, 431 U.S. 783, 795 (1977) ("Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.").  Thus the government's contention that it is only for "the Courts, not prosecutors, to make competency determinations[,]" Gov't Resp. at 11, fails in the face of the Department's express policy.

The government has conceded at least this much:  Mr. Brockman is entitled to have the issue of his competency addressed before this prosecution may proceed.  Given the government's

abdication of a pre-indictment review of the evidence, the issue is now squarely for a court to decide.

## VI. CONCLUSION

The central issue for the hearing is Mr. Brockman's fundamental right to present a defense. A defendant who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). This principle is embodied in 18 U.S.C. § 4241(a).

Now that the government has dropped its opposition, the parties agree that a court should hold a hearing under 18 U.S.C. § 4241 to determine whether he lacks the capacity to assist in his defense. The defense is scheduled to meet and confer with the government on December 22, and will propose to the Court appropriate, reciprocal discovery of evidence relevant to competency and proposed for admission at a hearing, the sequence and timing of further examinations of Mr. Brockman, a proposed schedule for the hearing and other proceedings, and other issues relevant to competency proceedings. The defense continues to believe that the competency proceeding should take place in the Southern District of Texas, for the reasons stated in support of the Transfer Motion.

Dated: December 21, 2020

Respectfully submitted,

Jones Day

*s/ Neal J. Stephens*
NEAL J. STEPHENS

Counsel for Defendant
ROBERT T. BROCKMAN