UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>Defendant. | No. CR 20-00371 WHA<br><br>**ORDER GRANTING RULE 21(b) MOTION TO TRANSFER, DENYING MOTION TO DISMISS IN PART FOR LACK OF VENUE, AND ORDERING IMMEDIATE TRANSFER OF ENTIRE CRIMINAL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS** |

## INTRODUCTION

In this prosecution for tax evasion, FBAR violations, conspiracy, wire fraud, money laundering, and destruction of and tampering with evidence, this order **TRANSFERS** the entire criminal matter to the United States District Court for the Southern District of Texas.

## STATEMENT

Defendant Robert Brockman allegedly invested more than a billion dollars through Vista Equity Partners and sequestered his billions in capital gains abroad to evade taxation. The indictment outlines an elaborate scheme, wide-ranging in both time and place (Ind. ¶ 36–38).

Since 1999, Brockman earned interest through his investments with Vista, a firm with an office in the Northern District of California. He stands accused of concealing those capital gains

from the IRS by directing his earnings into other financial entities, real property, and accounts, many abroad. The prosecutors include three with the Tax Division (in Washington, D.C.) and one AUSA based in this district. Contrary to its written policy of prosecuting tax-evasion cases where the alleged evader lives (for deterrence purposes), the government presented this case to a grand jury in San Francisco, rather than Houston where Brockman has long resided. In October 2020, the San Francisco grand jury returned an indictment charging that Brockman failed to report his capital gains in his returns for tax years 2012–2018; engaged in a twenty-year conspiracy to defraud the United States and evade taxes; willfully failed to file Reports of Foreign Bank and Financial Accounts (FBARs) to the IRS 2013–2018; committed wire fraud affecting a financial institution (Deutsche Bank); and laundered money, primarily by direction to his nominees. These were, most notably, three people with monikers "Individual One," "Individual Two," and "Individual Three." Finally, in June 2016, Brockman is said to have learned of the government's investigation into his actions and he (or his nominees at his direction) destroyed, altered, corrupted, or tampered with evidence relevant to the grand jury investigation.

Brockman is 79 and resides in Houston, Texas. He has never lived in this district. His health now declines. In late 2018, Brockman underwent testing for abnormal cognitive and physical symptoms. In a declaration filed in support of the instant motion, Brockman's treating physician calls his symptoms "consistent with" one of three conditions, or a combination thereof: (1) Parkinson's disease, (2) Parkinsonism (a condition causing physical tremors), and (3) Lewy body dementia (a condition in which protein deposits in nerve cells cause dementia and impair movement) (Keneally Decl. ¶ 10, Pool Decl. ¶¶ 5–7, 9–10).

A grand jury indicted Brockman in October 2020:

- Count 1: Conspiracy to defraud the United States and commit tax evasion, in violation of 18 U.S.C. § 371;
- Counts 2 through 8: Tax evasion, in violation of 26 U.S.C. § 7201;
- Counts 9 through 14: Violation of Reports of Foreign Bank and Financial Accounts (FBAR) filing requirements, in violation of 31 U.S.C. §§ 5314 and 5322;

2

1          • Counts 15–34:  Wire fraud affecting a financial institution, in violation of 18 U.S.C.
2             § 1343;
3          • Counts 35–37:  Concealment money laundering, in violation of 18 U.S.C.
4             § 1956(a)(1)(B)(i), tax evasion money laundering, in violation of 18 U.S.C.
5             § 1956(a)(1)(A)(ii), and international concealment money laundering, in violation
6             of 18 U.S.C. § 1956(a)(2)(B)(i);
7          • Counts 38–39:  Evidence tampering and destruction of evidence in violation of 18
8             U.S.C §§ 1512(b)(2)(B) and 1512(c)(1); and
9          • Forfeiture allegations, in violation of 18 U.S.C. §§ 982(a)(1) and 982(a)(2)(A), and
10            28 U.S.C. § 2461(c).

In November 2020, Brockman moved to change venue on the tax-evasion counts pursuant to 18 U.S.C. § 3237(b).  He renews that motion here, but an order herein has since denied it (Dkt. 53).  He now also moves to dismiss or transfer the FBAR counts and to transfer the entire matter to the Southern District of Texas.  Since filing this motion, Brockman has moved for a competency evaluation.  This order on the motion to change venue and dismiss or transfer FBAR counts follows full briefing and oral argument.

**ANALYSIS**

1.   **VENUE.**

In the instant motion, Brockman challenges venue on two grounds.  *First*, he argues that under 18 U.S.C. § 3237(b) and Rule 7(c)(1) and (f), the tax-evasion charges should be transferred to the Southern District of Texas.  Section 3237(b) enables a defendant to "elect" prosecution in his home district if the basis for venue elsewhere "solely" relies on a defendant's mailing of the tax return into the district.  Brockman had previously moved under Section 3237(b) and Rule 7.  That motion was denied (Dkt. 53).  For the same reasons, the motion to change venue under Section 3237(b) and Rule 7 is **DENIED**.

*Second*, Brockman challenges venue for the FBAR violations and contends that the government indicted him on those counts in the wrong district.  A substantial unresolved question remains as to whether venue lies in this district for the FBAR counts.  The government

3

posits that it can prosecute FBAR charges anywhere a person can submit an FBAR online. The defense views venue as proper in either the Southern District of Texas or the district in which the FBARs are centrally received, the Northern District of Virginia.

The prosecution cites two out-of-circuit decisions addressing venue for FBAR prosecutions: *United States v. Clines*, 958 F.2d 578 (4th Cir. 1992), and *United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011). *Clines* held that venue lies in the defendant's home district, the district containing the central receiving center for the FBAR, or any district where individuals could file FBARs. *See* 958 F.2d at 583. *Bradley*, too, held that venue for an FBAR prosecution could lie anywhere that one could file FBARs (at that time, any local IRS office). *See* 644 F.3d at 1252.

Those decisions predate 2013, however, when the IRS ceased to allow FBAR filing at local IRS offices and required them to be filed online *only*. Therefore, *Bradley* and *Clines* are distinguishable. Our court of appeals has not addressed venue for FBAR counts but did tackle a similar question in *United States v. Clinton*, 574 F.2d 464 (9th Cir. 1978), with respect to a criminal failure to file tax returns. The decision held that venue for failing to file tax returns attaches "at the defendant's place of residence, or at the collection point where the return should have been filed." *Id*. at 465. The decision held that prosecution in the Western District of Washington, which contained Washington's tax "collection center" (but where the defendant did not reside) met venue requirements. Since Clinton could have filed his return at the collection center, venue was proper there.

Brockman stands accused of failing to file FBARs, annually, each year from 2013 through 2018, so the earlier IRS rules governing their place of filing do not apply here. Both sides here seem to agree that the central collection point for FBAR filings sits in Virginia and that Brockman lives in Houston. In light of *Clinton* and the IRS rule change that eliminates the foundation of *Bradley* and *Clines*, it seems doubtful that the government's position could carry the day on this point. The stronger authority from our court of appeals thus favors the defense.

The government argues, alternatively, that venue is proper as to the FBAR counts because the indictment also charges a specific FBAR penalty provision, Section 5322(b), with each

FBAR violation count. The government urges that the penalty provision lays venue for the FBAR counts. Section 5322(b) enhances penalties for FBAR violations when the defendant violated "another law of the United States" or engaged in a "pattern of illegal activity involving more than $100,000 in a 12-month period." 31 U.S.C. § 5322(b). The government argues that it will prove a "pattern," which included Brockman's conspiracy and tax evasion. Since the conspiracy and tax evasion occurred locally, the government claims, venue is supposedly proper in this district for all counts of FBAR violations. The government analogizes to *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999), which held that a kidnapping with use of a firearm could be prosecuted wherever the kidnapping took place. This kidnapping had traversed several districts, but the gun never entered the district where trial eventually occurred. The decision held that the gun was a "circumstantial" element, and its location did not necessarily determine venue. In contrast, kidnapping was the "essential conduct element[]" and its locations did lay venue. *Id.* at 280.

Similarly, *United States v. Magassouba*, 619 F.3d 202 (2d Cir. 2010), applied *Rodriguez-Moreno* and held that when identity theft occurred "during and in relation to" a predicate crime of bank fraud, the location of the bank fraud laid venue. *Id*. at 205–06. It reasoned that predicate bank fraud was "an essential element" of aggravated identity theft. *Rodriguez-Moreno* and *Magassouba*, however, miss the mark: the failure to file an FBAR is the primary conduct and would seem to be our "essential conduct element."

In short, the law on venue for the FBAR counts seems to favor the defense. This order need not make a definitive ruling, however, because, as discussed below, convenience and the interests of justice favor transfer of all counts. The doubtfulness of venue for the FBAR counts will have a supporting role in the tenth *Platt* factor, discussed below, since it would waste resources to find venue here and proceed through trial, only to likely have the FBAR counts vacated by our court of appeals. The motion to dismiss counts nine through fourteen is **DENIED AS MOOT**.

### 2. RULE 21(b).

Brockman moves to transfer the entire criminal matter to the Southern District of Texas "for the convenience of the parties and witnesses and in the interest of justice" under Rule 21(b). Factors to balance in deciding such a motion by a defendant are: (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; and (9) docket conditions in each district involved. *See Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240, 243–44 (1964). These factors have been applied to trials of individuals and corporations. *See*, *e.g.*, *United States v. Testa*, 548 F.2d 847, 856–57 (9th Cir. 1977). Our court of appeals has held that a defendant must make a sufficient showing that convenience or the interests of justice warrant a change of venue under Rule 21(b). *See Wagner v. United States*, 416 F.2d 558, 562 (9th Cir. 1969). Trial courts undertaking the analysis, however, receive wide latitude and will not be overturned unless the results "clearly indicate an abuse of discretion." *Id.* at 564. Brockman urges that the Rule 21(b) factors favor transfer. For its part, the government opposes transfer and asserts that the *Platt* factors militate in favor of our district. It does not, however, assert that the law requires deference to its choice of district.

*First* (location of the defendant), Brockman lives in Houston. Specifically, he lives 7.4 miles from the United States District Court for the Southern District of Texas. By contrast, he lives 1900 miles from here. The government concedes that in 2019 Brockman resided "more in Houston than anywhere else," but argues that he peregrinated around the globe. The year is now 2021 and travel patterns have radically changed due to the COVID-19 pandemic. More importantly, Brockman *does* reside in Houston and this *Platt* factor focuses on just that: residence. It favors transfer (Ind. ¶ 1, Keneally Decl. Exh. A, Opp. at 7).

*Second* (location of possible witnesses), the trial witnesses residing closer to this district outnumber, but only slightly, those residing closer to Houston. The government has identified three to five local trial witnesses, including at least one witness from each of the two (unspecified) local "victim entities," against whom Brockman allegedly committed wire fraud.

6

1   Although the government could not confirm that the two employees still reside in the district, it
2   asserted at the hearing that as of late 2019, prosecutors at least met with them locally.  The
3   government will also call one to three "fact[] witnesses" from Vista's local office (Ind. ¶¶ 161–
4   189, 191(a), Opp. at 8, 3, Ind. ¶ 39).

5   With respect to witnesses proximate to Houston, the government confirmed at the hearing
6   that "Individual Two" refers to Robert Smith.  He lives in Austin, Texas, has entered a non-
7   prosecution agreement with the government, and features prominently in the indictment.  The
8   government also agreed at the hearing that "Individual Three," relevant to the accusations that
9   Brockman altered or destroyed evidence, lives in Oxford, Mississippi.  The government
10  identified "Individual One" in the indictment as Evatt Tamine; parties agree that he currently
11  resides abroad.  Tamine, who the government stated at the hearing is now living in the United
12  Kingdom, lies beyond the subpoena power of the Court but if a deposition of him were taken
13  there, it would be inconvenient to both venues under consideration.  Both the Austin- and
14  Mississippi-based witnesses reside far closer to Houston than San Francisco and will have
15  starring roles at trial if the indictment is true (Ind. ¶¶ 8–13, 31, 32, 34–36, 39, 46–54, 56–58, 61–
16  80, 82–127, 165, 166, 172–185, 195, 196).

17  Brockman's counsel also declares, without further explanation, that "at least 17" subpoenas
18  "have been presented to" parties local to Houston.  We have no information as to their roles or
19  whether they will be called at trial, so this order will ignore them.  Brockman's tax preparer
20  resides in Houston and very likely will be a witness at trial (Keneally Decl. ¶¶ 29, 22–24, Exh. H
21  at 7, ¶¶ 19, 35–36).

22  Brockman has, moreover, moved for a competency hearing and his counsel name Southern
23  District of Texas-based witnesses (four doctors, Brockman's wife, and an unspecified number of
24  friends and colleagues) who will participate in a potentially dispositive pretrial hearing; they
25  feature less in the central question of the trial but deserve at least some consideration for their
26  stated roles in testifying about Brockman's changed cognitive function and, thus, in the
27  important pretrial issue of competency (Keneally Decl. ¶¶ 5–16, Dkt. 64, Pool Decl. ¶ 8).
28

7

All told, the tally of trial witnesses favors, just barely, the Northern District of California by a count of three (possibly as many as five) to three. The possibility of more numerous local witnesses does not dramatically tip the scale against transfer, especially keeping in mind that the two of the three witnesses for whom Houston is more convenient are called out as important in the indictment itself. Factoring in, to a lesser extent, the convenience of the Houston-based competency witnesses, the location-of-witnesses factor appears evenly split between the two districts.

*Third* (location of events likely to be at issue), the events of this case occurred in Texas, Colorado, Northern California, and abroad. Per the indictment, Brockman conspired to defraud the United States in the district "and elsewhere" between 1999 and 2019, but the most significant local events occurred at the beginning of the scheme, in approximately 2000, around the time of Vista's founding. At that time, it maintained its principal place of business in San Francisco and Individual Two resided in the district as well. Brockman's actions locally included investing in Vista's very first fund; in fact, he, alone, invested. He also allegedly worked with Vista throughout the early 2000s. In 2011 however, Vista opened offices elsewhere, including in Austin, Texas. At some point, Individual Two also relocated to Texas (a fact that the government acknowledged at oral argument). The indictment alleges that over the next two decades, Vista worked at Brockman's behest, but does not name the locations of individuals at Vista who, after the company's 2011 expansion, acted on Brockman's behalf. Vista's purported work for Brockman, meanwhile, certainly implicated locations abroad: Vista invested Brockman's money in funds organized solely abroad and transferred his pre-tax capital gains to offshore accounts, among other places. Other nominees, on Brockman's behalf, made further international investments, bought real property and even a yacht abroad, all purportedly to help him avoid paying taxes on those earnings (Ind. ¶¶ 29, 6–8, 42, 14, 15, 39, 89, 91).

The counts most explicitly tied to this district allege wire fraud, which involved emails and wire transmissions to local individuals and companies as well as an unnamed local investor and two local "entities." The emails to individuals in the district dated March 2009 through April 2010 and the scheme involved six false statements to various debt-securities holders including

8

"ones in" this district. The alleged fraud consisted of Brockman's purchase of debt securities owed by his own software corporation: Brockman first sought to purchase debt securities from the debt administrator, Deutsche Bank, using a proxy (a nominee individual) to disguise his role. Deutsche Bank then acquired the debt securities from local "victim entities" and an investor in order to sell them to Brockman. Brockman finally purchased the debt securities through his proxy. He never revealed his role. This deceit, the government explained at the hearing, materially misled the victim entities because, had they known about Brockman's involvement, they would have viewed his offer as that of an officer of the debtor corporation and as a signal that the debtor corporation could have continued to make payments. Lacking that information, the victim entities supposedly underpriced the debt securities (Ind. ¶¶ 19, 189, 178, 179, 186, 11).

The events in the indictment also include two San Francisco-based financial transfers: Brockman directed one transfer of over $14 million of his Vista investment gains from a San Francisco bank to a Caribbean bank, and another, of more than $41 million, from a bank in San Francisco to one in Switzerland. The final connection to the district appears in the last counts of the indictment, which allege, vaguely, that Brockman interfered with evidence "[i]n" the district "and elsewhere." The transfers that the indictment identifies as being from or to this district, however, represent just a few out of a nearly two-decade period of active investments. It is true that the indictment names our district fifty-one times and San Francisco twice (in addition), but it also uses the phrase "and elsewhere" to refer to events' locations twenty-two times. Brockman indeed maintained out-of-state residences and it remains far from clear that any of Vista's actual work on his behalf "occurred" in its local office after 2011. Given the considerable doubt that remains about the locations of many events in the indictment, the location-of-events *Platt* factor either favors neither district or favors this district slightly (Ind. ¶¶ 191, 192, Keneally Decl. ¶ 35).

*Fourth* (the location of documents and records likely to be involved), this factor favors neither district. Brockman argues that records sit where the events happened, and claims that most events occurred either in the Southern District of Texas, where he maintained a residence,

9

or abroad. Via the grand jury and the IRS, the government already has the documents it needs. The defense will probably rely on its own records. The need to subpoena third-party records appears minimal and to the extent anyone needs to do so, those records will very likely be in electronic form and transportable to either district. This factor favors neither district.

*Fifth* (disruption of business), both sides agree that Brockman has retired. Trial will not disrupt his "business." Brockman argues that his health now is his "business" and that this *Platt* factor favors transfer. Not so. This order evaluates Brockman's health below, under the "special elements" factor (number ten). *See, e.g., United States v. Bowdoin,* 770 F. Supp. 2d 133, 139 (D.D.C. 2011) (analyzing the physical health of a defendant's wife under the "special elements" factor). This factor does not favor either district.

*Sixth* (expense to the parties), the government argues that transferring a fraction of the counts (the FBAR counts) would be extraordinarily expensive. The government does not claim, however, that prosecuting the whole case in the Southern District of Texas would cost more than prosecution here. Brockman argues that trial will be less expensive if held closer to the events in the case and, therefore, that this factor is either neutral or favors transfer. To repeat, the locations of many events in the case remain unclear. The expense factor is a draw.

*Seventh* (location of counsel), Brockman admits that this factor favors neither district and that his attorneys reside in both this district and the Southern District of Texas, as well as in New York and Washington, D.C. The government states that while one local AUSA is working the case, three of the four attorneys on the case come from the Tax Division in Washington, D.C. Since each side has at least one attorney living in our district, and other attorneys residing elsewhere, the location of counsel factor is also a draw (Opp. at 11).

*Eighth* (accessibility of the location of trial), both Houston and San Francisco constitute major metropolitan areas. This factor remains neutral.

*Ninth* (docket conditions), the median time from case filing to disposition in felony cases took 12.4 months in this district compared with 4.2 months in the Southern District of Texas. *See Federal Management Statistics, Administrative Office of the Courts*, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf (last visited Jan.

10

4, 2021). Although delays in trials everywhere hinge on the COVID-19 pandemic, our district has suspended all in-person proceedings for the time being due to the rate of COVID-19 transmission and the critical dearth of ICU capacity. The Southern District of Texas has also suspended jury trials, but as of early January, intended to resume them on January 19, 2021. *See* CoronaVirus Disease 2019 (COVID-19) – SDTX Related Orders and Courthouse Statuses (last updated Dec. 17, 2020), https://www.txs.uscourts.gov/. And, the Southern District of Texas does currently show substantially less docketing delay. The government argues that transfer itself will slow the case's progression and offset the benefits of a faster docket, citing *United States v. Larsen,* No. 13 CR 688 JMF, 2014 WL 177411, at *3 (S.D.N.Y. Jan. 16, 2014) (transfer unwarranted after accounting for the time necessary to execute transfer). That felony cases progress in the Southern District of Texas at nearly three times the rate here, however, renders its argument less potent. The government also argues that Brockman has not requested an earlier trial date than this district can accommodate. This factor does not turn on the defendant's request but on the relative conditions of the dockets. As circumstances now stand, the docket-conditions factor favors transfer.

*Tenth* (special elements and interests of justice), Brockman will turn 80 during this case. His cognitive ability, memory, and mobility have declined, due to what his doctors believe is either Parkinson's disease, Parkinsonism, Lewy body dementia, or "some combination" of all three. Counsel for Brockman offered the government the chance to interview Brockman's doctors prior to the indictment to understand his health for themselves. The government spurned the offer during the months in which it remained open. Now, the government seeks to try him thousands of miles from home. In support of his motion to transfer, Brockman offers his physician's opinion. Dr. James L. Pool opines that facing trial in a district other than Houston would disorient Brockman "in a manner that could accelerate the deterioration of his mental condition." By way of explanation, he declares that Brockman experiences "progressive dementia," as well as short- and long-term memory loss. (Dr. Pool also opines that a trial far from home threatens "creating a risk to his existing cardiac condition" but does not elaborate on how or on the nature of the cardiac condition.) Dr. Pool declares that it is "not medically

11

advisable" for Brockman to travel to San Francisco due to his advanced age and elevated risk of serious illness from the novel coronavirus (Pool Decl. ¶¶ 5, 7–9, 10).

The Rule 21(b) analysis must also examine two additional elements under the special-elements *Platt* factor: *first,* Rule 21(b) requires the court to consider victims' locations. *See* FRCrP 21, Advisory Committee Notes. Two victims, both corporations, operate in our district (and elsewhere).

*Second*, in a Rule 21(b) analysis, courts may also transfer a criminal action if the "interests of justice" so demand. FRCrP 21(b). The United States Department of Justice recommendations inform our assessment of the "interests of justice:"

> It is the policy of the Department of Justice generally to attempt to establish venue for a criminal tax prosecution in the judicial district of the taxpayer's residence or principal place of business, because prosecution in that judicial district usually has the most significant deterrent effect.

*United States Department of Justice, Criminal Tax Manual*, 6.01[2] Policy Considerations. This DOJ policy statement delineates an important interest. Houston is clearly the proper location for this case under DOJ policy. Additionally, the stronger view of mandatory venue for the FBAR counts favors the defense. It would better serve the interests of justice to keep the case together than to sever and transfer those counts. It would similarly defeat the ends of justice to try the whole case here only to have our court of appeals vacate those counts for a retrial. For the reasons stated above, such a reversal would be a realistic scenario should the case remain here. Given Brockman's age and questionable health, we do not have the luxury to try this case twice. In the interests of justice, it should be tried where venue is unquestionably proper and that is the place of his residence. The government also argues that rates of COVID-19 infection appeared worse in the Houston area than in San Francisco at the time it filed its opposition and that, therefore, the interests of justice favor trial here. The data are highly changeable and so do not sway the special-elements factor. Brockman's health, the public interest in deterrence, and the interest in a singular prosecution outweigh the location of victims in this tenth *Platt* factor. This factor clearly favors transfer.

In summary, three *Platt* factors weigh in favor of transfer (location of defendant, docket crowding, and the special factor of Brockman's illness and interests of justice). One factor militates against transfer (disruption). The location-of-events factor possibly favors this district but, if so, only slightly. Five other factors appear neutral (location of witnesses, location of documents, location of counsel, accessibility of the court, and expense). The *Platt* factors favor transfer. The Rule 21(b) motion is **GRANTED**.

## CONCLUSION

The Clerk shall transfer this criminal action to the United States District Court for the Southern District of Texas.

**IT IS SO ORDERED.**

Dated: January 4, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE